GEORGE S. CARDONA
Acting United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
ROGER E. WEST (State Bar No. 58609)
Assistant United States Attorney
First Assistant Chief, Civil Division
DAVID A. DeJUTE (State Bar No. 153527)
Assistant United States Attorney
    Room 7516, Federal Building
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone:  (213) 894-2461/2574
    Facsimile:  (213) 894-7819
    Email: roger.west4@usdoj.gov
        david.dejute@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CAPTAIN PAMELA BARNETT, et al., ) | No. SACV 09-00082 DOC (ANx) |
| ) | |
|    Plaintiffs, ) | |
| ) | DATE: October 5, 2009 |
|      v. ) | TIME: 8:30 a.m. |
| ) | CTRM: 9D |
| BARACK H. OBAMA, et al. ) | |
| ) | |
|    Defendants. ) | Hon. David O. Carter |
| _____ ) | |

**(1) NOTICE OF MOTION AND MOTION TO DISMISS; AND**

**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

TABLE OF CONTENTS

PAGE

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF THE CASE AND SUMMARY OF ALLEGATIONS . . . . . 1

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      1.    This Court Lacks Subject Matter Jurisdiction Of
            This Action . . . . . . . . . . . . . . . . . . . . . . 4

            A.   Plaintiffs Lack Standing Herein  . . . . . . . . 4

                 1.   No Plaintiff Can Show The Required
                      Concrete, Traceable Injury-in-Fact
                      To Provide Standing Herein  . . . . . . . . 5

                 2.   Plaintiffs Cannot Satisfy The
                      Redressability Requirement For Standing . . 9

            B.   This Case Presents Non-Justiciable Political
                 Questions . . . . . . . . . . . . . . . . . . . 11

            C.   This Court Lacks Subject Matter Jurisdiction
                 Over Plaintiffs' Quo Warranto Claims . . . . . 16

            D.   This Court Does Not Have Subject Matter
                 Jurisdiction Of This Action Under Either
                 42 U.S.C. § 1983, Or 42 U.S.C. § 1988  . . . . 18

      2.    This Court Lacks Subject Matter Jurisdiction And
            Plaintiffs Fail To State A Claim For Relief In Re
            Their FOIA Claims . . . . . . . . . . . . . . . . . . 19

      3.    This Case Must Be Dismissed As To Secretary
            Hillary Rodham Clinton, And Secretary Robert M.
            Gates, For Lack of Subject Matter Jurisdiction,
            And Failure By Plaintiffs To State A Claim For
            Relief. . . . . . . . . . . . . . . . . . . . . . . . 22

      4.    This Case Must Be Dismissed As To First Lady
            Michelle Obama And Vice President Joseph Biden
            Because Plaintiffs Have Failed To State Any Claim
            Whatever Against Them . . . . . . . . . . . . . . . . 24

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

ASARCO, Inc. v. Kadish,
     490 U.S. 605, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) ....  6

Baker v. Carr,
     369 U.S. 186, 82 S. Ct. 691,
     7 L. Ed. 2d 663 (1962) ......................... 11, 15, 16

Barron v. Reich,
     13 F.3d 1370 (9th Cir. 1994) ....................... 23, 24

Bates v. Rumsfeld,
     271  F. Supp. 2d 54 (D.D.C. 2002) ......................  8

Berg v. Obama,
     574 F. Supp. 2d 509 .....................................  5

Caldwell v. Green, et al.,
     451 F. Supp. 2d 811 (W.D. VA 2009) ....................  19

Chappell v. Wallace,
     462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1984) .....  9

Corrie v. Caterpillar,
     503 F.3d 974 (9th Cir. 2007) ...................... 11, 12

Dettmann v. U.S. Department of Justice,
     802 F.2d 1472 (D.C. Cir. 1986) ........................  20

Fallini v. Hodel,
     783 F.2d 1343 (9th Cir. 1986) .........................  24

Gasparutti v. United States,
     22 F. Supp. 2d 1114 (C.D. Cal. 1998) ..................  20

Harrison v. Obenshain,
     452 F. Supp. 1172 (E.D. VA 1978) ......................  19

Hein v. Freedom From Religion Foundation,
     551 U.S. 587, 127 S. Ct. 2553, 168 L.Ed.2d 424 (2007) ...  6

Hollister v. Soetoro,
     601 F. Supp. 179 (2009) ................................  2

Hyland v. Clinton,
     208 F.3d 213, 2000 WL 125876 (6th Cir. 2000) ...........  15

ii

Hyman v. Merit Systems Protection Board,
      799 F.2d 1421 (9th Cir. 1986) .......................... 20

Jesinger v. Nevada Federal Credit Union,
      24 F.3d 1127 (9th Cir. 1994) ........................... 17

Lujan v. Defenders of Wildlife,
      504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) 4, 5

Moor v. County of Alameda,
      411 U.S. 696, 93 S. Ct. 1785, 36 L. Ed. 2d 596 (1973) .. 19

Newdow v. Bush,
      355 F. Supp. 2d 265 (D.C. Dist. 2005) ................. 10

Newman v. U.S. ex rel., Frizzell,
      238 U.S. 537, 35 S. Ct. 881, 59 L. Ed.1446 (1915) ...... 17

Nixon v. United States,
      938 F.2d 239 ....................................... 15, 16

Raines v. Byrd,
      521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) ... 7

Schlesinger v. Reservists Committee to Stop the War,
      418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) ... 7, 8

Sierra Club v. Environmental Protection Agency,
      292 F.3d 895 (D.C. Circuit 2002) ....................... 4

Stang v. IRS,
      788 F.2d 564 (9th Cir. 1986) ........................... 23

United States v. Munoz-Flores,
      495 U.S. 385, 110 S.Ct. 1964, 109 L.Ed.2d 384 (1990) ... 11

United States v. Stanley,
      483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) .... 10

United States v. Steele,
      799 F.2d  461 (9th Cir. 1986) ..................... 19, 20

Warth v. Seldin,
      422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ... 4

West v. Adkins,
      487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) .. 18

