1   *UNITED STATES JUSTICE FOUNDATION*
    **GARY G. KREEP; SBN 066482**
2   **932 "D" Street, Suite 2**
    **(Email: usjf@usjf.net)**
3   **Ramona, California 92065**
    **Tel: (760) 788-6624**
4   **Fax: (760) 788-6414**

5
    Attorney for Plaintiffs,
6   Dr. Wiley S. Drake and
    Markham Robinson
7

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10              **SANTA ANA (SOUTHERN) DIVISION**

11

12  CAPTAIN PAMELA BARNETT,       )   CIVIL ACTION NO:
    et al.,                        )   SACV09-00082-DOC (Anx)
13                                 )
                        Plaintiffs, )   **PLAINTIFFS' OPPOSITION TO**
14                                 )   **DEFENDANTS' EX PARTE**
                v.                 )   **APPLICATION FOR LIMITED STAY**
15                                 )   **OF DISCOVERY**
    BARACK HUSSEIN OBAMA, et       )
16  al.,                           )
                                   )
17                      Defendants )
                                   )
18  _____    )

19
            This response to Defendants' Ex Parte Application for Limited Stay of
20
    Discovery is limited to the issues affecting Plaintiff's Markham Robinson and Dr.
21
    Wiley Drake.  It is our understanding that Dr. Taitz will be addressing the issues
22
    affecting her clients in her response to this Ex Parte Application.
23
            This action is brought by, among others, Plaintiffs Dr. Wiley Drake and
24
    Markham Robinson (hereinafter referred to as "PLAINTIFFS").  Dr. Wiley Drake
25
    was the Vice Presidential nominee for the American Independent Party in the 2008
26
    Presidential Election on the California ballot.  Markham Robinson was a pledged
27
    Presidential Elector for the American Independent Party in the 2008 Presidential
28

                                        1
    ────────────────────────────────────────────────────────────────
    **PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION**
              **FOR LIMITED STAY OF DISCOVERY**

1  Election for the California ballot.  Dr. Taitz is representing Plaintiff Dr. Alan Keyes,

2  herein, who was the Presidential nominee for the American Independent Party in the

3  2008 Presidential Election on the California ballot.

4        In order to properly address issues raised in Defendants' Ex Parte Application

5  for Limited Stay of Discovery, it is necessary to address the issues raised in

6  Defendants' Motion for Dismissal which lead to this Ex Parte Application, and

7  which is referenced in Defendants' Ex Parte Application.

8                          **STANDING**

9  **A. INJURY AND CAUSATION**

10       Standing is proper when there is an injury in fact, caused by the Defendant,

11 and redressable by the court.  The Court in *Hollander v. McCain* held "a candidate

12 or his political party has standing to challenge the inclusion of an allegedly

13 ineligible rival on the ballot, on the theory that doing so hurts the candidate's or

14 party's own chances of prevailing in the election." (*Hollander v. McCain*  (2008)

15 566 F.Supp.2d 63).  Here, Dr. Wiley Drake was a candidate for Vice President of

16 the United States running against Defendant Barack Obama in the 2008 election.

17 As a Vice Presidential candidate, Dr. Drake has an interest in having a fair

18 competition for that position.  This interest is akin to the interest of an Olympic

19 competition, where one of the competitors in an athletic competition is found to be

20 using performance enhancing drugs, but is not removed despite a violation of the

21 rules, and all of the athletes who had trained for the event legitimately are harmed if

22 that disqualified contestant remains as the contestants would not be competing on a

23 level playing field.  Defendant Obama entered this race without having met the

24 eligibility requirements for the office of President of the United States and, as a

25 result, Dr. Wiley Drake has been injured because he did not have fair competition

26 for the office of Vice President of the United States, and, thus, was not given a fair

27 opportunity to obtain votes for Vice President of the United States..

