1
2
3
4

*UNITED STATES JUSTICE FOUNDATION*
**GARY G. KREEP; SBN 066482**
**932 "D" Street, Suite 2**
**(Email: usjf@usjf.net)**
**Ramona, California 92065**
**Tel: (760) 788-6624**
**Fax: (760) 788-6414**

5
6
7

Attorney for Plaintiffs,
Dr. Wiley S. Drake and
Markham Robinson

8

## UNITED STATES DISTRICT COURT

9

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

## SANTA ANA (SOUTHERN) DIVISION

11

12
13
14
15
16
17
18

CAPTAIN PAMELA BARNETT, et al.,

                  Plaintiffs,

       v.

BARACK HUSSEIN OBAMA, et al.,

             Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO:
SACV09-00082-DOC (Anx)

**PLAINTIFFS' POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

DATE:  October 5, 2009
TIME:   8:30 a.m.
CTRM:  9D

Hon. David O. Carter

19
20
21
22
23
24
25
26
27
28

i

**PLAINTIFFS' POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1

# **<u>TABLE OF CONTENTS</u>**

2

3  TABLE OF AUTHORITIES .................................................................. iii

4  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO

5      DEFENDANTS' MOTION TO DISMISS ........................................................ 1

6  I.    INTRODUCTION   ........................................................... 1

7  II.    STATEMENT OF THE CASE ...................................................... 1

8  III.    SUBJECT MATTER JURISDICTION ........................................... 1

9  IV.    STANDING ................................................................................ 2

10      A.    INJURY AND CAUSATION .................................................. 2

11      B.    REDRESSABLE BY THE COURT ......................................... 4

12          1.    POLITICAL QUESTION ............................................. 4

13  V.    THE ELECTORAL COLLEGE LACKS THE POWER TO MAKE

14      ELIGIBILITY DETERMINATIONS ....................................... 7

15  VI.    POLITICAL BODIES LACK THE POWER TO MAKE ELIGIBILITY

16      DETERMINATIONS ......................................................... 8

17  VII.    CONGRESS LACKS THE POWER TO MAKE ELIGIBILITY

18      DETERMINATIONS........................................................ 11

19  VIII.  CONCLUSION   ........................................................... 14

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' POINTS AND AUTHORITIES IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3  Baker v. Carr

4       369  U.S.  186  (1962).  .................................................  4

5  Bivens v. Six Unknown Agents

6       403 U.S. 388 (1971). .................................................  2

7  Bullfrog Films, Inc. v. Wick

8       847 F.2d 502 (9th Cir. 1988). .................................  2

9  Gladstone Realtors v. Village of Bellwood

10       441  U.S.  91  (1979).  ...........................................  2

11  Hollander v. McCain

12       566  F.Supp.2d 63 (D.N.H. 2008).  ...................  3

13  Japan Whaling Ass'n v. American Cetacean Soc.

14       478 U.S. 221 (1986). ........................................  5, 6

15  Lujan v. Defenders of Wildlife

16       504  U.S.  555.  ....................................................  3

17  Williams v. Rhodes

18       393 U.S. 23 (1968)(Harlan, J., concurring). ...................  7

19

### STATE CASES

20  *Irby v. Barrett*

21       163  S.W.2d 512, 514 (Ark. 1942).  ........................  9, 10

22  *State ex rel. Robinson v. Craighead County Bd. of Election Com'rs*

23       779  S.W.2d  169, 171  (Ark. 1989).  .......................  9

24

### UNITED STATES CONSTITUTION

25  U.S. Const. Art. II, §1. .....................................  2, 6, 7

26  U.S.  Const.  Art.  III,  §2.  ..................................  2

27  U.S.  Const.  Art.  V.  ......................................  6

28

### FEDERAL STATUTES

**PLAINTIFFS' POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

3 U.S.C.A. 15. ........................................................................... 11, 12, 13, 14

28 U.S.C. § 1331 ................................................................................ 2

42 U.S.C. § 1983 ................................................................................ 1

42 U.S.C. § 1988 ................................................................................ 1

**STATE ATTORNEY GENERAL OPINIONS**

Ark. Op. Atty. Gen. No. 2006-153, 2006 WL 2474743 (Ark.A.G.). ......................... 9

**PLAINTIFFS' POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## I.

## INTRODUCTION

This action is brought by, among others, Plaintiffs Dr. Wiley Drake and Markham Robinson (hereinafter referred to as "PLAINTIFFS").  Dr. Wiley Drake was the Vice-Presidential nominee for the American Independent Party in the 2008 Presidential Election on the California ballot.  Markham Robinson was a pledged Presidential Elector for the American Independent Party in the 2008 Presidential Election for the California ballot and is currently the Chairman of the American Independent Party.  Dr. Orly Taitz is representing Plaintiff Dr. Alan Keyes, herein, who was the Presidential nominee for the American Independent Party in the 2008 Presidential Election on the California ballot.

