1
2
3  **Dr. Orly Taitz, Attorney-at-Law**
4  **29839 S. Margarita Pkwy**
   **Rancho Santa Margarita CA 92688**
5  **ph. 949-683-5411**
   **fax 949-766-7036**
6  **California State Bar No.: 223433**
7  E-Mail: dr_taitz@yahoo.com

8              UNITED STATES DISTRICT COURT
        FOR THE CENTRAL DISTRICT OF CALIFORNIA
9            SANTA ANA (SOUTHERN) DIVISION

10 Captain Pamela Barnett, et al.,          §
              Plaintiffs,                   §
11                                          §
        v.                                  §    Civil Action:
12                                          §
   Barack Hussein Obama,                    §    **SACV09-00082-DOC**
13 Michelle L.R. Obama, Hilary Rodham       §
   Clinton, Secretary of State, Robert M.   §    PLAINTIFFS' PRELIMINARY
14 Gates, Secretary of Defense,             §    RESPONSE TO DOC. #56
   Joseph R. Biden, Vice-President and      §    DEFENDANTS' MOTION TO
15 President of the Senate,                 §    DISMISS (with reservation of
              Defendants.                   §    right to Amend Complaint)
16

17 **PRELIMINARY RESPONSE TO DEFENDANTS' 9-04-09**
              **MOTION TO DISMISS**
18 **(with reservation of rights to Respond further by filing Plaintiffs'**
   **Second Amended Complaint on or before Friday October 2, 2009)**
19
20
21
22
23
24
25
26
27
28

1
2
3

# **TABLE OF CONTENTS**

4    MEMORANDUM OF POINTS AND AUTHORITIES (PG 1)

5    POLITICAL RELATIVITY VS. CONSTITUTIONAL ABOSOLUTES (PG 1, l 10)

6
7    QUO WARRANTO (PG 3, L 19)

8    PLAINTIFF'S PRE-LITIGATION INQUIRIES (PG 4, L26)

9    CLASSES OF PLAINTIFFS: OATH TAKERS AND CANDIDATES (PG 9, L 11)

10
     WHAT IF THE POLITICAL MAJORITY CHOOSES SLAVERY? (PG 13, L 20)

11
     STANDING-POLITICAL QUESTION-REDRESSABILITY: FLAST V COHEN (PG 16,
12   L 17)

13
     CONSTITUTION AS IMMUTABLE FRAME (PG 21, L 12)

14
15   CONCLUSION (PG 25, L 14)

16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

United States v. Carolene Products Co
     304 U.S. 144, Footnote 4                              page #17

Wisconsin v. Yoder
     406 U.S. 205 (1972)                                   page #17

Flast v. Cohen
     392 U.S. 83, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968)  pages #19,20,25

United States v. Sprague,
     282 U.S. 716, 731, 51 S.Ct. 220, 75 L.Ed. 640 (1931)   page #23

Gibbons v. Ogden,
     22 U.S. 1, 9 Wheat. 1, 188, 6 L.Ed. 23 (1824)          page #23

D.C. v. Heller
     128 S.Ct. 2783, 2788; 171 L.Ed.2d 637, 648 (2008)      page #23

D.C. v. Heller, supra,
     128 S.Ct. at 2790-1; 171 L.Ed.2d at 650 (2008)         page #25

United States v. Verdugo-Urquidez
     494 U.S. 259, 265, 110 S.Ct. 1056, 108 L.Ed.2d 222 [1990]  page #25

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' PRELIMINARY RESPONSE TO DEFENDANTS' MOTION TO DISMISS, to be supplemented by filing Plaintiffs' Second Amended Complaint on or before October 2, 2009

**Come now the Plaintiffs** with this their Preliminary Response to Defendants' September 4, 2009, Document 56 Motion to Dismiss (with reservation of rights to Respond further by filing Plaintiffs' Second Amended Complaint on or before Friday, October 2, 2009).

**POLITICAL RELATIVITY vs. CONSTITUTIONAL ABSOLUTES: IS THE POLITICAL QUESTION DOCTRINE VIABLE AS A MEANS TO EVADE COMPLIANCE WITH UNVARIABLE STANDARDS?**

Fundamentally, this case comes down to a single bifurcated question question: (1A) does the constitution mean what it says when it lays down absolute parameters, such as the age and citizenship qualifications to be President, and (1B) to whom does the investigation and enforcement of this constitutional provision: to the Congress, the People, or can the President get by merely asserting his qualifications without presenting evidence which would be competent as Summary Judgment (admissible) evidence under Rule 56 of the Federal Rules of Civil Procedure?

The Plaintiffs have brought their complaint as a matter of first impression to ask this Court to determine, find, hold, and rule that the investigation and enforcement of this right belongs to ***the people***, even members of a discrete and insular minority of the people, even if this group lacks majoritarian political power.  Plaintiffs respond to the Defendants' Motion to Dismiss and ask this Court to rule, pursuant to the First and Ninth Amendments that they may sue to enforce constitutional absolutes, such as the constitutional requirements for President of the United States. Plaintiffs assert an inalienable, reserved right to sue for Constitutional conformity in this case even though they concede that the

1
2
3    Defendants have shown that primary, first line actions **could** and **should** have
4    been taken by members of Congress or the Electoral College, pursuant to the
5    Twelfth and Twentieth Amendments for instance.  **Case 8:09-cv-00082-DOC-**
6    **AN, Document 56, Filed 09/04/2009, Page 2o of 32: Defendant's Motion to**
7    **Dismiss at 13, ll. 1-14.**
8         Of course, what Congress must do in the case of obvious electoral
9    deadlocks or recognized and admitted problems with qualification for office is
10   not at all the point raised by Plaintiffs' complaint and evidence.  Plaintiffs'
11   complaint and evidence allege and confirm that the Presidency in 2008 was
12   taken by fraud, and not even by fraud in the counting of votes, but by fraud in
13   the traditional common law sense of a material misrepresentation of an
14   important fact upon which Plaintiffs could be reasonably expected to rely to
15   their detriment, and to the detriment of constitutional government.