Williams v. Rhodes,
      393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) .......... 12

iii

**FEDERAL STATUTES**

3 U.S.C. § 15 .............................................. 13

28 U.S.C. § 1361 ........................................... 23

28 U.S.C. §§ 2201-2202 ...................................... 2

42 U.S.C. § 1983 ........................................ 18, 19

**MISCELLANEOUS**

Federalist Papers, No. 68 ................................. 12

H.R. 10(j)(12) ............................................ 13

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on October 5, 2009 at 8:30 a.m., defendants Barack Obama, Michelle Obama, Hillary Clinton, Robert Gates and Joseph Biden will bring on for hearing the within Motion to Dismiss, before the Honorable David O. Carter, in his courtroom located at 411 West Fourth Street, Santa Ana, California 92701. Defendants, by and through undersigned counsel, hereby move this Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing plaintiffs' action against them with prejudice.  This motion is made on the ground that this Court lacks subject matter jurisdiction over Plaintiffs' claims against Defendants, and on the further ground that, as to certain claims and Defendants, Plaintiffs fail to state claims upon which this Court may grant relief.

Further, with respect to any and all claims or causes of action alleged herein under the Freedom of Information Act, this Court should also dismiss said claims pursuant to Federal Rules of Civil of Civil Procedure 12(b)(3), on the additional ground that venue does not properly lie as to said claims in this District.

///
///
///
///
///
///
///
///
///

1    This Motion is based on the attached Memorandum of Points and

2  Authorities, pleadings, exhibits, and upon such other and further

3  arguments, documents and grounds as may be advanced in the future.

4  This motion is made following the conference of counsel pursuant to

5  Local Rule 7-3 which took place on August 25, 2009.

6                                    Respectfully submitted,

7  DATED: September 4, 2009          GEORGE S. CARDONA
                                     Acting United States Attorney
8                                    LEON W. WEIDMAN
                                     Assistant United States Attorney
9                                    Chief, Civil Division

10                                   /s/ Roger E. West
                                     ROGER E. WEST
11                                   Assistant United States Attorney
                                     First Assistant Chief, Civil Division
12
                                     /s/ Davie A. DeJute
13                                   DAVID A. DeJUTE
                                     Assistant United States Attorney
14
                                     Attorneys for Defendants
15

16

17

18

19

20

21

22

23

24

25

26

27

28

vi

**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION</u>**

**I.**

**<u>INTRODUCTION</u>**

Plaintiffs ask this Court to entertain a challenge to the 2008 election of President Barack Obama by requiring the President to disprove, in this Court, their innuendo alleging that he is not a "natural born citizen" within the meaning of the United States Constitution.  Plaintiffs cannot use this Court to investigate and decide the President's fitness for office or their related claims, however, without contravening the very Constitution that they purport to uphold, which provides that the Electoral College and the Congress have exclusive jurisdiction of such political disputes.

Plaintiffs also seek to litigate in this Court a variety of vaguely-defined claims purportedly related to a hodgepodge of constitutional provisions, civil and criminal statutes, and the Freedom of Information Act. These claims are equally flawed, either because Plaintiffs have failed to meet the jurisdictional and statutory prerequisites or again seek to have this Court adjudicate issues that are textually committed to other branches.

This Court, therefore, is without jurisdiction to determine any issues related to the President's fitness to hold office, and this case should be dismissed with prejudice and judgment entered accordingly.

**II.**

**<u>STATEMENT OF THE CASE AND SUMMARY OF ALLEGATIONS</u>**

Distilled to its essence, this case seeks relief from this Court in the form of an adjudication of the fitness and

1

qualifications of President Barack Obama to be the President of the
United States.   Indeed, the opening paragraph of the First Amended
Complaint (hereafter "FAC") states:

> "Plaintiffs bring this lawsuit to seek, above
> all, a declaratory judgment pursuant to 28
> U.S.C. §§ 2201-2202, deciding whether Defendant
> Barack Hussein Obama can show by clear and
> convincing evidence that he is a natural born
> citizen of the United States of America within
> the meaning of Article II, Section I (sic) of
> the Constitution of the United States, and
> therefore whether he is qualified, or
> unqualified, for the position which he has
> held, de facto if not de jure since January 20,
> 2009."

Paragraph 34 of the FAC alleges that President Obama

> "is a foreign National, citizen of Indonesia,
> and possibly still citizen of Kenya, usurping
> the position of the President of the United
> States of America and the Commander-in-Chief."
> (emphasis supplied).

At paragraph 35 of the FAC, Plaintiffs make reference to a
decision by United States District Judge James L. Robertson in a
case entitled Hollister v. Soetoro, 601 F. Supp. 179 (2009),
asserting that Judge Robertson was "obviously biased" and unwilling
to hear the issue of whether President Obama is a "natural born"
citizen of the United States on the merits.   Thereafter, at
paragraph 36 of the FAC, Plaintiffs allege as follows:

2

1          "Due to the fact that legitimacy of the
2          presidency (sic) is the most important issue in
3          the history of this Nation, and 305 million
4          American citizens cannot and should not be held
5          hostage to one biased court, it is imperative
6          for this Honorable court to hear this petition
7          on the merits."

8       The FAC contains numerous other references demonstrating that
9  what Plaintiffs are seeking is nothing less than a trial concerning
10 the fitness, competence, and qualifications of President Barack
11 Obama to hold office.  At paragraph 120 of the FAC, Plaintiffs
12 allege that this Court "has the power to conduct hearings . . . to
13 investigate all . . . matters related to Count I of Plaintiffs'
14 original (January 20, 2009) Complaint."  A review of Plaintiffs'
15 January 20, 2009 Complaint, which is incorporated by reference into
16 the FAC by virtue of paragraph 120, reveals that it is replete with
17 challenges to the validity of the Presidency of Barack Obama.  One
18 prime example is contained at paragraphs 41 and 42 of the original
19 Complaint, wherein Plaintiffs alleged that Defendant President
20 Obama has a duty to produce records demonstrating that he is
21 constitutionally eligible to hold the office of President, and
22 that, in the absence of such proof,

23         "the Electoral College having elected Defendant
24         Obama to President-elect, the President-elect
25         (sic.), must be determined to have failed to
26         qualify a valid President, whereby the Vice
27         President becomes the acting President under
28         U.S. Constitution Amendment 20 (sic)."