28       Here also, Mr. Robinson was a Presidential Elector in the 2008 election.  As

2

an Elector, he had an interest in there being a fair competition between the candidate he pledged to vote for and the other candidates for the office of President of the United States.  Mr. Obama entered this race without having met the eligibility requirements for the office of President of the United States and, as a result, Mr. Robinson has been injured because the candidate he pledged to vote for did not have a fair competition for the office of Vice President of the United States, thus preventing Mr. Robinson from casting a vote for the candidates he pledged to vote for as Elector.

       As a result, PLAINTIFFS have suffered a concrete injury in fact.

**B. REDRESSABLE BY THE COURT**

       Defendants allege, on page 9 of their Motion to Dismiss, that "the political question doctrine precludes redress to any Plaintiffs because such redress would improperly arrogate to this Court jurisdiction over political questions as to the fitness and qualifications of the President which the Constitution entrusts exclusively to the House and the Senate."  Defendants further allege, on page 12 of their Motion to Dismiss, that "issues related to a candidate's eligibility for the office of president rest, in the first instance, with the voters and with their Electoral College, the Constitutionally created body responsible for selecting the President of the United States."  This assertion is incorrect in a number of ways.  First, a provision of the Constitution may not be disregarded by means of a popular vote of the people, as there are specific guidelines for amending the Constitution of the United States.  The United States Constitution (hereinafter referred to as "US Const."), Article (hereinafter referred to as "Art.") 5, requires a two-thirds vote of both houses of Congress and ratification by three-fourths of all State legislatures in the United States (US Const., Art. 2).  Even if the people of the United States voted to elect as President a candidate who did not qualify for the position, that vote would not be sufficient to overcome the Constitutional requirements for office and make that candidate eligible.  Because voters can and do vote for candidates that are

3

1    liked by the voters, even if those candidates may not be eligible for the position, the

2    voters do not have the power or the right to determine the eligibility of a candidate.

3         In addition, the Electoral College is not empowered with the authority to

4    determine the eligibility of any candidate.  In twenty-six States and the District of

5    Columbia, Presidential Electors are prohibited by statute from voting in variance

6    with their pledges, or, if they do, they face civil or criminal penalties and fines.  The

7    act of determining eligibility is one that requires discretionary authority so that a

8    candidate found to be ineligible may be removed.  However, any discretionary

9    authority of the majority of the State's Presidential Electors has been removed by

10   statute, and the Presidential Electors, instead, perform a ministerial function of

11   casting their votes in accordance with the popular vote of the State that each Elector

12   represents.  The assertion of Defendants that the Electoral College has the authority

13   to make any determination of a Presidential candidate's qualifications is

14   unpersuasive because, while the historical intent of the of the Electoral College was

15   to make such determinations, the modern majority trend of the States is to limit the

16   duties of the Electors to the ministerial role of casting a vote for the candidate

17   chosen by the popular vote of their respective States.

18        In similar disputes over eligibility of candidates at the State level, political

19   bodies are not proper for making determinations of eligibility.  According to a 2006

20   Arkansas Attorney General Opinion, the Baxter County Board of Election

21   Commissioners could not properly omit names of candidates who had failed to meet

22   all the requirements for office:

23        "As a preliminary matter, I should note that the Baxter County Board of

24        Election Commissioners is not empowered to omit from the ballot the names

25        of any candidates who have complied with the filing requirements for the

26        office. When questions arise as to a candidate's eligibility prior to an election,

27        the proper remedy is resort to the courts, by virtue of an action for a

28        declaratory judgment and mandamus." (Ark. Op. Atty. Gen. No. 2006-153,

4

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION
FOR LIMITED STAY OF DISCOVERY**

1    2006 WL 2474743 (Ark.A.G.))

2         Further, in *State ex rel. Robinson v. Craighead County Bd. of Election*

3    *Com'rs*, the Appellate Court reversed the lower court's determination that "the

4    Board of Election Commissioners had the power to make factual determinations

5    concerning a candidate's eligibility and that, once that determination was made,

6    mandamus could not compel an opposite result" (*State ex rel. Robinson v.*

7    *Craighead County Bd. of Election Com'rs* (Ark. 1989) 300 Ark. 405, 409), holding

8    that, "the board does not have the authority to declare a candidate ineligible and

9    remove his name from the ballot when there is a dispute concerning the facts or the

10   law" *(State ex rel. Robinson v. Craighead County Bd. of Election Com'rs* (Ark.