This response to Defendants' Motion to Dismiss is limited to the issues affecting PLAINTIFFS.  The issues regarding Quo Warranto, 42 U.S.C. § 1983 and § 1988, and the Freedom of Information Act are not addressed in this response because it is our understanding that Dr. Orly Taitz will be addressing these issues in her response to this Motion to Dismiss.

## II.

## STATEMENT OF THE CASE

This case, filed on January 20, 2009, is brought by, among others, a Vice-Presidential candidate and a Pledged Presidential Electoral for the 2008 United States Presidential election, who seek a determination by this Court as to whether Defendant Barack Obama has met all of the Constitutional requirements for eligibility for the office of President of the United States.

## III.

## SUBJECT MATTER JURISDICTION

Federal Question jurisdiction refers to the subject matter jurisdiction of

1

1  federal courts for claims arising under the U.S. Constitution, treaties, federal
2  statutes, administrative regulations or common law. U.S. Constitution, Article III, §
3  2; 28 United States Code (hereinafter referred to as "U.S.C.") §1331. Here, the issue
4  is one arising under the Constitution, whether Barack Obama meets the eligibility
5  requirements for the Office of President of the United States, as required under
6  Article II, § 1 of the United States Constitution.

7      A case arises under the Constitution, as opposed to a federal statute, in the
8  unconventional circumstance where the plaintiff's attorney cannot find any federal
9  legislation that applies to the defendant's misconduct. For example, when there was
10  no applicable provision in the Federal Tort Claims Act for suits against federal
11  agents, their desecration of the plaintiff's rights would have been a wrong without a
12  remedy. These agents had violated the Fourth Amendment's prohibition of
13  unreasonable search and seizure. Plaintiff's attorney sought money damages from
14  those agents, alleging a private right of action, arising directly under the
15  constitutional protection afforded by the U.S. Constitution. *Bivens v. Six Unknown*
16  *Agents*, 403 U.S. 388 (1971).

17      Because this case presents an issue regarding a Federal Question arising out
18  of the Constitution, this Court has Subject Matter Jurisdiction over the issues raised
19  in this case, and the Court should deny this ground for dismissal.

20                                  **IV.**
21                              **STANDING**
22  **A. INJURY AND CAUSATION**

23      Standing generally requires a showing that a plaintiff has suffered actual loss,
24  damage, or injury, or is threatened with impairment of his or her own interests.
25  *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979); *Bullfrog Films,*
26  *Inc. v. Wick*, 847 F.2d 502, 506 (9th Cir. 1988). This tends to assure that a plaintiff
27  has a sufficient stake in the outcome of the suit to make it a real "case or
28  controversy." *Id.*

**PLAINTIFFS' POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1    The "injury in fact" requirement must involve "an invasion of a legally

2 protected interest which is (a) concrete and particularized... and (b) actual or

3 imminent, not conjectural or hypothetical..." *Lujan v. Defenders of Wildlife*, 504

4 U.S. 555, 559-560 (1992)(internal quotes and citations omitted). Second, there must

5 be a causal connection between the injury and the conduct complained of-the injury

6 has to be "fairly ... trace[able] to the challenged action of the defendant, and not ...

7 th[e] result [of] the independent action of some third party not before the court. *Id.*

8 at 560. This standard for injury has been extended to political candidates. The Court

9 in *Hollander v. McCain* held "a candidate or his political party has standing to

10 challenge the inclusion of an allegedly ineligible rival on the ballot, on the theory

11 that doing so hurts the candidate's or party's own chances of prevailing in the

12 election." *Hollander v. McCain,* 566 F.Supp.2d 63 (D.N.H. 2008).  Here, Dr. Wiley

13 Drake was a candidate for Vice-President of the United States running against

14 Defendant Barack Obama in the 2008 election.  As a Vice-Presidential candidate,

15 Dr. Drake has an interest in having a fair competition for that position.  This interest

16 is akin to the interest of an Olympic competition, where one of the competitors in an