16   > The Constitution's textual commitment of this responsibility is a
17   > responsibility that Congress has embraced.  Both the House and the
18   > Senate have standing committees with jurisdiction to decide
     > questions relating to Presidential elections.

19   ***Idem*: Defendant's Motion to Dismiss at 13, ll 15-17.**

20        Where Congress has done absolutely nothing to investigate or prosecute a
21   question, Defendants' position appears to be that this very inaction or
22   acquiescence by Congress creates a presumption of legitimacy.  Apparently,
23   Defendants would have this Court believe, hold, rule, and accept that utter and
24   complete inaction, stony silence even by the Vice-President of an opposing party
25   sitting as President of the Senate during the certification of the electoral vote to
26   Congress pursuant to 3 U.S.C. §15, is and must be sufficient to satisfy the people
27   that the President has met the Constitutional qualifications for office.  **Idem:**
28   **Motion to Dismiss at 13-14.**  The Defendants' position in this regard is simply

a preposterous "cop out".  Defendants in effect ask this Court to conclude, find, hold, and rule that "willful disregard of the letter of the law is proof of compliance with that law."  Plaintiffs submit and contend, by contrast, that Congress' neglect and derogation of its duty to take investigative or prosecutorial action does not render any unchallenged action legitimate.  Surely in a free society, the **sovereign people** have more and better rights.

Nor is Congressional inaction sufficient to nullify and obliterate the rights of **the people** to Petition the Federal Courts for Redress of one or more very specific constitutional violations, or for that matter to petition a court to declare and adjudge that the electoral process has been perverted by fraud.  The rule in a free society must be the contrary: whenever authority or eligibility are questioned, Congress, and in default of Congressional action, **the people**, may and should presume the absence of authority and eligibility.   The Federal Judicial Courts are the final recourse of the people, and the access of **the people** to the Courts to challenge the unconstitutional exercise of authority is guaranteed by the First and Ninth Amendments.

## QUO WARRANTO

Or at least, this is the theory behind the law of **quo warranto**, which is and was (as a practical matter) the point at which the undersigned counsel, on behalf of her clients, the Plaintiffs, began her quest for the preservation of truth, justice, and the American Way: by what credentials, qualifications, right or title does any person who holds office claim his right to that office.  The common law writ of **quo warranto** has been all but completely suppressed at the federal level in the United States (in that it is limited in exercise to the Attorney General), and deprecated at the state level.

Plaintiffs contend that *quo warranto* remains a right under the Ninth Amendment as this clause of the Bill of Rights was understood and presumed by the Founders.  It is the promise of the reservation of the right to bring the sovereign prerogative writ of *quo warranto*, which affords the only judicial (and indeed, only politically realistic) remedy for violations of the Constitution by public officials and agents.   It was to give the Courts the independence to judge and punish constitutional violations and derogations without fear of political reprisal that the Founders gave life tenure to Article III judges.

Plaintiffs accordingly demand that this Court breathe life into *quo warranto* and all the other royal prerogative writs preserved in the Ninth Amendment which must be combined with a general reinvigorating standing for private prosecution of public rights, subverted by the decision in *Frothingham v. Mellon*, 262 U.S. 447 (1923), as is discussed in S. Winter's, *The Metaphor of Standing and the Problem of Self-Governance*, Stanford Law Review  July, 1988, 40 Stan. L. Rev. 1371 (see further discussion below):

> It is almost de rigueur for articles on standing to quote Professor Freund's testimony to Congress that the concept of standing is "among the most amorphous in the entire domain of public law." One of the traditional criticisms of standing law is that it is confusing and seemingly incoherent. Even the staunchest judicial advocates of the doctrine readily admit as much: "We need not mince words when we say that the concept of 'Art. III standing' has not been defined with complete consistency...."

The history of Plaintiffs' struggles to raise an effective challenge to the Defendants' failure to prove the President's constitutional qualifications for office merit some brief attention here.

## PLAINTIFFS' PRELITIGATION INQUIRIES: quo warranto & FOIA
### Quo Warranto

On March 3rd undersigned attorney has submitted a *quo warranto* complaint on behalf of some of the plaintiffs as relators to the Attorney General

of the United States, Mr. Eric Holder (Letter and Application for Writ attached as Exhibit G).  Mr. Holder did not respond.

On April 1ˢᵗ the undersigned attorney has submitted **quo warranto** request on behalf of some of the plaintiffs as relators to the U.S. attorney for the District of Columbia Jeffrey A Taylor.  Mr. Taylor never responded, but rather quit his job within 60 days. No response was ever received from his successor U.S. Attorney Channing Philips either (Certified Receipts of letter to Mr. Taylor Exhibit H).  When the government (attorney general) does not proceed with **quo warranto** action, the plaintiffs can step into the shoes of the government and institute their own action as Relators.  That what was done in this action.

Defendants show a certain confusion of mind at several points in their Motion to Dismiss, for example in their discussion of **quo warranto** on pages 16-18 of their September 4, 2009, Motion to Dismiss when they write that Plaintiffs express "apparent dissatisfaction with the precedents in the District of Columbia" (Motion to Dismiss at 18, ll 1-3).

What Plaintiffs actually reported on pages 14-16, ¶¶32-38 of their First Amended Complaint, was the story of **Hollister v. Soetero** and how this case shows the futility of making demands on the Attorney Genral in the District of Columbia not as shown by precedent but by treatment involved in silencing a fellow attorney (Hemenway) who earlier this year dared to TRY to raise questions concerning Obama's eligibility in the D.C. circuit, he was sanctioned merely for trying. The mere fact that several courts have unjustly closed the door on this inquiry is not evidence that the inquiry itself is frivolous or unwarranted.  It is more likely evidence of the political nature of some of the courts, and of a concerted effort to "chill" professional enthusiasm for politically dangerous constitutional challenges (See C.J. Taney in **Luther v. Borden** below).

1

2

3    The question is not one of precedent, the question is whether politics

4  dictate the outcome in many or most Obama-related cases, where avoiding

5  discovery and fact-finding is the primary (and outcome-determinative) goal.