3

1   Although Plaintiffs make scattered reference to other claims they
2   might seek to bring, the gravamen of the FAC is plainly this
3   purported "challenge" to the President's qualifications.  By virtue
4   of the fact that Plaintiffs herein seek a trial in this Court
5   regarding their contentions that President Barack Obama is not
6   qualified to be President, because he is not a "natural born
7   citizen" of the United States, and on other allegations contained
8   within the First Amended Complaint, this case must be dismissed
9   because it presents non-justiciable political questions, because
10  Plaintiffs lack standing, and for other reasons, as the following
11  discussion will demonstrate.

12                            **III.**

13                          **ARGUMENT**

14  **1.   This Court Lacks Subject Matter Jurisdiction Of This Action**

15        **A.    Plaintiffs Lack Standing Herein**

16        The question of standing is a threshold determination
17  concerning "whether the litigant is entitled to have the court
18  decide the merits of the dispute or of particular issues." Warth
19  v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d. 343
20  (1975).  A plaintiff bears the burden of establishing proper
21  standing "at the outset of its case." Sierra Club v. Environmental
22  Protection Agency, 292 F.3d 895, 901 (D.C. Circuit 2002).  In so
23  doing, the Plaintiffs must allege facts sufficient to satisfy the
24  "irreducible Constitutional minimum" of Article III standing.
25  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130,
26  119 L.Ed.2d. 351 (1992).  To have standing, Plaintiffs must first
27  allege that they "suffered an 'injury in fact'-an invasion of a
28  legally protected interest which is (a) concrete and

                              4

1   particularized . . . and (b) actual or imminent, not 'conjectural'

2   or 'hypothetical' . . . Id. at 560, 112 S.Ct. 2130 (citations

3   omitted).  "Second, there must be a causal connection between the

4   injury and the conduct complained of."  Id. (quotations omitted).

5   "Third, it must be likely, as opposed to merely speculative, that

6   the injury will be redressed by a favorable decision."  Id.

7   (quotations omitted). In the FAC, Plaintiffs have failed to

8   establish their standing to sue.  See Berg v. Obama, 574 F.Supp.2d

9   509, and cases cited therein.

10      1.   **No Plaintiff Can Show The Required Concrete, Traceable**

11           **Injury-in-Fact To Provide Standing Herein**

12      The FAC lists 44 Plaintiffs.  At paragraph 5 thereof, it is

13   alleged that four Plaintiffs have "unique political standing":

14   Wiley S. Drake, Alan Keyes, Gail Lightfoot, and Markham Robinson.

15   Wiley Drake and Markham Robinson have previously voluntarily

16   dismissed this case, and are no longer Plaintiffs.  With respect to

17   Alan Keyes, and Gail Lightfoot, it is alleged that they "appeared

18   on the California ballot as candidates for President or Vice

19   President in the 2008 National Presidential elections . . ."  It is

20   further alleged that these Plaintiffs "were injured in their

21   business interests because they had business interests in their

22   candidacies."

23      None of the Plaintiffs alleged to have "unique political

24   standing" has suffered anything remotely resembling the required

25   "injury-in-fact," traceable to Defendants' conduct, to vest them

26   with standing in this case.  Plaintiffs do not make clear the

27   precise nature of their "unique political" injury, but to the

28   extent that they are alleging that President Obama's actions

5

interfered with their prospects for successful election, such an injury is not a result of the actions of the Defendants. The FAC does not allege, nor could it allege, that any of these Plaintiffs were even on the ballot in enough states in the year 2008 to gain the requisite 270 electoral votes to win the Presidential election. Accordingly, the "unique[ly] political" Plaintiffs cannot establish standing on this basis.

Nor can these Plaintiffs establish standing on the basis of their amorphous allegations of injury to unspecified "business interests."  Plaintiffs may not establish standing as competitor candidates based on hypothetical speculation that, for example, their fundraising prospects could have been increased under different circumstances. See, e.g., ASARCO, Inc. v. Kadish, 490 U.S. 605, 615, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) ("[C]laims of economic injury . . . depend[] on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict."). And to the extent that Plaintiffs are alleging that their "business interests" have been affected as a result of policies promulgated subsequent to the election, they allege only that they "suffer[] in some indefinite way in common with people generally," an insufficient basis for standing. Hein v. Freedom From Religion Foundation, 551 U.S. 587, ___, 127 S.Ct. 2553, 2562, 168 L.Ed.2d 424 (2007) (quotations omitted).  Consequently, these Plaintiffs lack standing to bring this case.

The "military" Plaintiffs herein similarly fail to establish the requisite "injury-in-fact" to vest them with standing.  At Paragraph 6 of the FAC, it is alleged that Plaintiff Lieutenant

1   Jason Freese is on active military duty in Alaska, and "thus has

2   standing to challenge and demand clear-and-convincing proof of the

3   Constitutional qualifications of the Commander-in-Chief and

4   legality of the current chain of command . . ." At Paragraph 7 of

5   the FAC, the other military plaintiffs allege that "they are

6   subject to recall and service at any time . . ." Neither of these

7   allegations includes any "injury-in-fact."

8        As an initial matter, aside from references to the chain-of-

9   command, Plaintiffs have not alleged anything that could even

10  remotely be construed as an "injury." See FAC at ¶¶ 6-7. Their

11  presence in the chain-of-command does not itself establish an

12  injury sufficient to satisfy Article III's requirements. The

13  President's position atop the chain-of-command is conferred by the

14  Constitution, see U.S. Constitution Article II, § 2, cl. 1, and is

15  common to all serving members of the armed forces.  The Supreme

16  Court has "consistently stressed that a plaintiff's Complaint must

17  establish that he has a 'personal stake' in the alleged dispute and

18  that the alleged injury suffered is particularized as to him."