11   1989) 300 Ark. 405, 409).

12        Political boards, committees, and panels, such as the United States Congress,

13   are not proper bodies for making determinations of eligibility because of the

14   significant risk of "corrupt and partisan action" (*Irby v. Barrett* (1942) 163 S.W.2d

15   512, 514).  The court in *Irby v. Barrett* held that:

16            "If the Chairman and Secretary of the Committee have the right to say that

17            because of the decision of this court petitioner is ineligible to be a candidate

18            for office, they may also say, in any case, that for some other reason a

19            candidate is ineligible. For instance, it has been held by this court in many

20            election contests that one must pay his poll tax; that he must do so after

21            proper assessment in the time and manner required by law, and that otherwise

22            he is not eligible even to vote, and unless he were a voter he could not hold

23            office. So with other qualifications, such as residence. May this question be

24            considered or decided by the Chairman and Secretary of the Committee? It

25            may be that such power can be conferred upon them by laws of this State or

26            the rules of the party; but it is certain that this has not yet been done. If this

27            can be done, and should be done, the door would be opened wide for corrupt

28            and partisan action. It might be certified that a prospective candidate has

5

sufficiently complied with the laws of the State and the rules of a political party to become a candidate, and, upon further consideration, that holding might be recalled; and this might be done before that action could be reviewed in a court of competent jurisdiction and reversed in time for the candidate to have his name placed on the ticket. It would afford small satisfaction if, after the ticket had been printed with the name of the candidate omitted, to have a holding by the court that the name should not have been omitted." (*Irby v. Barrett* (1942) 163 S.W.2d 512, 514).

Because of the risk of "corrupt and partisan action" the proper remedy for eligibility disputes is to bring such disputes to the Court for a determination, rather than to Congress or the Electoral College, and because this Court has the power to make determinations of fact and law regarding controversies over the eligibility of a political candidate, this Court has the power to redress the injury suffered by PLAINTIFFS.

Thus, as established above, PLAINTIFFS have standing to bring this action.

## C. POLITICAL QUESTION

Defendants allege that this matter of Barack Obama's eligibility is a Political Question that is best left to the political branches to determine.  In addition, Defendants allege, on Pages 13 through 15 of their Motion to Dismiss, that Federal legislation has already provided a remedy for disputes over a candidate's eligibility for office.  As support for this position, Defendant's cite 3 United States Code (hereinafter referred to as "U.S.C.") Section 15 as the only mechanism after an election by which to challenge the qualifications of a candidate.  Defendant's interpretation is incorrect, however, as the text of the statute cited does not support Petitioner's conclusion that the United States Congress has the authority to challenge any aspect of a Presidential Election.  The Congressional authority over a Presidential election is as follows:

First, the certificates or papers from each State are presented, read, and

6

entered on the Journals of the two houses:

"Two tellers shall be previously appointed on the part of the Senate and two on the part of the House of Representatives, to whom shall be handed, as they are opened by the President of the Senate, all the certificates and papers purporting to be certificates of the electoral votes, which certificates and papers shall be opened, presented, and acted upon in the alphabetical order of the States, beginning with the letter A; and said tellers, having then read the same in the presence and hearing of the two Houses, shall make a list of the votes as they shall appear from the said certificates; and the votes having been ascertained and counted according to the rules in this subchapter provided, the result of the same shall be delivered to the President of the Senate, who shall thereupon announce the state of the vote, which announcement shall be deemed a sufficient declaration of the persons, if any, elected President and Vice President of the United States, and, together with a list of the votes, be entered on the Journals of the two Houses." (3 U.S.C.A. § 15).