17 athletic competition is found to be using performance enhancing drugs, but is not

18 removed despite a violation of the rules, and all of the athletes who had trained for

19 the event legitimately are harmed if that disqualified contestant remains as the

20 contestants would not be competing on a level playing field.  Defendant Obama

21 entered this race without having met the eligibility requirements for the office of

22 President of the United States and, as a result, Dr. Drake, as the Vice-Presidential

23 candidate on the American Independent Party ticket, has been injured because he

24 did not have fair competition for the office of Vice-President of the United States,

25 and, thus, was not given a fair opportunity to obtain votes for Vice-President of the

26 United States.

27    Here also, Mr. Robinson was a Presidential Elector in the 2008 election.  As

28 an Elector, and as head of a political party, he had an interest in there being a fair

**PLAINTIFFS' POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1   competition between the candidate he pledged to vote for, and the political party he

2   heads, and the other candidates for the office of President of the United States and

3   the political parties that they represent.  Mr. Obama entered this race without having

4   met the eligibility requirements for the office of President of the United States and,

5   as a result, Mr. Robinson has been injured because the candidate he pledged to vote

6   for, and the political party he heads, did not have a fair competition for the office of

7   President and Vice-President of the United States, thus preventing Mr. Robinson

8   from casting a vote for the candidates he pledged to vote for as Elector.

9        As a result, PLAINTIFFS have suffered a concrete injury in fact, and the

10  Court should deny this ground for dismissal.

11  **B. REDRESSABLE BY THE COURT**

12  **1. Political Question**

13       Defendants assert that the issue of whether Mr. Obama is eligible for the

14  office of President of the United States is a political question that is not within the

15  power of this Court to adjudicate.  Defendants cite *Baker v. Carr* in their Motion,

16  which states:

17       Prominent on the surface of any case held to involve a political question is

18       found a textually demonstrable constitutional commitment of the issue to a

19       coordinate political department; or a lack of judicially discoverable and

20       manageable standards for resolving it; or the impossibility of deciding

21       without an initial policy determination of a kind clearly for nonjudicial

22       discretion; or the impossibility of a court's undertaking independent

23       resolution without expressing lack of the respect due coordinate branches of

24       government; or an unusual need for unquestioning adherence to a political

25       decision already made; or the potentiality of embarrassment from multifarious

26       pronouncements by various departments on one question. *Baker v. Carr*, 369

27       U.S. 186 (1962).

28       Although quoted in, essentially, all political question cases, the *Baker v. Carr*

4

**PLAINTIFFS' POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

standard does not give clear guidelines to the Court as to which matters are non-adjudicatable political questions.  Defendants further allege that there is a "textually demonstrable constitutional commitment" of the issue of eligibility for the office of President.  However, Defendants fail to adequately support their assertion that there is a "textually demonstrable constitutional commitment" regarding eligibility for the office of President of the United States, because the section of the Constitution cited by Defendants refers to the appointment of Electors by the States and the direction of the same by Congress. Defendants' Motion to Dismiss 12:6-10.  As subsequently discussed, Congress has oversight to determine whether an Elector was properly elected or appointed and whether an Elector properly cast a vote for President.  However, neither Congress, nor the Electoral College, has the authority, as a result of either the Constitution or a Federal Statute, to make determinations of eligibility or to exclude a candidate who fails to meet the eligibility requirements as such requirements are not political in nature.

> "The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch. The Judiciary is particularly ill suited to make such decisions, as 'courts are fundamentally underequipped to formulate national policies or develop standards for matters not legal in nature.'" *Japan Whaling Ass'n v. American Cetacean Soc.,* 478 U.S. 221, 230 (1986).

Thus, while there are issues which the Court is ill equipped to determine, when an issue is one that does not "revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch," the Court then has the jurisdiction to make a determination of that issue.  *Id.*  The mere fact that the issue of eligibility is an issue related to elections does not remove it from the Court's jurisdiction.  The mere fact

5

1  that an issue has political elements also does not preclude the Court from hearing a

2  case.  The Court in *Japan Whaling Ass'n v. American Cetacean Soc.* also held,

3  "[b]ut under the Constitution, one of the Judiciary's characteristic roles is to

4  interpret statutes, and we cannot shirk this responsibility merely because our

5  decision may have significant political overtones." *Id.* at 230.  This issue of whether

6  Mr. Obama is eligible to serve in the office of President of the United States is one

7  that has "significant political overtones," given that it has a direct relation to the

8  election of the most political office in the United States, but it is nonetheless an

9  issue which the Court can make a determination on, because the requirements are

10  clearly stated in Article II, Section 1 of the U.S. Constitution, and the Court

11  routinely decides questions of law and of fact such as the issue in this case.