6  Plaintiff submits that if discovery is ever allowed in this case, it will be rapidly

7  settled by the resignation or impeachment of the President.  If the stone wall of

8  secrecy and suppression is ever removed, if California sunshine is ever allowed

9  to shine for one day on the real evidence, the Presidency of Barack Hussein

10  Obama will be rapidly brought to a rather embarrassing close, and the

11  Defendants' counsel know it, just as Judges Land and Lazzara know it in Georgia

12  and Florida.   Secrecy and refusal to divulge information can have only one

13  possible purpose: to hide an inconvenient truth.  Everywhere the Plaintiffs or

14  their counsel have gone, they have been met with resistance, which can only be

15  described as irrational if there were nothing to hide.

16    The purpose of pleading and arguing the elements and history of *quo*

17  *warranto* in this case is to breach the barriers in this case and cut through to

18  the heart of the matter.   This Court has the power to do one of two things:

19  under choice of law principles this Court MAY (because of the residence or

20  principle place of residence or offices of most of the Defendants), under choice

21  of law principles, apply the *quo warranto* statute of the District of Columbia,

22  acknowledging on venue principles that Plaintiffs will never have any fair trial

23  or anything close to due process in what is effectively the Defendants' backyard.

24  Alternatively, this Court, pursuant to its powers under the declaratory judgment

25  principles of 28 U.S.C. §2201-2202 or 42 U.S.C. §1988(a), utilize the principles of

26  constitutional and common law to fashion an appropriate modern remedy to

27  take the place of the "ancient writ" of *quo warranto*.   Traditional petitions for

28  writ of *quo warranto* or an equivalent remedy SHOULD be available to ensure

1
2
3
the sovereignty of the people over their government, and the democratic ability
4
of the people to engage in self-governance and supervision over their servants:
5
6
> The notion that standing is a bedrock requirement of constitutional law has a surprisingly short history. **Frothingham v. Mellon,** which rejected a taxpayer suit to enjoin a federal spending program, is generally thought of as the first modern standing case.
7
8
> . . . . . .
9
> One legitimately may wonder how a constitutional doctrine now said to inhere in article III's "case or controversy" language could be so late in making an appearance, do so with so skimpy a pedigree, and take so long to be recognized even by the primary academic expositors of the law of federal courts.
10
11
12
13
Steven L. Winter, **supra**, 40 Stan.L.Rev. at 1375-1377
14
It does indeed seem that the doctrine of standing has served to act as a
15
highly arbitrary and somewhat capricious guard at the Courthouse door, and
16
Plaintiffs demand their sovereign right of entry, even if this requires that the
17
Court reform or restrict the doctrine of standing to reinvigorate the First
18
Amendment in the Federal Courts by reinforcing the right to petition for redress
19
of grievances. As has been shown above, legal criticism of the effect of the
20
standing doctrine on jurisprudence is very intense. The simple truth is that this
21
doctrine is overextended and overreaching and should be reigned in.
22
Without the sovereign right of to presume lack of authority, and to demand
23
strict proof thereof, via **quo warranto** or its declaratory judgment equivalent
24
pursuant to 42 U.S.C.§1988(a), there may be no residual rights or powers of
25
self-governance left in the United States of America. The majority of **the people**
26
by majority vote control all that happens within the framework of constitutional
27
law.
28
By judicially revisiting its origins in the First Amendment ("right to
petition") and Ninth Amendment (intended to reserve royal prerogative writs to

1
2
3    the people) this Court can and should allow and empower the Plaintiffs by
4    resuscitation and renewal of *quo warranto* under its civil rights declaratory
5    judgment power or borrowing the use of this writ (by choice of law from the
6    District of Columbia).
7        To the extent that it allows Plaintiffs' Complaint and thereby does so
8    (resuscitates or renews the vitality of *quo warranto*), this Court will give fresh
9    breath to Footnote 4 as it declines to construe the Constitutional provisions and
10   statutes cited by the Defendants in their Motion to Dismiss in a manner which
11   would tend only to disempower or disenfranchise the Plaintiffs as a discrete and
12   insular minority, in particular as members of a conscientiously objecting
13   minority. In short, Plaintiffs ask this Court allow the constitutionally correct but
14   politically powerless minority to restore the majority to the straight and narrow
15   path, not just even, but especially when this majority have lost their path
16   midway along the road of life in a dark wood. (cf. Dante, *Inferno, Canto 1, ll. 1-4).*
17   **FOIA**
18       Lead Plaintiff Captain Pamela Barnett alleges that she has in effect
19   exhausted her FOIA requests to the United States State Department, United
20   States Department of Justice, and other sources prior to the ***de facto***
21   inauguration of Barack H. Obama in January 2009 (Captain Pamela Barnett's
22   January 2009 FOIA Request and State Department Response and Related
23   Documents are attached as Exhibit A). In addition, other Plaintiffs have
24   submitted FOIA requests and the structural and functional equivalent thereof
25   since becoming aware of the doubt concerning Barack H. Obama's citizenship,
26   but the details on these other Plaintiffs' requests were not available at the
27   present time. Plaintiffs can and do allege exhaustion of FOIA requirements as a
28   practical and substantive matter. The most valiant efforts on Plaintiffs' behalf,

1

2

3    however, were not made formally under the rubric of FOIA, but directly and

4    informally by their undersigned counsel in the format of her dossiers (Exhibits

5    B-F). Another one of the concerns raised by the defendants, was that of venue

6    based on residence in Orange County, and in fact, several plaintiffs reside in

7    Orange County or elsewhere within the territorial jurisdiction of the United

8    States District Court for the Southern Division of the Central District of

9    California, although this is one of several matters that will best be resolved by

10   the filing of Plaintiffs' Second Amended Complaint.

11   **CLASSES OF PLAINTIFFS: OATH TAKERS and CANDIDATES**

12        In addition to being citizen members of the body politic, American

13   Citizens at least within the meaning of the 14th Amendment, electorate, **the**

14   **people**, all the Plaintiffs in the case in any event, are taxpayers, and they possess

15   the reserved rights of the First and Ninth Amendments, as well as certain more

16   specific rights, according to the several classes of the Plaintiffs (civilian,

17   legislative, and military). Four Plaintiffs in this case are also candidates for

18   Article II elective office who ran against the **de facto** President and Vice-

19   President in 2008, two of whom (Dr. Alan Keyes and Gail Lightfoot) are

20   represented by the undersigned counsel.