19  Raines v. Byrd, 521 U.S. 811, 819, 117 S.Ct. 2312, 138 L.Ed.2d 849

20  (1997) (emphasis supplied).  In short, the injuries alleged by

21  Plaintiff Freese and the other military Plaintiffs herein, are not

22  particularized as to them, but, rather, would be shared by all

23  members of the military and is an inadequate basis on which to

24  establish standing. See generally Schlesinger v. Reservists Comm.

25  to Stop the War, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706

26  (1974).  Moreover, the claims of the retired and reservist

27  Plaintiffs add a layer of speculation atop their non-injury:

28  without providing any basis for believing that their return to duty

is likely or probable, they have not established an injury-in-fact.
See Bates v. Rumsfeld, 271 F. Supp. 2d 54, 62 (D.D.C. 2002)(Where
the likelihood "is remote," as with a recall to active duty,
"plaintiffs who are no longer on active duty . . . cannot satisfy
Lujan's first prong."). In summary, the " military" Plaintiffs
herein cannot establish the requisite "injury-in-fact" to confer
standing upon them.

At paragraph 8 of the FAC, Plaintiffs "who are State
Representatives" allege their own "unique standing," because they
are responsible for receipt of federal funds, and expenditures
thereof, and "receipt of funds from any officer without legal
authority would be complicity in theft or conversion." These
allegations are neither actual or imminent, are highly speculative,
and wholly insufficient to constitute injury-in-fact. In fact,
these allegations do not withstand any logical scrutiny. Theft and
conversion require intent. These Plaintiffs are alleging that
President Obama is the President of the United States at the
present time. They are also alleging that they do not know whether
or not he has the qualifications to be President. They, therefore,
at this point in time cannot logically contend that they are
knowingly accepting monies from an illegitimate Administration.

Finally, it is well settled that an injury to "the generalized
interest of all citizens in Constitutional governance" is too
abstract to satisfy standing requirements. See Schlesinger v.
Reservists Comm. to Stop the War, supra, 418 U.S. 208, 217, 220
(1974). In summary, Plaintiffs have not alleged, and cannot
allege, the requisite "injury-in-fact" to support standing herein.
///

1  ///

2      2.    **Plaintiffs Cannot Satisfy The Redressability Requirement**

3            **For Standing**

4      As outlined above, an essential element of standing requires

5  that it be likely, as opposed to merely speculative that the injury

6  alleged by Plaintiff will be redressed by a favorable decision.

7      Even assuming that some of the purported "injuries" alleged by

8  Plaintiffs satisfied the Article III requirements of "injury-in-

9  fact," no Plaintiff can demonstrate that any injury complained of

10  herein can be redressed by this Court.  First, as discussed below,

11  the political question doctrine precludes redress to any Plaintiffs

12  because such redress would improperly arrogate to this Court

13  jurisdiction over political questions as to the fitness and

14  qualifications of the President which the Constitution entrusts

15  exclusively to the House and Senate.

16      Plaintiffs' allegations suffer from other defects of

17  redressability as well.  As noted, the FAC does not set forth, with

18  any precision at all, any injury which the military Plaintiffs are

19  suffering. Certainly, however, the military Plaintiffs face risks

20  of injury in the course of combat or other dangerous duties, but

21  these are the sort of injuries that are sufficiently speculative as

22  to differ from the meaning of an "injury" cognizable by an Article

23  III Court.  Even if the Court could find standing on the basis of

24  such injuries, however, it is even more highly speculative that any

25  such injury would be redressed by a change in the identity of the

26  Commander-in-Chief.  The military plaintiffs therefore cannot meet

27

28

9

1   the redressability prong on this basis.[1]

2       Finally, Plaintiffs further fail to meet the redressability

3   element required for Article III standing because this Court is

4   without power to enjoin the President.  It appears that, in order

5   to redress Plaintiffs' alleged injuries herein, the Court would

6   need to issue an injunction against President Obama that, <u>inter</u>

7   <u>alia</u>, would require him to prove his eligibility and qualifications

8   to be President of the United States.  At page 4 of the FAC,

9   Plaintiffs further state that they are seeking injunctive relief

10  from this Court to enjoin the appointment of Article III judges,

11  the U.S. Attorney for the District of Columbia, and a new Supreme

12  Court Justice.  Additionally, at page 4 of the FAC, Plaintiffs seek

13  to enjoin President Obama from making new military deployments

14  overseas.  However, this Court cannot, consistent with the doctrine

15  of separation of powers, issue any such injunctions herein.  <u>See</u>,

16  <u>e.g.</u>, <u>Newdow v. Bush</u>, 355 F.Supp.2d 265, 280-283 (D.C. Dist. 2005),

17  and cases cited therein.  Similarly, to the extent that Plaintiffs

18  assert that they do not wish to enjoin the President to do

---

20      [1] The military Plaintiffs also lack standing herein because members

21  of the military cannot challenge the orders of a superior in a
    judicial forum.  <u>See</u>, <u>e.g.</u>, <u>Chappell v. Wallace</u>, 462 U.S. 296, 300,
    304, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1984) (holding that "[c]ivilian

22  courts must, at the very least, hesitate long before entertaining a
    suit which asks the court to tamper with the established relationship

23  between enlisted military personnel and their superior officers"
    because "that relationship is at the heart of a necessarily unique

24  structure of the military establishment" and noting the "disruption"
    of the "peculiar and special relationship of the soldier to his

25  superiors that might result if the soldier were allowed to hail his
    superiors into court." (quotation omitted); <u>United States v. Stanley</u>,

26  483 U.S. 669, 682-83, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (holding
    that members of the military cannot raise Constitutional claims

27  against military officials for injuries incident to service because
    "Congressionally uninvited intrusion into military affairs by the

28  Judiciary is inappropriate").

10

1   anything, but are rather simply asking that a declaratory judgment

2   be rendered, they also fail to satisfy the redressability element

3   necessary for standing herein because such a judgment would be a

4   legal nullity.   Id.

5        In summary, Plaintiffs lack standing to bring this action

6   because, inter alia, they utterly fail to satisfy the

7   redressability requirement.