Next, the President of the Senate calls for objections, if any, which are to be made in writing:

"Upon such reading of any such certificate or paper, the President of the Senate shall call for objections, if any. Every objection shall be made in writing, and shall state clearly and concisely, and without argument, the ground thereof, and shall be signed by at least one Senator and one Member of the House of Representatives before the same shall be received." (3 U.S.C.A. § 15).

The objections may not, however, be made on any matter concerning the Presidential Election.  The statute limits the objections to "any vote or paper from a State":

"When all objections so made to **any vote or paper from a State** shall have

7

---

1    been received and read, ..." (3 U.S.C.A. § 15 [emphasis added]).

2        Finally, the remedy for the objections made is for each House of Congress to

3    examine the Electors from that State, and determine whether the Electors were

4    properly elected or appointed and whether those Electors had properly cast their

5    votes:

6        "... the Senate shall thereupon withdraw, and such objections shall be

7        submitted to the Senate for its decision; and the Speaker of the House of

8        Representatives shall, in like manner, submit such objections to the House of

9        Representatives for its decision; and no electoral vote or votes from any State

10       which shall have been regularly given by electors whose appointment has

11       been lawfully certified to according to section 6 of this title from which but

12       one return has been received shall be rejected, but the two Houses

13       concurrently may reject the vote or votes when they agree that such vote or

14       votes have not been so regularly given by electors whose appointment has

15       been so certified. If more than one return or paper purporting to be a return

16       from a State shall have been received by the President of the Senate, those

17       votes, and those only, shall be counted which shall have been regularly given

18       by the electors who are shown by the determination mentioned in section 5 of

19       this title to have been appointed, if the determination in said section provided

20       for shall have been made, or by such successors or substitutes, in case of a

21       vacancy in the board of electors so ascertained, as have been appointed to fill

22       such vacancy in the mode provided by the laws of the State; but in case there

23       shall arise the question which of two or more of such State authorities

24       determining what electors have been appointed, as mentioned in section 5 of

25       this title, is the lawful tribunal of such State, the votes regularly given of

26       those electors, and those only, of such State shall be counted whose title as

27       electors the two Houses, acting separately, shall concurrently decide is

28       supported by the decision of such State so authorized by its law; and in such

8

case of more than one return or paper purporting to be a return from a State, if there shall have been no such determination of the question in the State aforesaid, then those votes, and those only, shall be counted which the two Houses shall concurrently decide were cast by lawful electors appointed in accordance with the laws of the State, unless the two Houses, acting separately, shall concurrently decide such votes not to be the lawful votes of the legally appointed electors of such State. But if the two Houses shall disagree in respect of the counting of such votes, then, and in that case, the votes of the electors whose appointment shall have been certified by the executive of the State, under the seal thereof, shall be counted. When the two Houses have voted, they shall immediately again meet, and the presiding officer shall then announce the decision of the questions submitted. No votes or papers from any other State shall be acted upon until the objections previously made to the votes or papers from any State shall have been finally disposed of." (3 U.S.C.A. § 15).

Because the language of 3 U.S.C.A. § 15 only allows for objections regarding "any vote or paper from the State," Defendants' assertion that this Federal law is the "remedy for disputes over a candidate's eligibility for office" is incorrect. Since this action is a dispute over the eligibility for Barack Obama for the office of President of the United States, and not a dispute over whether the Electors properly cast their vote, this Court has jurisdiction over this dispute and may properly make a determination on this matter.

In conclusion, as discussed above, the Electoral College lacks the authority to make a determination regarding a candidate's eligibility because it performs a purely ministerial function. Since the remedy that Defendants allege does not cover the issues presented in this case, and because political bodies are not empowered to make determinations of law and fact, this case does not present a political question.

Finally, as PLAINTIFFS have established the elements of standing, this Court

9

1  may hear this case on the merits.