12      Defendants allege, on page 9 of their Motion to Dismiss, that "the political

13  question doctrine precludes redress to any Plaintiffs because such redress would

14  improperly arrogate to this Court jurisdiction over political questions as to the

15  fitness and qualifications of the President which the Constitution entrusts

16  exclusively to the House and the Senate."  Defendants further allege, on page 12 of

17  their Motion to Dismiss, that "issues related to a candidate's eligibility for the office

18  of president rest, in the first instance, with the voters and with the Electoral College,

19  the Constitutionally created body responsible for selecting the President of the

20  United States."  This assertion is incorrect in a number of ways.  First, a provision

21  of the Constitution may not be disregarded by means of a popular vote of the

22  people, as there are specific guidelines for amending the Constitution of the United

23  States.  The United States Constitution requires a two-thirds vote of both Houses of

24  Congress and a ratification by three-fourths of all State legislatures in the United

25  States. U.S. Constitution, Article V.  Even if the people of the United States voted to

26  elect as President a candidate who did not qualify for the position, that vote would

27  not be sufficient to overcome the Constitutional requirements for office and make

28  that candidate eligible. U.S. Constitution, Article II. Section 1. Because voters can

6

**PLAINTIFFS' POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1  and do vote for candidates that are liked by the voters, even if those candidates may

2  not be eligible for the position, the voters do not have the power or the right to

3  determine the eligibility of a candidate.

4  Thus, because this matter is not a political question best left to another branch

5  of the government, and, as discussed above, PLAINTIFFS have suffered concrete

6  injuries, PLAINTIFFS have sanding and the Court should deny this ground for

7  dismissal.

8  **V.**

9  **THE ELECTORAL COLLEGE LACKS THE POWER TO MAKE**

10  **ELIGIBILITY DETERMINATIONS**

11  Defendants cite in their Motion to Dismiss, the concurring opinion in

12  *Williams v Rhodes* as support for their contention that it is the exclusive role of the

13  Electoral College to decide whether a presidential candidate is eligible for the

14  office. Defendants' Motion to Dismiss, 12:10. However, the concurrence instead

15  indicated the concerns that the founders had regarding the fact that the nation was

16  too spread out for the average citizen to be able to make an informed decision about

17  whom to vote for as president, "[t]he [Electoral] College was created to permit the

18  most knowledgeable members of the community to choose the executive of a nation

19  whose continental dimensions were thought to preclude an informed choice by the

20  citizenry at large." *Williams v. Rhodes*, 393 U.S. 23 (1968)(Harlan, J., concurring).

21  This concern is no longer relevant because, while the original intent for the

22  Electoral College was to have a set number of "knowledgeable members of the

23  community" make the decision of whom to elect as president, the modern function

24  of the Electoral College is to simply cast a vote for the Presidential Candidate who

25  received the majority of the vote from the State which each Elector represents.  This

26  change in the nature of the Electoral College has taken place because information

27  about each candidate is now available for every voter in the country, which allows

28  each and every voter to be "knowledgeable members of the community" capable of

7

making informed decisions of whom to elect president.  In twenty-six States, and the District of Columbia, Presidential Electors are prohibited by statute from voting in variance with their pledges, or, if they do, they face civil or criminal penalties and fines.

Furthermore, the Electoral College is not empowered with the authority to determine the eligibility of any candidate.  As discussed above, in twenty-six States and the District of Columbia, Presidential Electors are prohibited by statute from voting in variance with their pledges, or, if they do, they face civil or criminal penalties and fines.  The act of determining eligibility is one that requires discretionary authority, so that a candidate found to be ineligible may be removed.  However, any discretionary authority of the majority of the State's Presidential Electors has been removed by statute, and the Presidential Electors, instead, perform a ministerial function of casting their votes in accordance with the popular vote of the State that each Elector represents.  The assertion of Defendants that the Electoral College has the authority to make any determination of a Presidential candidate's qualifications is unpersuasive because, while the historical intent of the of the Electoral College was to make such determinations, the modern majority trend of the States is to limit the duties of the Electors to the ministerial role of casting a vote for the candidate chosen by the popular vote of their respective States.