21        First to be noted is that there are currently 46 Plaintiffs represented by

22   the undersigned counsel. The largest group of Plaintiffs is composed of

23   members of the United States Military (all branches), Active, Reserved and

24   Retired subject to lifetime recall. The oath of a military officer is established by

25   5 U.S.C. §3331, which states:

26        An individual, except the President, elected or appointed to an
27   office of honor or profit in the civil service or uniformed services,
     shall take the following oath: "I, AB, do solemnly swear (or affirm)
28   that I will support and defend the Constitution of the United States
     against all enemies, foreign and domestic; that I will bear true faith

1
2
3
4
5

and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God." This section does not affect other oaths required by law.

6

See also: http://www.history.army.mil/faq/oaths.htm

7    Any officer who has taken this oath faces a personal decision and choice

8    regarding his answer to a question in life, the importance of which is hard to

9    measure or understand: what does it mean to "support and defend the

10   Constitution of the United States against all enemies, foreign, and domestic," and

11   what general or specific conduct does it require "to bear true faith and

12   allegiance to the same?"  The answer is that if the Courts will not decide, "say

13   what the law is," it is difficult to know or imagine who will. Cf., e.g., **Marbury v.**

14   **Madison**, 5 U.S. 137 (1803).

15   But given the doctrines of standing, redressability, and political question,

16   who enforces the Constitution and by what presumptions should an officer[1]

17   answer or even evaluate the critical question:

18   When the whims of a political majority violate the constitution, how does

19   a soldier reconcile the liquid and transient, almost effervescent, political

20   realities of command with his or her absolute constitutional oath, which brooks

21   no exceptions?  The oath of a commissioned military officer is a solemn

22   covenant between that officer and all higher authorities, both of this earth and

23   outside it, that he will do not merely that which is ordered, but that which he

24   believes to be right.  During the conduct of this case, the undersigned attorney

25
26
27
28

---

[1] Or for that matter an enlisted man, who takes a significantly different oath, which includes, significantly, [inserted after exactly the same language to take this obligation freely, adds the language] "and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to the regulations and the Uniform Code of Military Justice".

DR. ORLY TAITZ, FOR THE PLAINTIFFS
29839 SANTA MARGARITA PARKWAY
RANCHO SANTA MARGARITA CA 92688

has seen at least two fine military officers punished and threatened on account of their exercise of conscience, in accordance with their oath.

When the military Plaintiffs became commissioned officers and officers of the United States, they took an oath to support, defend, and bear true faith and allegiance to the Constitution and to "well and faithfully discharge" the duties of their commissions.  Plaintiffs herein allege that they are being injured in their employment by being required to serve under, take direction from, and report to a constitutionally ineligible superior, Mr. Barack Obama.   Plaintiffs allege that this requirement is in direct and unequivocal conflict with their oath and that they cannot serve under Mr. Obama, without violating their oaths.    Plaintiffs also allege that, should they refuse to serve under, take direction from, or report to Mr. Obama, they will be at substantial risk of disciplinary action, including removal, for insubordination or other, related grounds.  The recent cases of Major Stefan Frederick Cook and Captain Connie Rhodes lend credence to the fears of swift and brutal D.o.D retaliation for military officer's exercise of their First Amendment rights (Exhibit I).

Plaintiffs further allege that being required to serve under, take direction from, and report to a constitutionally ineligible superior materially and fundamentally (and adversely) changes the terms and conditions of their employment as Military Officer.  Both the U.S. Supreme Court and several lower courts have recognized that placing a plaintiff in a position where he either must violate his or her oath of office or risk substantial, adverse consequences constitutes a direct, personal, and concrete injury for purposes of standing.  In **Board of Education v. Allen,** 392 U.S. 236 (1968), a local school board brought an action challenging the constitutionality of a state statute that required local public school authorities to lend textbooks free of charge to private parochial

1
2
3  schools.   The Court found there could be "no doubt" that the school board
4  members had a personal stake in the outcome of litigation sufficient to confer
5  standing:
6
7      > Appellants have taken an oath to support the United States
       > Constitution. Believing [the state statute] to be unconstitutional,
8      > they are in the position of having to choose between violating their
       > oath and taking a step -- refusal to comply with [the state statute] --
9      > that would be likely to bring their expulsion from office . . . .
10
   *Allen*, 392 U.S. at 241, n.5.
11
       The U.S. District Court for the District of Columbia reached a substantially
12
   similar conclusion in *Clarke v. United States*, 705 F. Supp. 605 (D.D.C. 1988).  In
13
   *Clarke*, the members of the City Council of the District of Columbia brought suit
14
   to challenge a federal statute that required them to adopt an amendment to the
15
   District of Columbia Human Rights Act or face a loss of federal funding.   The
16
   Court found that the members had "oath" standing, citing the Supreme Court's
17
   ruling in *Allen*:
18
       > Alternatively, the court finds plaintiffs have oath of office standing,
19     > under the principles recognized by the Supreme Court in [*Allen*].  In
       > *Allen*, the Court found that legislators who had taken an oath to
20     > uphold the Constitution had standing to challenge the
       > constitutionality of a law when they risked a concrete injury by
21     > refusing to enforce the law.  In that case, plaintiffs faced a choice of
       > violating their oaths by enforcing a law which they believed to be
22     > unconstitutional or risk expulsion from their jobs.  Plaintiffs here
       > are similarly placed.  Because Congress has conditioned all District
23     > funds on the Council's vote, the Council members must either vote
       > in a way which they believe violates their oaths, or face almost
24     > certain loss of their salaries and staffs as well as water, police and
       > fire protection.
25
   *Clarke*, 705 F. Supp. at 608 (internal citations omitted).
26
       Other courts have reached this conclusion as well.  *See Regents of the Univ.*
27
   *of Minn. v. NACC*, 560 F.2d 352, 363-64 (8th Cir.), *cert. dismissed*, 434 U.S. 978
28