8        **B.    This Case Presents Non-Justiciable Political Questions**

9        It is well settled that when the United States Constitution

10  makes a "textually demonstrable commitment" of an issue to another

11  branch of the government, other than the judiciary, that issue

12  presents a non-justiciable political question.  See Baker v. Carr,

13  369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962). The

14  political question doctrine serves to "restrain the Judiciary from

15  inappropriate interference in the business of the other branches of

16  Government" by prohibiting the courts from deciding issues that

17  properly rest within the province of the political branches.

18  United States v. Munoz-Flores, 495 U.S. 385, 394, 110 S.Ct. 1964,

19  109 L.Ed.2d 384 (1990).  Because "disputes involving political

20  questions lie outside of the Article III jurisdiction of federal

21  courts," such cases are to be dismissed for want of jurisdiction.

22  Corrie v. Caterpillar, 503 F.3d 974, 980, 982 (9th Cir. 2007).

23       The issues sought to be raised by Plaintiffs in this case

24  regarding both whether President Obama is a "natural born citizen

25  of the United States," and therefore qualified to be President, as

26  well as any purported claims raised by any criminal statutes cited

27  in the First Amended Complaint are to be judged, according to the

28  text of the Constitution, by the legislative branch of the

11

1  government, and not the judicial.

2      At the outset, the Constitution indicates that issues related

3  to a candidate's eligibility for the Office of President rest, in

4  the first instance, with the voters and with their Electoral

5  College, the Constitutionally created body responsible for

6  selecting the President of the United States.  See  U.S.

7  Constitution, Article II, section 1, cl. 2 ("Each State shall

8  appoint, in such Manner as the Legislature thereof may direct,"

9  electors for the President and Vice President); Id. Amend. XXIII

10  section 1; Williams v. Rhodes, 393 U.S. 23, 43, 89 S.Ct. 5, 21

11  L.Ed.2d 24 (1968) (Harlan, J., concurring) ("The [Electoral]

12  College was created to permit the most knowledgeable members of the

13  community to choose the executive of a nation.").  The

14  Constitution's commitment to the Electoral College of the

15  responsibility to select the President includes the authority to

16  decide whether a presidential candidate is qualified for office

17  because the examination of a candidate's qualifications is an

18  integral component of the electors' decision-making process.[2]

19      The Constitution also provides that, after the Electoral

20  College has voted, further review of a presidential candidate's

21  eligibility for office, to the extent such review is required,

22  rests with Congress.  Where no candidate receives a majority of the

23  electoral votes, the Constitution commits to the House of

24

25
26      [2] Explaining this provision of the Constitution, Alexander Hamilton
    stated that: "the people of each State shall choose a number of
    persons  as  electors,  equal  to  the  number  of  senators  and
27  representatives of such State in the national government who shall
    assemble within the State, and vote for some fit person as President."
28  [emphasis added].  See Federalist Papers, No. 68.

12

1  Representatives the authority to select the President and, in so
2  doing, to evaluate the candidates' qualifications.  <u>See</u> U.S.
3  Constitution Amendment XII.  Similarly, the Twentieth Amendment
4  exclusively grants Congress the responsibility for selecting a
5  President when a candidate elected by the Electoral College does
6  not satisfy the Constitution's eligibility requirements.  <u>See</u> <u>id</u>.
7  Amendment XX, § 3 ("the Congress may by law provide for the case
8  wherein neither a President-elect nor a Vice President-elect shall
9  have qualified, declaring who shall then act as President, or the
10 manner in which one who is to act shall be selected, and such
11 person shall act accordingly until a President or Vice President
12 shall have qualified.").  Thus, review of Presidential
13 qualifications after the Electoral College has acted rests in
14 Congress, pursuant to the Constitution.

15      The Constitution's textual commitment of this responsibility
16 is a responsibility that Congress has embraced.  Both the House and
17 Senate have standing committees with jurisdiction to decide
18 questions relating to Presidential elections.  <u>See</u> S.R. 25.1n(1)(5)
19 (the Senate Committee on Rules and Administration has jurisdiction
20 over "proposed legislation, messages, petitions, memorials, and
21 other matters relating to . . . federal elections generally,
22 including the election of the President, Vice President, and
23 members of Congress, as well as "Presidential succession") (copy
24 attached for Court's convenience as Exhibit 1 hereto).  <u>See</u> <u>also</u>
25 H.R. 10(j)(12).  (Copy attached as Exhibit 2).

26      Federal legislation further details the process for counting
27 electoral votes in the Congress.  Under 3 U.S.C. § 15, Congress is
28 directed to be in session on the appropriate date to count the

13

electoral votes for President, with the President of the Senate
presiding.  The statute further directs that the electoral votes be
counted, and then the results be presented to the President of the
Senate, who shall then "announce the state of the vote."  The
statute then provides a mechanism for objections to be registered
and resolved in the following language:

> "[e]very objection shall be made in writing,
> and shall state clearly and concisely, and
> without argument, the ground thereof, and shall
> be signed by at least one Senator and one
> Member of the House of Representatives before
> the same shall be received.  When all
> objections so made . . . shall have been
> received and read, the Senate shall thereupon
> withdraw, and such objections shall be
> submitted to the Senate for its decision; and
> the Speaker of the House of Representatives
> shall, in like manner, submit such objections
> to the House of Representatives for its
> decision."

In summary, it is clear, from the text of the Constitution,
and the relevant statutory law implementing the Constitution's
textual commitments, that challenges to the qualifications of a
candidate for President can, in the first instance, be presented to
the voting public before the election, and, once the election is
over, can be raised as objections as the electoral votes are
counted in the Congress.  Therefore, challenges such as those
purportedly raised in this case are committed, under the

14

1    Constitution, to the electors, and to the Legislative branch.[3]

2         Barack Obama has been President of the United States for seven

3    months.  The issues which Plaintiffs seek to litigate in this case,

4    and the allegations which they make in the First Amended Complaint

5    all relate to the fitness, competence, and qualification of

6    President Obama to continue to serve in office.  As the D.C.

7    Circuit observed under vastly different circumstances, these issues

8    are political questions for a very good reason:

9         "Although the primary reason for invoking the political

10        question doctrine in our case is the textual commitment .