2  **SUBJECT MATTER JURISDICTION**

3      A "case" arises within meaning of this clause pertaining to the judicial power

4  of the United States, when any question respecting the Constitution, treaties or laws

5  of the United States has assumed such a form that the judicial power is capable of

6  acting on it, and there must be an actual controversy over an issue, and the mere

7  form of proceeding is not significant. (*In re Summers* (1945) 65 S.Ct. 1307,

8  rehearing denied 66 S.Ct. 94).  Here, the issue is one arising under the Constitution,

9  whether Barack Obama meets the eligibility requirements for the Office of President

10 of the United States, as required under Article 2, Section 1 of the Constitution.  As

11 established above, PLAINTIFFS have standing to bring this action as they have

12 suffered a concrete injury in fact, caused by Barack Obama, for which the Court has

13 a remedy.  Because PLAINTIFFS have established the requirements for standing,

14 and because this case presents an issue regarding a Federal Question arising out of

15 the Constitution, this Court has Subject Matter Jurisdiction over the issues raised in

16 this case.

17 **ARGUMENT**

18     A stay to discovery includes all written discovery, depositions, and subpoenas

19 and may even include initial mandatory disclosures required by Federal Rule of

20 Civil Procedure (hereinafter referred to as "FRCP") 26(a). *(Medhekar v. United*

21 *States District Court* (9th Cir. 1996) 99 F.3d 325, 327). There are two narrow

22 exceptions to the discovery stay: the stay may be lifted upon a showing that

23 "particularized discovery is necessary to preserve evidence or to prevent undue

24 prejudice to that party." (15 U.S.C. § 78u-4(b)(3)(B)).

25     To prevail on the undue prejudice exception, a party must show how the

26 discovery it seeks is necessary to prevent a prejudice that is unique, improper or

27 unfair as opposed to the same prejudice or delay imposed on any plaintiff by virtue

28 of the discovery stay. *See, e.g., Medical Imaging Centers of America, Inc. v.*

10

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION
FOR LIMITED STAY OF DISCOVERY**

*Lichtenstein* (S.D. Cal. 1996) 917 F. Supp. 717, 720, 722 (refusing to lift discovery stay; that the discovery stay prevented plaintiff from obtaining documents prior to particular proxy vote was insufficient; delay and time pressure is not unique and the undue prejudice required must be "improper or unfair"); *In re Lantronix, Inc. Sec. Litig.* (C.D. Cal. Sept. 26, 2003) No. 02-03899, 2003 WL 22462393, at *2 (refusing to lift stay absent facts showing how routine delay or settlements with others constituted unfair prejudice to putative class); *Powers v. Eichen* (S.D. Cal. 1997) 961 F. Supp. 233, 235 (plaintiff's protest of "unnecessary delay in resolution of this litigation" insufficient to lift discovery stay). Here, the stay should not be granted because allowing the Department of Justice to stay discovery will create undue prejudice for PLAINTIFFS, because, as United States District Judge, David O. Carter stated at the hearing on September 8, 2009, if discovery does not commence until October 5, 2009, all parties would have limited time to conduct discovery prior to the discovery cut off date, due to the January 26, 2010, trial date (*See* Declaration of Gary G. Kreep, filed herewith). The decision to issue a stay of pretrial proceedings rests within the sound discretion of the trial court. *(Landis v. North American Co.* (1936) 299 U.S. 248, 254). The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. (FRCP 26(c)). A stay is warranted upon a showing of good cause, to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." (FRCP 26(c)(1)). To allow the stay in this circumstance would create undue prejudice because it will allow Defendants to blanketly block all discovery requests on the basis that the discovery has no relevance to subject matter jurisdiction. Additionally, there may be facts that are not readily apparent at this time that may be obtained through the discovery process which may pertain to the issues raised by Defendants in their motion to dismiss.

      For these reasons, the Court should deny the stay of discovery because

11

1    allowing the stay would create undue prejudice to PLAINTIFFS.

2
3                                    Respectfully submitted,

4    DATED: September 14, 2009        /s/ Gary G. Kreep
5                                     GARY G. KREEP
                                      UNITED STATES JUSTICE FOUNDATION
6
7                                     Attorney for PLAINTIFFS Dr. Wiley Drake and
                                      Markham Robinson
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION
FOR LIMITED STAY OF DISCOVERY**