Further, other than a Concurring Opinion, Defendants offer no modern precedent for the claimed power of the Electoral College.  Thus, the Electoral College lacks the authority to make a determination of a candidates eligibility, and the Court should deny these grounds for dismissal.

## VI.

## POLITICAL BODIES LACK THE POWER TO MAKE ELIGIBILITY DETERMINATIONS

In similar disputes over eligibility of candidates at the State level, political bodies have been held to be not the proper venue for making determinations of

8

eligibility.  According to a 2006 Arkansas Attorney General Opinion, the Baxter County Board of Election Commissioners could not properly omit names of candidates who had failed to meet all the requirements for office:

> As a preliminary matter, I should note that the Baxter County Board of Election Commissioners is not empowered to omit from the ballot the names of any candidates who have complied with the filing requirements for the office. When questions arise as to a candidate's eligibility prior to an election, the proper remedy is resort to the courts, by virtue of an action for a declaratory judgment and mandamus. Ark. Op. Atty. Gen. No. 2006-153, 2006 WL 2474743 (Ark.A.G.).

Further, in *State ex rel. Robinson v. Craighead County Bd. of Election Com'rs*, the Appellate Court reversed the lower court's determination that "the Board of Election Commissioners had the power to make factual determinations concerning a candidate's eligibility and that, once that determination was made, mandamus could not compel an opposite result" *State ex rel. Robinson v. Craighead County Bd. of Election Com'rs,* 779 S.W.2d 169, 171 (Ark. 1989) holding that, "the board does not have the authority to declare a candidate ineligible and remove his name from the ballot when there is a dispute concerning the facts or the law" *Id.* at 171.  Political boards, committees, and panels, such as the United States Congress, are not proper bodies for making determinations of eligibility because of the significant risk of "corrupt and partisan action" *Irby v. Barrett,* 163 S.W.2d 512, 514 (Ark. 1942).  The court in *Irby v. Barrett* held that:

> If the Chairman and Secretary of the Committee have the right to say that because of the decision of this court petitioner is ineligible to be a candidate for office, they may also say, in any case, that for some other reason a candidate is ineligible. For instance, it has been held by this court in many election contests that one must pay his poll tax; that he must do so after proper assessment in the time and manner required by law, and that otherwise

9

he is not eligible even to vote, and unless he were a voter he could not hold office. So with other qualifications, such as residence. May this question be considered or decided by the Chairman and Secretary of the Committee? It may be that such power can be conferred upon them by laws of this State or the rules of the party; but it is certain that this has not yet been done. If this can be done, and should be done, the door would be opened wide for corrupt and partisan action. It might be certified that a prospective candidate has sufficiently complied with the laws of the State and the rules of a political party to become a candidate, and, upon further consideration, that holding might be recalled; and this might be done before that action could be reviewed in a court of competent jurisdiction and reversed in time for the candidate to have his name placed on the ticket. It would afford small satisfaction if, after the ticket had been printed with the name of the candidate omitted, to have a holding by the court that the name should not have been omitted. *Id*.

Because of the risk of "corrupt and partisan action," the proper remedy for eligibility disputes is to bring such disputes to a Court for determination, rather than to Congress or the Electoral College, and, because this Court has the power to make determinations of fact and law regarding controversies over the eligibility of a political candidate, this Court has the power to redress the injury suffered by PLAINTIFFS.

Thus, since political bodies are not the proper venue to determine whether a candidate is eligible for the office of President of the United States, the Court should deny these grounds for dismissal.

// //

// //

// //

**VII.**

10

**PLAINTIFFS' POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## CONGRESS LACKS THE POWER TO MAKE ELIGIBILITY DETERMINATIONS

Defendants allege, on Pages 13 through 15 of their Motion to Dismiss, that in addition to the matter of Barack Obama's eligibility being a "Political Question", Federal legislation has already provided a remedy for disputes over a candidate's eligibility for office.  As support for this position, Defendant's cite the United States Code as the only mechanism after an election by which to challenge the qualifications of a candidate.  3 U.S.C. § 15. Defendant's interpretation is incorrect, however, as the text of the statute cited does not support Petitioner's conclusion that the United States Congress has the authority to challenge any aspect of a Presidential Election.  The Congressional authority over a Presidential election is as follows:

First, the certificates or papers from each State are presented, read, and entered on the Journals of the two houses:

Two tellers shall be previously appointed on the part of the Senate and two on the part of the House of Representatives, to whom shall be handed, as they are opened by the President of the Senate, all the certificates and papers purporting to be certificates of the electoral votes, which certificates and papers shall be opened, presented, and acted upon in the alphabetical order of the States, beginning with the letter A; and said tellers, having then read the same in the presence and hearing of the two Houses, shall make a list of the votes as they shall appear from the said certificates; and the votes having been ascertained and counted according to the rules in this subchapter provided, the result of the same shall be delivered to the President of the Senate, who shall thereupon announce the state of the vote, which announcement shall be deemed a sufficient declaration of the persons, if any, elected President and Vice President of the United States, and, together with a list of the votes, be entered on the Journals of the two Houses. 3 U.S.C. § 15.