1
2
3  (1977); *Aguayo v. Richardson*, 473 F.2d 1090, 1100 (2d Cir. 1973), *cert. denied*,
4  414 U.S. 1146 (1974).
5        If anything, Plaintiffs' injuries in this case is more concrete and compelling
6  than the circumstances of the board members in *Allen* and the city council
7  members in *Clarke* because Plaintiffs' injuries is far more directly and
8  inextricably inter-twined with his employment.  Because Plaintiffs are military
9  officers, they must serve under, take direction from, and report to ***de facto***
10 President Obama.   Requiring Plaintiffs to serve under, take direction from, and
11 report to a constitutionally ineligible superior in violation of their oath is not
12 merely an "emotional response" that Plaintiffs might have to seeing ***de facto***
13 President Obama's name on official documents, orders, or photographs in a
14 military mess hall. It is a fundamental and material change in the terms and
15 conditions of Plaintiff's employment.   ***De facto*** President Obama and the
16 Department of Defense have placed Plaintiffs in the position of either violating
17 their oaths or disregarding their chain of command, either action which would
18 result in almost certain disciplinary action, including removal, being taken
19 against Plaintiffs.
20 **WHAT IF THE POLITICAL MAJORITY CHOSES SLAVERY?**
21        If the State of California were, for example, by its famous system of
22 "Propositions" whereby the people amend the state constitution regularly, to
23 violate the plain letter of the Federal constitution by reinstituting chattel
24 slavery, in violation of the Thirteenth Amendment, there is little doubt that the
25 reaction would be swift: the United States Department of Justice would file suit
26 (with hundreds of ***amici curiae***) to have the newly (but democratically) enacted
27 proposition declared unconstitutional.   The reason for this is simple: the
28 constitution places outer boundaries on that which is politically permissible.

1

2

3    The restrictions on the natural born citizenship status of a President of

4  the United States constitute a similarly absolute boundary.   This United States

5  District Court can and indeed must decide whether the First and Ninth

6  Amendments reserve to the people their sovereign right to question (by

7  Petition) their grievances concerning electoral (political) violations of or

8  derogations from the absolute constitutional qualifications of the President.   As

9  Daniel Webster argued to the Supreme Court in "the mother of all" political

10 question cases, **Luther v. Borden**, 48 U.S. 1, 12 L.Ed. 581, 7 HOW 1, 43-44

11 (1849):

> 1st. That the sovereignty of the people is supreme, and may act in forming government without the assent of the existing government.
>
> 2d. That the people are the sole judges of the form of government best calculated to promote their safety and happiness.
>
> 3d. That, as the sovereign power, they have a right to adopt such form of government.
>
> 4th. That the right to adopt necessarily includes the right to abolish, to reform, and to alter any existing form of government, and to substitute in its stead any other that they may judge better adapted to the purposes intended.
>
> 5th. That if such right exists at all, it exists in the States under the Union, not as a right of force, but a right of sovereignty; and that those who oppose its peaceful exercise, and not those who support it, are culpable.
>
> 6th. That the exercise of this right, which is a right original, sovereign, and supreme, and not derived from any other human authority, may be, and must be, effected in such way and manner as the people may for themselves determine.

24 In that case, Chief Justice Taney also held that whatever the power granted by

25 Article III, the power of the Federal Judiciary did not extend to judging state

26 constitutional violations of the "Republican form of Government" guarantee of

27 Article IV, Section 4:

28    Again, the Constitution of the United States enumerates specially

the cases over which its judiciary is to have cognizance, but nowhere includes controversies between the people of a State as to the formation or change of their constitutions. (See Article 3, sec. 2.)

. . . . . . . . . . . . . . . .

If it be asked what redress have the people, if wronged in these matters, unless by resorting to the judiciary, the answer is, they have the same as in all other political matters. In those, they go to the ballot-boxes, to the legislature or executive, for the redress of such grievances as are within the jurisdiction of each, and, for such as are not, to conventions and amendments of constitutions. And when the former fail, and these last are forbidden by statutes, all that is left in extreme cases, where the suffering is intolerable and the prospect is good of relief by action of the people without the forms of law, is to do as did Hampden and Washington, and venture action without those forms, and abide the consequences. Should strong majorities favor the change, it generally is completed without much violence. In most states, where representation is not unequal, or the right of suffrage is not greatly restricted, the popular will can be felt and triumph through the popular vote and the delegates of the people in the legislature, and will thus lead soon, and peacefully, to legislative measures ending in reform, pursuant to legislative countenance and without the necessity of any stronger collateral course. But when the representation is of a character which defeats this, the action of the people, even then, if by large majorities, will seldom be prosecuted with harsh pains and penalties, or resisted with arms.

Changes, thus demanded and thus supported, will usually be allowed to go into peaceful consummation. But when not so allowed, or when they are attempted by small or doubtful majorities, it must be conceded that it will be at their peril, as they will usually be resisted by those in power by means of prosecutions, and sometimes by violence, and, unless crowned by success, and thus subsequently ratified, they will often be punished as rebellious or treasonable.

48 U.S. at 54-55, 12 L.Ed. at 604-605, 7 HOW at 122-124 (1849).

Whatever the virtues of this bright-line choice (between political action by ballot and revolution, with no possibility of judicial intervention) may have

1
2
3    seemed to Chief Justice Taney's "political question" doctrine plainly was NOT
4    intended to restrict the power of the Article III Federal judiciary to regulate the
5    Federal Government's compliance with the Constitution.
6         As an alternative to Taney's somewhat brutal implicit formulation "love
7    the status quo, change it by politics, or go foment a violent revolution and deal
8    with the consequences," Plaintiffs herein join with and in the arguments
9    presented by their co-Plaintiffs Robinson and Wiley in their parallel brief in this
10   case.  Robinson & Wiley have pointed out that where no Constitutional remedy
11   exists for an outrageous and egregious constitutional violations, the Courts
12   ought to infer one, as they did in the application of the standards of a civil action
13   under 42 U.S.C. §§1983, 1988 to Federal Law Enforcement officers in the case of
14   ***Bivens v. Six Unknown Agents***, 403 U.S. 388 (1971). See **Case 8:09-cv-00082-**
15   **DOC-AN, Document 67, Filed 09/18/2009, Page 6 of 18**: Markham Robinson
16   & Wiley Drake's Response to Motion to Dismiss at 2.