11        . . to the Senate, the need for finality also demands it.

12        See Baker v. Carr, 369 U.S. at 210, 82 S.Ct. at 706 . . .

13        [T]he intrusion of the courts would expose the political

14        life of the country to months, or perhaps years, of

15        chaos.  Even if the courts qualified a finding of

16        justiciability with a rule against stays or specific

17        relief of any kind, their review would undermine the new

18        President's legitimacy . . . for at least as long as the

19        process took.  And a declaratory action without final

20    _____

21        [3] To the extent that Plaintiffs may claim that their allegations
      about the President's fitness, competence, or qualification are based
22    on information not available at a previous time, the Constitution also
      makes a textual commitment of the power to review the President's
23    continuing service to a branch other than the Judiciary, and such
      allegations also include political questions.  See U.S. Constitution
24    Amendment XXV; Baker, 369 U.S. at 217.  Likewise, Plaintiffs' vague
      claims under Title 18, see FAC at 5, 10, 36, are equally committed by
25    the text of the Constitution to a coordinate branch.  See U.S.
      Constitution Article I, § 2, cl. 5; Article I, § 3, cl. 6; Nixon v.
26    United States, 938 F.2d 239, at 243 ("the framers simply assumed that
      the courts had nothing whatever to do with impeachments.") (D.C.
27    Circuit 1991), aff'd, 506 U.S. 224, 113 S.Ct. 732, 122 L.Ed.2d. 1
      (1992); Hyland v. Clinton, 208 F.3d 213, 2000 WL 125876 (6th Cir.
28    2000).

                                    15

1          relief awarding the Office to one person or the other

2          could confound matters indefinitely." [emphasis

3          supplied].

4    Nixon v. United States, 938 F.2d 239, at 245(D.C. Cir. 1991),

5    aff'd, 506 U.S. 224, 113 S.Ct. 732, 122 L.Ed.2d. 1 (1992).

6          Litigation of these issues in this Court would be an equal

7    intrusion of the courts into the political life of the other

8    branches.  Such an intrusion would do violence to the principle of

9    separation of powers, an equally-important basis to recognize that

10   such political questions are outside the jurisdiction of the Court.

11   See Baker v. Carr, supra, 369 U.S. at 210 ("The non-justiciability

12   of a political question is primarily a function of the separation

13   of powers."); id. at 217 (setting forth the elements typically

14   describing a political question).

15         In summary, the issues which Plaintiffs seek to litigate in

16   this case are, under the Constitution, within the sole and

17   exclusive jurisdiction of the House of Representatives and the

18   Senate of the United States.  Additionally, litigation of these

19   issues in this Court, and the granting of some or all of the relief

20   sought by Plaintiffs herein would violate the doctrine of

21   separation of powers.  Accordingly, this case must be dismissed,

22   because it presents non-justiciable political questions.

23         **C.    This Court Lacks Subject Matter Jurisdiction Over**

24              **Plaintiffs' Quo Warranto Claims**

25         Plaintiffs appear to be seeking a writ in the nature of Quo

26   Warranto from this Court to determine whether President Obama is

27   lawfully qualified to be the President of the United States.

28              "Quo Warranto is an ancient Writ used by the

16

1          King of England to determine if an individual's

2          claim to an office or franchise is well

3          founded.  If the individual is found to be in

4          unlawful possession of the office, the

5          individual is ousted."

6 Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1131 (9th

7 Cir. 1994) (citations omitted).   The question of whether a quo

8 warranto writ should issue in this case clearly involves non-

9 justiciable political questions, as discussed above.  In addition,

10 Plaintiffs' attempt to invoke the writ suffers from numerous

11 serious flaws that preclude this Court's jurisdiction.

12    As the Supreme Court has long held, in the absence of an

13 authorizing statute, a writ of quo warranto may not be brought by

14 anyone other than the United States:

15          "[G]eneral public interest is not sufficient to

16          authorize a private citizen to institute such

17          [Quo Warranto] proceedings; for if it was, then

18          every citizen and every taxpayer would have the

19          same interest and the same right to institute

20          such proceedings, and a public officer might,

21          from the beginning to the end of his term, be

22          harassed with proceedings to try his title."

23 Newman v. U.S. ex rel., Frizzell, 238 U.S. 537, 548, 35 S.Ct. 881,

24 59 L.Ed.1446 (1915).  The authorizing statute for the District of

25 Columbia sets forth a number of requirements, including a

26 requirement that any quo warranto action be heard by the United

27 States District Court for the District of Columbia.  See D.C. Code

28 Sections 16-3501 through 16-3503.  Indeed, Plaintiffs acknowledge

17

1   this requirement in their pleading, but seek to have this Court

2   ignore it because of their apparent dissatisfaction with the

3   precedents in the District of Columbia. <u>See</u> FAC at ¶¶ 35-36.[4]

4        Accordingly, for all of the reasons set forth above, this

5   Court lacks subject matter jurisdiction in re Plaintiffs' claims

6   and causes of action purporting to sound in Quo Warranto.

7        **D.   <u>This Court Does Not Have Subject Matter Jurisdiction Of</u>**

8            **<u>This Action Under Either 42 U.S.C. § 1983, Or 42 U.S.C.</u>**

9            **<u>§ 1988</u>**

10       At paragraph 1 of the FAC, Plaintiffs allege that this Court

11  has subject matter jurisdiction pursuant to, <u>inter alia</u>, the

12  provisions of 42 U.S.C. §§ 1983 and 1988.  Plaintiffs' reliance

13  upon these statutes for subject matter jurisdiction in this case is

14  misplaced.  To state a claim under 42 U.S.C. § 1983, Plaintiffs

15  must allege both the violation of a right secured by the

16  Constitution and laws of the United States, and that the alleged

17  deprivation was committed by a person acting under color of *state*

18  law.  <u>West v. Adkins</u>, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d. 40

19  (1988).  Plaintiffs have not properly pled any violation of

20  constitutional or federal law.  Even if Plaintiffs had properly

21  alleged that one or more of the Defendants herein violated a right

22  secured to them by the Constitution and laws of the United States,

23  however, Plaintiffs have not, and cannot, allege that any of the

24  Defendants herein was acting under color of state law.  Therefore,

25

26       [4] Although California also has a quo warranto statute, that state
    statute cannot confer jurisdiction on this Court.  Nor does it appear
27  that this action meets the requirements set out therein, including,
    *inter alia*, that such action be brought by the attorney general.  <u>See</u>
28  Cal. Code. Civ. Proc. § 803 <u>et seq.</u>

                                    18

1    any and all causes of action predicated herein upon 42 U.S.C.
2    § 1983 must be dismissed.