11

Next, the President of the Senate calls for objections, if any, which are to be made in writing:

> Upon such reading of any such certificate or paper, the President of the Senate shall call for objections, if any. Every objection shall be made in writing, and shall state clearly and concisely, and without argument, the ground thereof, and shall be signed by at least one Senator and one Member of the House of Representatives before the same shall be received.  3 U.S.C. § 15.

The objections may not, however, be made on any matter concerning the Presidential Election.  The statute limits the objections to "any vote or paper from a State":

> "When all objections so made to **any vote or paper from a State** shall have been received and read, ..." 3 U.S.C. § 15 [emphasis added].

Finally, the remedy for the objections made is for each House of Congress to examine the Electors from that State, and determine whether the Electors were properly elected or appointed and whether those Electors had properly cast their votes:

> ... the Senate shall thereupon withdraw, and such objections shall be submitted to the Senate for its decision; and the Speaker of the House of Representatives shall, in like manner, submit such objections to the House of Representatives for its decision; and no electoral vote or votes from any State which shall have been regularly given by electors whose appointment has been lawfully certified to according to section 6 of this title from which but one return has been received shall be rejected, but the two Houses concurrently may reject the vote or votes when they agree that such vote or votes have not been so regularly given by electors whose appointment has been so certified. If more than one return or paper purporting to be a return from a State shall have been received by the President of the Senate, those

12

---

votes, and those only, shall be counted which shall have been regularly given by the electors who are shown by the determination mentioned in section 5 of this title to have been appointed, if the determination in said section provided for shall have been made, or by such successors or substitutes, in case of a vacancy in the board of electors so ascertained, as have been appointed to fill such vacancy in the mode provided by the laws of the State; but in case there shall arise the question which of two or more of such State authorities determining what electors have been appointed, as mentioned in section 5 of this title, is the lawful tribunal of such State, the votes regularly given of those electors, and those only, of such State shall be counted whose title as electors the two Houses, acting separately, shall concurrently decide is supported by the decision of such State so authorized by its law; and in such case of more than one return or paper purporting to be a return from a State, if there shall have been no such determination of the question in the State aforesaid, then those votes, and those only, shall be counted which the two Houses shall concurrently decide were cast by lawful electors appointed in accordance with the laws of the State, unless the two Houses, acting separately, shall concurrently decide such votes not to be the lawful votes of the legally appointed electors of such State. But if the two Houses shall disagree in respect of the counting of such votes, then, and in that case, the votes of the electors whose appointment shall have been certified by the executive of the State, under the seal thereof, shall be counted. When the two Houses have voted, they shall immediately again meet, and the presiding officer shall then announce the decision of the questions submitted. No votes or papers from any other State shall be acted upon until the objections previously made to the votes or papers from any State shall have been finally disposed of.  3 U.S.C. § 15.

Because the language of the code section only allows for objections regarding

13

"any vote or paper from the State," Defendants' assertion that this Federal law is the "remedy for disputes over a candidate's eligibility for office" is incorrect. 3 U.S.C. § 15. Since this action is a dispute over the eligibility of Barack Obama for the office of President of the United States, and not a dispute over whether the Electors properly cast their vote, this Court has jurisdiction over this dispute and should deny this ground for dismissal.

## VIII.

## CONCLUSION

Since PLAINTIFFS have established subject matter jurisdiction, the elements of standing, and the lack of any remedy from the political branches of the U.S. government, this Court may hear this case on the merits. For these reasons, the Court should deny Defendant's Motion to Dismiss on all the grounds raised by Defendants.

Respectfully submitted,

DATED: September 18, 2009      */s/ Gary G. Kreep*
GARY G. KREEP
UNITED STATES JUSTICE FOUNDATION

Attorney for PLAINTIFFS Dr. Wiley Drake and Markham Robinson

**PLAINTIFFS' POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**