17                    **Standing-Political Question-Redressability**
18                    **The *Flast v. Cohen* + First & Ninth Amendment**
                      **"Reserved Rights" Solution**
19
20        As discussed above, the Defendants ask this Court to dismiss the Plaintiff's
21   complaint within a triangular stranglehold and vice of standing-redressability-
     political question.  Parallel to but independent of this three-pronged argument,
22
     the Defendants claim that certain statutes, as well as the historical custom,
23
24   practice, and policy, of the evaluation of elections in the United States has
25   effectively deprived the Article III Courts of any power to adjudicate the
     constitutional qualifications of the president.
26
          The Defendants also claim that these same statutes, historical customs,
27
28   practices, and policies, deprive the ***people*** of any meaningful access to the
     Courts to determine whether their highest Constitutionally designated officers

are in compliance with the elemental mandates set forth in Article II of the U.S. Constitution. Accordingly, Defendants would now and forever leave **the people** bereft of all power, short of the electoral power achieved by tyrannical majorities (as they were described by Hamilton, Jay, and Madison in the **Federalist Papers**) to demand that constitutionally unqualified leaders be removed from office. As suggested above by the quote from Chief Justice Taney---this only leaves the unattractive option of armed revolution, and one primary social function and practical purpose of the Courts is to uphold respect for law and government and thereby to maintain the peace.

The residual power of discrete and insular minorities to protect not only their own constitutional rights, but to assert the constitutional rights of all **the people**, is one of the great and perennially recurring constitutional conundrums in American legal history (cf. **United States v. Carolene Products Co.,** 304 U.S. 144, Footnote 4---"the most famous footnote in history"). In the field of First Amendment freedom of speech and religious free exercise, the power of discrete and insular minorities such as the Amish to delineate constitutional absolutes is legendary, see e.g. **Wisconsin v. Yoder**, 406 U.S. 205 (1972).

In the present case, Plaintiffs are a discrete and insular minority who demand full enforcement and respect be afforded to that clause of Article II of the Constitution which states: "No person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President; neither shall any Person be eligible to that Office who shall not have attained to the Age of thirty-five Years, and been fourteen Years a Resident within the United States." This clause is not self-enforcing on its face, unfortunately. Who is to judge whether a person has met

DR. ORLY TAITZ, FOR THE PLAINTIFFS
29839 SANTA MARGARITA PARKWAY
RANCHO SANTA MARGARITA CA 92688

1

2

3  these qualifications?  Are any rights reserved by the Constitution to **the people**,

4  except as political majorities?

5      Plaintiffs contend that the First, Second, Ninth, and Tenth Amendments all

6  reserve rights to **"the people"** acting neither as individuals nor as political

7  majorities, but collectively as discrete and insular minorities of conscience, and

8  that Complaint or Petitions filed with the Article III Constitutional Courts are the

9  legitimate paths of access by which **the people**, so defined, may address the

10  wrongs, and correct the deviations and derogations, which the somnolent if not

11  somnambulating political majority may from time-to-time allow.  In short, it is

12  the right, province, and constitutional place and power of discrete and insular

13  minorities of dissenters to utilize their equal access to the courts to preserve the

14  constitution when the political system fails so to do, regardless of long-standing

15  but constitutionally untested customs, practices, and policies.  The theory, the

16  hope, the dream is, upon proper petition, the Article III judiciary alone will have

17  the strength and courage to reaffirm the Constitution as the Supreme Law of the

18  Land, and thereby to set aside abuses or individual violations and derogations

19  that long-standing customs, practices, and policies (which is to say political

20  decisions) have allowed to occur.

21      The boundary between custom, practice, and policy having the

22  appearance or force of law and actual law is often difficult to survey and trace in

23  the landscape of litigation, and it is quite true that as a matter of historical

24  custom, practice, and policy, the Courts of the United States have never been

25  seriously called upon to judge the constitutional qualifications of any person

26  politically elected to the office of President of the United States.  But at some

27  stage, the Courts must accept and recognize their judicial responsibility and

28  status as the effective forum of last peaceful resort in hours of national crisis.

1
2
3   The Court's duty in this case is to address first whether the Article II, U.S.
4   Constitutional legal requirements have been followed by the body politic, and
5   then to investigate whether any derogations resulted from fraud, which was, if it
6   occurred, massive, systematic, and quite unprecedented.
7       That is the sum and substance of Plaintiffs' complaint, and by its very
8   nature these questions, which attack the heart and function of the political
9   system as having been constitutionally corrupted, are not susceptible to a
10  merely political resolution.
11      The Plaintiffs in this case demand that the Court delineate the boundaries
12  of the political and the constitutional, and declare and adjudge that the **people**
13  of the United States have the right to delineate that which is the constitutional
14  right of a politically powerless minority of the people to secure for themselves,
15  and to protect the majority, even, from the follies of their own majoritarian
16  blindness.
17      All the cases concerning the establishment clause, and the excessive
18  entanglement of Church and State in this country, have been raised on behalf of
19  minorities such a Catholics, Jehovah's Witnesses, Seventh Day Adventists,
20  Quakers, and similar groups whose specific beliefs were offended by
21  majoritarian laws enacted by political majorities.
22      Plaintiffs propose quite simply that the rule of taxpayer standing
23  applicable to public support of religion, e.g. ***Flast v. Cohen,*** 392 U.S. 83, 88 S. Ct.
24  1942, 20 L. Ed. 2d 947 (1968), be applied to the constitutional qualifications of
25  the President. The general rule is that both federal and state taxpayers do not
26  have Article III "case and controversy" standing to challenge a particular
27  expenditure of funds simply because they are taxpayers.  Plaintiffs submit that
28  the ***Flast v. Cohen*** exception is applicable in this case, essentially for all the

1
2
3    same reasons (including a focus on the fundamental rights secured by the First
4    Amendment) that it was applied in that other case to which no other ready
5    means of allowing entry to the Courthouse was possible. By application of
6    Ockham's razor, **Flast v. Cohen** offers the simplest, and for that reason the best,
7    possible solution to the question of standing.  It is appropriate because the First
8    Amendment's Establishment clause is analogous to the Article II "natural born
9    citizen" clause as an absolute limitation on the unconstitutional exercise of
10   power by government whose effect (i.e. injury) will always be by definition
11   diffuse rather than particularized to any individual or group of individuals.