3        In their FAC, Plaintiffs also allege that this Court has
4    subject matter jurisdiction of this case, and that they are
5    entitled to relief, pursuant to the provisions of 42 U.S.C.
6    § 1988(a).  Plaintiffs' reliance upon this section is completely
7    misplaced.  In the first place, Section 1988(a) is a procedural
8    statute, which does not create rights or confer jurisdiction.
9    Caldwell v. Green, et al., 451 F.Supp.2d 811 (W.D. VA 2009);
10   Harrison v. Obenshain, 452 F.Supp. 1172 (E.D. VA 1978).  Moreover,
11   as the Supreme Court explained in Moor v. County of Alameda, 411
12   U.S. 696, 93 S.Ct. 1785, 36 L.Ed.2d. 596 (1973), the provisions of
13   Section 1988 only apply to cases which are properly brought under
14   one or more sections of the Civil Rights Acts.  Therefore,
15   Plaintiffs cannot rely at all upon the provisions of 42 U.S.C.
16   § 1988(a) in this case, because they have no claim against
17   Defendants herein under 42 U.S.C. § 1983.

18   **2.   This Court Lacks Subject Matter Jurisdiction And Plaintiffs**
19   **     Fail To State A Claim For Relief In Re Their FOIA Claims**

20       The FAC lists 44 plaintiffs in the caption.  Nowhere in the
21   body of the FAC is there any specific reference to any specific
22   request made by any specific plaintiff, pursuant to the provisions
23   of the Freedom of Information Act, to any agency of the United
24   States.  Moreover, there is no reference anywhere in the FAC
25   regarding the exhaustion of administrative remedies, and the
26   issuance of a final agency decision, on any FOIA request made by
27   any plaintiff herein.

28

                                  19

1    It is well settled that the exhaustion of a party's
2  administrative remedies "is required under the FOIA before that
3  party can seek judicial review." <u>United States v. Steele</u>, 799 F.2d
4  461, 465 (9th Cir. 1986); <u>Dettmann v. U.S. Department of Justice</u>,
5  802 F.2d 1472, 1476 (D.C. Cir. 1986) ("It goes without saying that
6  exhaustion of remedies is required in FOIA."); <u>Hyman v. Merit</u>
7  <u>Systems Protection Board</u>, 799 F.2d 1421, 1423 (9th Cir. 1986)(FOIA
8  requires administrative appeals to be exhausted before suit may be
9  brought in federal court).  The obvious purpose of the exhaustion
10 requirements under FOIA is to allow the federal agency to exercise
11 its discretion and authority, as well as to create a descriptive
12 factual record for the district court to review if necessary.
13 Under FOIA, a party who makes a record request "must request
14 specific information in accordance with published administrative
15 procedures," and "have the request properly refused before that
16 party can bring" suit in federal court.  <u>Steele</u>, <u>supra</u>, 799 F.2d at
17 466.  "Where no attempt to comply fully with the agency procedures
18 has been made," judicial review will not be had.  <u>Id</u>. <u>See also</u>
19 <u>Gasparutti v. United States</u>, 22 F. Supp. 2d 1114, 1116 (C.D. Cal.
20 1998) (Where plaintiffs have "not complied with [FOIA] procedures,
21 district courts lack jurisdiction . . . under the exhaustion
22 doctrine and will dismiss the claim for lack of subject matter
23 jurisdiction.").
24    In the instant case, Plaintiffs have not even attempted to
25 plead exhaustion under FOIA, nor have they named any agency as a
26 defendant herein.  Indeed, a reading of paragraphs 86-109 of the
27 FAC suggests that Plaintiffs believe that they can use the FAC in
28 the first instance to request documents under FOIA.  As the legal

1  discussion above demonstrates, FOIA does not convert this Court
2  into a free-standing investigative body with the power to resolve
3  Plaintiffs' far-reaching document requests at will.

4      In addition to the foregoing, it is submitted that any and all
5  FOIA claims or causes of actions herein must be dismissed for
6  improper venue.  At Paragraph 2 of the FAC, Plaintiffs allege that
7  venue is proper in this case under the Freedom of Information Act,
8  because:

9          "Several Plaintiffs, including Plaintiff Wiley
10         S. Drake, live in Orange County within the
11         Southern Division of the Central District of
12         California."

13 As outlined above, Plaintiff Wiley S. Drake has been voluntarily
14 dismissed as a Plaintiff from this action.  Additionally, as noted
15 above, the FAC is utterly silent regarding whether any other
16 specific Plaintiff has made any specific request to any specific
17 agency of the United States under the Freedom of Information Act,
18 and, moreover, it is silent regarding the question of exhaustion of
19 administrative remedies.

20     Venue in an action brought pursuant to the Freedom of
21 Information Act is governed by the provisions of 5 U.S.C.
22 § 552(a)(4)(B), which provides as follows:

23         "On complaint, the District Court of the United
24         States in the District in which the complainant
25         resides, or has his principal place of
26         business, or in which the agency records are
27         situated, or in the District of Columbia, has
28         jurisdiction to enjoin the agency from

21

1           withholding agency records and to order the

2           production of any agency records improperly

3           withheld from the complainant."

4   Applying this provision to this case in its present posture, it is

5   submitted that venue is improper in this District.  This is so

6   because Plaintiffs have failed to allege in the FAC that any of the

7   Plaintiffs who may reside in this District have exhausted the

8   required administrative remedies under the FOIA, and/or that any

9   records subject to any such requests are situated in this District.