12   **THE CONSTITUTION IS AN IMMUTABLE FRAME:**
13   **POLITICS ARE A MOVING PICTURE WHICH CANNOT EXTRUDE**

14        Another way of putting this is that the "political question doctrine,"
15   properly applied, should exclude court challenges to anything, which may be
16   constitutionally done within the framework of the Constitution.  It is well
17   known, however, that different levels of scrutiny apply even to that which may
18   (under certain circumstances), permissibly be done within the constitution[2].
19   But in no case should the ability of ***people*** to assert constitutional absolutes be
20   limited or constrained, because of Congress and the President fail to abide by
21   the Constitution, what recourse is there other than to the Court?    Titles of
22   nobility, bills of attainder, ex-post facto laws, and intergenerational "corruption
23   of blood" are all absolutely forbidden, just like slavery.   But so is the accession

24
25
26        [2] For example, content-based restrictions on Freedom of Speech should only be
27   allowed on the most extreme of circumstances, whereas "time-place-and-manner" (e.g.
     "media or location specific") limitations on Freedom of Speech are subject to only
28   intermediate scrutiny, and restrictions on the content of purely commercial speech (e.g.
     commercial advertising) is often subjected only to the lowest "rational basis"- test of
     constitutional scrutiny.

to the presidency of any person who is not a natural born citizen of the United States.

This case, the Plaintiffs' status as a discrete and insular minority (which includes an exceptionally large number of members of the U.S. Military) has made them members of new class, scorned in the establishment press as "birthers". Plaintiffs' status as an ideological, politically powerless, minority arises from their constitutional devotion to the enforcement of a constitutional clause which, probably because of its simple and self-explanatory nature, has never before been judicially recognized as an enforceable right of the people to be pronounced and enforced in a constitutional court. Defendants' attempt to trivialize the importance of the constitution and its mandates by arguing that any supposed violation of Plaintiffs' individual rights is too slight to support standing.

Earlier in this Memorandum of Points and Authorities, an implausible hypothetical reintroduction of Slavery by popular plebescite in California was proposed as an example of a popular electoral act that would not receive even the slightest "political question" abstention nor demand that anyone be "enslaved" before a Court would declare this proposition to be unconstitutional. The redress would come in the declaration of unconstitutionality. Even if the proposed new slavery had no proposed "target class" of persons to be enslaved, it would doubtless be enough to say that "all Americans are offended if there is the chance that even one would ever be sold and reduced into slavery." The offense to all Americans is likewise complete if a President was inaugurated on January 20, 2009, despite having concealed, disguised, and obfuscated his true natural born citizenship as that of another country.

So, the fact that this is a case of first impression does not render it frivolous.   In fact, in this case, it is the Plaintiffs who rest their case on an express, simple, but sound constitutional mandate, and the Defendants who can find no constitutional text whatsoever to support their own position.

The Defendants' open, and make a cornerstone, of their September 4, 2009, Motion to Dismiss with a rather curious confusion arising from their own difficulty in line-drawing between the roles of Congress and the Courts when they write:

> Plaintiffs cannot use this Court to investigate and decide the President's fitness for office or their related claims, however, without contravening the very Constitution that they purport to uphold, which provides that the Electoral College and the Congress have exclusive jurisdiction of such political disputes. . . . . . . . . . . . . . . . . . Plaintiffs have failed to meet the jurisdictional and statutory prerequisites or again seek to have this Court adjudicate issues that are textually committed to other branches.

Case 8:09-cv-00082-DOC-AN Document 56 at Page 8 of 32; Obama et al. Defendants Motion to Dismiss at 1, ll. 8-12.

> The issues sought to be raised by Plaintiffs in this case regarding both whether President Obama is a "natural born citizen of the United States," and therefore qualified to be President, as well as any purported claims raised by any criminal statutes cited in the First Amended Complaint are to be judged, according to the text of the Constitution, by the legislative branch of the government, and not the judicial.

***Idem*** at 11, ll. 23-29,-12, l. 1

Plaintiffs and their undersigned counsel are astonished at this bold assertion by the Defendants of a precept of constitutional law, without any textual citation.  The Defendants' failure to cite or quote any language from the Constitution is understandable because the precept articulated above simply does not exist.  Nowhere does the constitution or any statute or other law limit

1

2

3   the direct power and right of the **people** to demand an accounting of the

4   constitutional qualifications of their (even if duly) elected leaders, including a

5   judicial interpretation of the "natural born citizen" clause of Article II, and a

6   resulting judicial application of that interpretation to the President, even if that

7   application includes a recommendation of removal:

8
    > In interpreting this text, we are guided by the principle that
9    > "[t]he Constitution was written to be understood by the voters; its
     > words and phrases were used in their normal and ordinary as
10   > distinguished from technical meaning." ***United States v. Sprague,***
     > 282 U.S. 716, 731, 51 S.Ct. 220, 75 L.Ed. 640 (1931); see also
11   > ***Gibbons v. Ogden***, 22 U.S. 1, 9 Wheat. 1, 188, 6 L.Ed. 23 (1824).
     > Normal meaning may of course include an idiomatic meaning, but it
12   > excludes secret or technical meanings that would not have been
     > known to ordinary citizens in the founding generation.
13

14  ***D.C. v. Heller***, 128 S.Ct. 2783, 2788; 171 L.Ed.2d 637, 648 (2008).

15      A further source of the Defendants' confusion and inability to draw proper

16  lines and boundaries between historical custom and practice, on the one hand,

17  and the right and power of the **people** to demand punctilious compliance with

18  the plain letter of the constitution on the other, arises from their profound

19  mischaracterization of this case as one exclusively concerning elections and

20  electoral procedure and related law. Electoral law concerns the procedures for

21  voting and allocation of representation among the population and geographic

22  territory of the United States.