10      For the reasons set forth above, Plaintiffs' claims under the

11  Freedom of Information Act must be dismissed for lack of subject

12  matter jurisdiction, failure to state a claim upon which relief may

13  be granted, and for improper venue.

14  **3.   This Case Must Be Dismissed As To Secretary Hillary Rodham**

15       **Clinton, And Secretary Robert M. Gates, For Lack of Subject**

16       **Matter Jurisdiction, And Failure By Plaintiffs To State A**

17       **Claim For Relief.**

18      The caption of the FAC lists as Defendants Secretary of State

19  Hillary Rodham Clinton, and Secretary of Defense Robert M. Gates.

20  The only general mention of Secretary Clinton appears at page 4 of

21  the FAC, wherein Plaintiffs state that they desire this Court to

22  enter quo warranto writs to, among others, the Secretary of State,

23  to enjoin certain Presidential appointments.  As discussed

24  elsewhere in this brief, neither a Writ of Quo Warranto, nor any

25  other injunction regarding appointments may be issued in this case.

26  With respect to Secretary Clinton, therefore, Plaintiffs fail to

27  state any claim for relief, and this case must be dismissed for

28  lack of subject matter jurisdiction and failure to state a claim.

22

1    With respect to Secretary of Defense Gates, he is only

2 mentioned twice in the FAC.  At page 4 thereof, he, like Secretary

3 Clinton, is mentioned as a person to whom a Quo Warranto Writ

4 should issue to enjoin appointments.  As discussed above, no Quo

5 Warranto Writ may issue herein.  The only other mention of

6 Secretary Gates anywhere in the FAC is at Paragraph 41 thereof,

7 which provides, in pertinent part, as follows:

8            ". . . and there is a need for a Writ of

9            Mandamus from the Supreme Court for the

10           Secretary of Defense, Robert Gates to release

11           the original certificate of the selective

12           service with the U.S. military, for it to be

13           analyzed by the forensic document examiners of

14           the Plaintiffs."

15 In the first place, this allegation is nonsensical, because

16 Plaintiffs are talking about a Writ of Mandamus which they wish to

17 seek from the United States Supreme Court, and, apparently, not

18 this Court.  Secondly, even assuming, arguendo, that Plaintiffs

19 were seeking a Writ of Mandamus from this Court to Secretary Gates

20 to release some selective service records regarding President

21 Obama, this Court would lack subject matter jurisdiction.

22    The statute governing mandamus, 28 U.S.C. § 1361,[5] states that

23 "The District Court shall have original jurisdiction of any action

24 in the nature of mandamus to compel an officer or employee of the

25 United States or any agency thereof to perform a duty owed to the

26 plaintiff."  Mandamus is an extraordinary remedy.  Barron v. Reich,

27 13 F.3d 1370 (9th Cir. 1994); Stang v. IRS, 788 F.2d 564, 565 (9th

28

_____

     [5] This statute is not cited by Plaintiffs at all in their FAC.

23

1   Cir. 1986).  A Writ of Mandamus should only issue when three

2   factors have been met: (1) the plaintiff's claim is "clear and

3   certain"; (2) the defendant official's duty to act is ministerial,

4   and "so plainly prescribed as to be free from doubt"; and (3) no

5   other adequate remedy is available.  Barron v. Reich, supra,

6   quoting Fallini v. Hodel 783 F.2d 1343, 1345 (9th Cir. 1986).

7   Applying these factors to the instant case, it is clear that

8   Plaintiffs lack standing to seek mandamus relief herein, and

9   accordingly this Court lacks subject matter jurisdiction and

10  Plaintiffs fail to state a claim for relief.  This is so because

11  Secretary Gates has absolutely no ministerial duty so plainly

12  prescribed as to be free from doubt to provide any Plaintiff herein

13  with any selective service record which might deal with President

14  Barack Obama.

15      As the foregoing discussion demonstrates, this case must be

16  dismissed as to Secretary Hillary Rodham Clinton and Secretary

17  Robert M. Gates for lack of subject matter jurisdiction and failure

18  by Plaintiffs to state a claim for relief.

19  **4.   This Case Must Be Dismissed As To First Lady Michelle Obama**

20       **And Vice President Joseph Biden Because Plaintiffs Have Failed**

21       **To State Any Claim Whatever Against Them**

22      First Lady Michelle Obama and Vice President Joseph Biden are

23  named as Defendants in this case in the caption of the FAC.  The

24  body of the FAC contains absolutely no reference whatever to any

25  act or omission by either of these Defendants.

26      The only reference to the First Lady in the body of the FAC

27  appears at Paragraphs 3-4, wherein Plaintiffs allege that someone

28  named Michelle Obama either resides in, or maintains business

24

1  offices, in this District.  No other mention of a "Michelle Obama"

2  appears anywhere in the FAC.  Additionally, the body of the FAC

3  does not contain any allegations whatever regarding Vice President

4  Biden.  Accordingly, as to these Defendants, the action must be

5  dismissed for lack of subject matter jurisdiction, because there is

6  literally a failure by Plaintiffs to state any claim for relief

7  against them.

8                              **IV.**

9                          <u>**CONCLUSION**</u>

10      For the foregoing reasons, this action should be dismissed in

11  its entirety for lack of subject matter jurisdiction and for

12  failure by Plaintiffs to state any claim upon which relief may be

13  granted by this Court, and, as to the FOIA claims, for lack of

14  venue.  Moreover, because the defects with Plaintiffs' First

15  Amended Complaint cannot be cured, it should be dismissed with

16  prejudice, and judgment should be entered accordingly.

17

18                              Respectfully submitted,

19  DATED: September 4, 2009     GEORGE S. CARDONA
                                 Acting United States Attorney
20                               LEON WEIDMAN
                                 Assistant United States Attorney
21                               Chief, Civil Division

22                               <u>/s/ Roger W. West</u>
                                 ROGER E. WEST
23                               Assistant United States Attorney
                                 First Assistant Chief, Civil Division
24
                                 <u>/s/ David A. DeJute</u>
25                               DAVID A. DeJUTE
                                 Assistant United States Attorney
26
                                 Attorneys for Defendants
27

28

                                 25