23      The Plaintiffs' complaint in this case concerns the reserved rights of the

24  **people,** specifically the fundamental First and Ninth Amendment rights of the

25  **people**.  The First and Ninth Amendments to the Constitution give power to the

26  people individually and collectively, by and through all lawful means and not

27  merely through the electoral process, to demand strict conformity and

28  compliance with the elementary precepts of constitutional integrity. Defendants

DR. ORLY TAITZ, FOR THE PLAINTIFFS
29839 SANTA MARGARITA PARKWAY
RANCHO SANTA MARGARITA CA 92688

show their confusion of questions of electoral procedure with the constitutionally absolute rights of the *people* in writing:

> Plaintiffs ask this Court to entertain a challenge to the 2008 election of President Barack Obama by requiring the President to disprove, in this Court, their innuendo alleging that he is not a "natural born citizen" within the meaning of the United States Constitution.

Case 8:09-cv-00082-DOC-AN Document 56 at Page 8 of 32; Barack Obama et al. Defendants' Motion to Dismiss at 1, ll. 4-8.

And then further:

> This Court, therefore, is without jurisdiction to determine any issues related to the President's fitness to hold office, and this case should be dismissed with prejudice and judgment entered accordingly.

*Idem* at 1, ll. 21-24

The word "*people*" is highlighted above because the Supreme Court has recently and importantly construed the rights of the "*people*" as having certain rights secured to them as a group.   Indeed, Plaintiffs dare to approach this Court to assert that the enforcement of the letter of the Constitution is in fact **a "Right of the People":**

> The first salient feature of the operative clause [of the Second Amendment] is that it codifies a ***"right of the people."*** The unamended Constitution and the Bill of Rights use the phrase "right of the people" two other times, in the First Amendment's Assembly-and-Petition Clause and in the Fourth Amendment's Search-and-Seizure Clause.  The Ninth Amendment uses very similar terminology ("The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people").  All three of these instances unambiguously refer to individual rights, not "collective" rights, or rights that may be exercised only through participation in some corporate body.
> Three provisions of the Constitution refer to "the people" in a context other than "rights"--the famous preamble ("We the people"), § 2 of Article I (providing that "the people" will choose

1
2
3
4
5
6

members of the House), and the Tenth Amendment (providing that those powers not given the Federal Government remain with "the States" or "the people"). Those provisions arguably refer to "the people" acting collectively—but they deal with the exercise or reservation of powers, not rights. Nowhere else in the Constitution does a "right" attributed to "the people" refer to anything other than an individual right.

7
8
9
10
11

"'[T]he people' seems to have been a term of art employed in select parts of the Constitution. . . . [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."

12
13

***D.C. v. Heller, supra***, 128 S.Ct. at 2790-1; 171 L.Ed.2d at 650 (2008)(citing ***United States v. Verdugo-Urquidez***, 494 U.S. 259, 265, 110 S.Ct. 1056, 108 L.Ed.2d 222 [1990])(bold emphasis added).

14

<u>CONCLUSIONS</u>

15
16
17
18
19
20
21
22
23
24
25

This response is timely filed on the Equinox, Monday, September 21, pursuant to Rule 6(a)(2) because of the intervening Federal Holiday on Labor Day.  Plaintiffs pray that the Court deny Defendants' Document #56 Motion to Dismiss in all respects, grant Plaintiffs' taxpayer standing on analogy to the Establishment Clause standing authorized by the United States Supreme Court in ***Flast v. Cohen*** and/or, either in addition or in the alternative, find and hold that the First and Ninth Amendments expressly reserve to ***the people*** a generalized right to petition for redress of grievances caused by constitutional violations such as the establishment of religion or the violation of the "natural born citizenship" requirement of Article II.

Respectfully submitted,

26
27
28

Monday, September 21, 2009
The Equinox

*Plaintiffs' Preliminary Response to Defendants' 9-4-09 (Document 56) Motion to Dismiss for Lack of Standing*     25

By:_____

Dr. Orly Taitz, Esq., Attorney-at-Law

(California Bar 223433)

Attorney for the Plaintiffs

29839 S. Margarita Pkwy

Rancho Santa Margarita CA 92688

ph. 949-683-5411

Fax: 949-766-7036

E-Mail: dr_taitz@yahoo.com

1
2
3
## **PROOF OF SERVICE**
4       I the undersigned Charles Edward Lincoln, being over the age of 18 and
5   not a party to this case, so hereby declare under penalty of perjury that on this,
6   Monday, September 21, 2009, I provided facsimile or electronic copies of the
7   Plaintiffs' above-and-foregoing Plaintiffs' Preliminary Response to Defendants'
8   9-4-09 (Document #56) to the following attorneys attorneys whose names were
9   affixed to the "STATEMENT OF INTEREST" who have appeared in this case in
10  accordance with the local rules of the Central District of California, to wit:
11  THOMAS P. O'BRIEN
12  LEON W. WEIDMAN
13  ROGER  E.  WEST  **roger.west4@usdoj.gov** **(**designated as lead counsel for
14  President Barack Hussein Obama on August 7, 2009)
15  DAVID A. DeJUTE  **David.Dejute@usdoj.gov**
16  GARY KREEP **usjf@usjf.net**
17  FACSIMILE (213) 894-7819
18      DONE AND EXECUTED ON THIS Monday the 21st day of September, 2009.
19
20
Charles Edward Lincoln, III
21  Tierra Limpia/Deo Vindice
    c/o Peyton Yates Freiman
22  603 Elmwood Place, Suite #6
    Austin, Texas 78705
23
24  charles.lincoln@rocketmail.com
    Tel:                    (512)                        923-1889
25
26
27
28

*Plaintiffs' Preliminary Response to Defendants' 9-4-09*
*(Document 56) Motion to Dismiss for Lack of Standing*   27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A:

## *"Capt. Barnett's January 2009 FOIA Request & State Dept. Response"*

# EXHIBITS B-F:

## *"Dossiers # 1,3,4,5,6"*

# EXHIBIT G:

## *"Letter & Application for Writ"*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit H

## "Certified Receipts of letter to Mr. Taylor"

1
2
3
4
5
6
7
8
9

# Exhibit I:

10
11

# "Capt. Roads letter reporting pressure against testifying"

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28