IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

CONNIE RHODES,                              *

     Plaintiff,                            *

vs.                                         *

                              CASE NO. 4:09-CV-106 (CDL)

THOMAS D. MACDONALD, Colonel,               *
Garrison Commander, Fort
Benning; et al.,                            *

     Defendants.                           *

─────────────────────────────────

O R D E R

    Plaintiff, a Captain in the United States Army, seeks a temporary restraining order to prevent the Army from deploying her to Iraq in support of Operation Iraqi Freedom. Plaintiff alleges that her deployment orders are unconstitutional and unenforceable because President Barack Obama is not constitutionally eligible to act as Commander in Chief of the United States armed forces. After conducting a hearing on Plaintiff's motion, the Court finds that Plaintiff's claims are frivolous. Accordingly, her application for a temporary restraining order (Doc. 3) is denied, and her Complaint is dismissed in its entirety. Furthermore, Plaintiff's counsel is hereby notified that the filing of any future actions in this Court, which are similarly frivolous, shall subject counsel to sanctions. *See* Fed. R. Civ. P. 11(c).

BACKGROUND

    Plaintiff's counsel is a self-proclaimed leader in what has become known as "the birther movement." She maintains that President

Barack Obama was not born in the United States, and, therefore, he is not eligible to be President of the United States.[1]  *See* Dr. Orly Taitz, Esquire, http://www.orlytaitzesq.com (last visited Sept. 15, 2009).  Counsel has filed numerous lawsuits in various parts of the country seeking a judicial determination as to the President's legitimacy to hold the office of President.  The present action is the second such action filed in this Court in which counsel pursues her "birther claim."  Her *modus operandi* is to use military officers as parties and have them allege that they should not be required to follow deployment orders because President Obama is not constitutionally qualified to be President.  Although counsel has managed to fuel this "birther movement" with her litigation and press conferences, she does not appear to have prevailed on a single claim.[2] In fact, Plaintiff previously filed the present action in the United States District Court for the Western District of Texas.  That Court summarily dismissed her complaint upon finding that Plaintiff "has no substantial likelihood of success on the merits."  *Rhodes v. Gates*, 5:09-CV-00703-XR, Order Den. Mot. for TRO 3 (W.D. Tex. Aug. 28, 2009). Counsel then re-filed the same action in this Court.

---

[1]Article II, Section 1, Clause 4 of the United States Constitution provides in relevant part that "No Person except a natural born Citizen . . . shall be eligible to the Office of President."

[2]This Court dismissed an earlier action filed by Plaintiff's counsel on behalf of a military reservist based upon that plaintiff's lack of standing.  *See Cook v. Good*, No. 4:09-CV-82 (CDL), 2009 WL 2163535 (M.D. Ga. Jul. 16, 2009).

2

Plaintiff's counsel speculates that President Obama was not born in the United States based upon the President's alleged refusal to disclose publicly an "official birth certificate" that is satisfactory to Plaintiff's counsel and her followers. She therefore seeks to have the judiciary compel the President to produce "satisfactory" proof that he was born in the United States. Counsel makes these allegations although a "short-form" birth certificate has been made publicly available which indicates that the President was born in Honolulu, Hawaii on August 4, 1961.[3]

To press her "birther agenda," Plaintiff's counsel has filed the present action on behalf of Captain Rhodes. Captain Rhodes entered the Army in March of 2005 and presently serves as a medical doctor. The American taxpayers paid for her third and fourth years of medical

---

[3] The Court observes that the President defeated seven opponents in a grueling campaign for his party's nomination that lasted more than eighteen months and cost those opponents well over $300 million. *See* Federal Election Commission, Presidential Pre-Nomination Campaign Disbursements Dec. 31, 2008, http://www.fec.gov/press/press2009/20090608Pres/3_2008PresPrimaryCmpgnDis.pdf (last visited Sept. 15, 2009). Then the President faced a formidable opponent in the general election who received $84 million to conduct his general election campaign against the President. Press Release, Federal Election Commission, 2008 Presidential Campaign Financial Activity Summarized (June 8, 2009), *available at* http://www.fec.gov/press/press2009/20090608PresStat.shtml. It would appear that ample opportunity existed for discovery of evidence that would support any contention that the President was not eligible for the office he sought.

Furthermore, Congress is apparently satisfied that the President is qualified to serve. Congress has not instituted impeachment proceedings, and in fact, the House of Representatives in a broad bipartisan manner has rejected the suggestion that the President is not eligible for office. *See* H.R. Res. 593, 111th Cong. (2009) (commemorating, by vote of 378-0, the 50th anniversary of Hawaii's statehood and stating, "the 44th President of the United States, Barack Obama, was born in Hawaii on August 4, 1961").

3

**ATTACHMENT**

school and financially supported her during her subsequent medical internship and residency program.  In exchange for this valuable free medical education, Captain Rhodes agreed to serve two years in active service in the Army.  She began that term of active service in July of 2008 and had no concerns about fulfilling her military obligation until she received orders notifying her that she would be deployed to Iraq in September of 2009.

Captain Rhodes does not seek a discharge from the Army; nor does she wish to be relieved entirely from her two year active service obligation.  She has not previously made any official complaints regarding any orders or assignments that she has received, including orders that have been issued since President Obama became Commander in Chief.  But she does not want to go to Iraq (or to any other destination where she may be in harm's way, for that matter).  Her "conscientious objections" to serving under the current Commander in Chief apparently can be accommodated as long as she is permitted to remain on American soil.

Captain Rhodes is presently stationed at Ft. Benning, Georgia awaiting deployment to Iraq.  This deployment is imminent and will likely occur absent an order from this Court granting Plaintiff's motion for a temporary restraining order.

4

**ATTACHMENT**

DISCUSSION

I.   Jurisdiction and Abstention

Plaintiff seeks to have this Court declare a deployment order issued by the United States Army void and unenforceable. It is well settled that judicial interference in internal military affairs is disfavored. As the Supreme Court has explained:

> [J]udges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Orloff v. Willoughby,* 345 U.S. 83, 93-94 (1953), *quoted with approval in Winck v. England,* 327 F.3d 1296, 1302-03 (11th Cir. 2003). The limitation on the judiciary's involvement in military affairs does not mean that such interference is never appropriate. However, "'a court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures.'" *Winck*, 327 F.3d at 1303 (quoting *Mindes v. Seaman,* 453 F.2d 197, 201 (5th Cir. 1971)). Moreover, mere *allegations* of a constitutional violation unsupported by a reasonable factual foundation are insufficient to warrant judicial review. To hold otherwise would be to create chaos within the military decision-

5

**ATTACHMENT**

making process and chain of command.  As explained below, the Court must balance several factors to determine whether judicial review of a military decision is authorized.

Typically, the first issue to be resolved in cases seeking judicial review of a military decision is whether the soldier has exhausted all intraservice administrative remedies.  *See Winck*, 327 F.3d at 1304.  In the present case, Defendants do not contend that Plaintiff was required to exhaust her intraservice administrative remedies, presumably because no procedure is in place for a soldier to contest the qualifications of the Commander in Chief.  Defendants do argue, however, that the dispute presented by Plaintiff's complaint is not justiciable in the courts.

Even if a soldier has exhausted her intraservice administrative remedies, the Court must decline to review the military decision if the review would constitute an inappropriate intrusion into military matters.  *Id.* at 1303 & n.4 (citing *Mindes*, 453 F.2d at 201).  It has long been the law in this Circuit that in determining whether judicial review of a military decision should be undertaken, the reviewing court

> 'must examine the substance of that allegation in light of the policy reasons behind nonreview of military matters,' balancing four factors: (1) 'The nature and strength of the plaintiff's challenge to the military determination'; (2) 'The potential injury to the plaintiff if review is refused'; (3) 'The type and degree of anticipated interference with the military function'; and (4) 'The extent to which the exercise of military expertise or discretion is involved.'

6

**ATTACHMENT**

*Winck*, 327 F.3d at 1303 n.4 (quoting *Mindes*, 453 F.2d at 201).
Although certain aspects of the *Mindes* decision have been eroded
through the years, the Eleventh Circuit has relatively recently
reaffirmed the "unflagging strength of the principles of comity and
judicial noninterference with, and respect for, military operations
that informed" the analysis in *Mindes*. *Winck*, 327 F.3d at 1304.[4]

Using the *Mindes* factors as an analytical framework, the Court
finds that it is not authorized to interfere with Plaintiff's
deployment orders. First, Plaintiff's challenge to her deployment
order is frivolous. She has presented no credible evidence and has
made no reliable factual allegations to support her unsubstantiated,
conclusory allegations and conjecture that President Obama is
ineligible to serve as President of the United States. Instead, she
uses her Complaint as a platform for spouting political rhetoric,
such as her claims that the President is "an illegal usurper, an
unlawful pretender, [and] an unqualified imposter." (Compl. ¶ 21.)
She continues with bare, conclusory allegations that the President is
"an alien, possibly even an unnaturalized or even an unadmitted
illegal alien . . . without so much as lawful residency in the United
States." (*Id.* ¶ 26.) Then, implying that the President is either a

---

[4]It is not always clear whether the analysis of the appropriateness
of judicial review of military decisions involves subject matter
jurisdiction or abstention principles based on comity and respect for the
unique military decision-making process. The Court finds that the proper
analysis in this case requires an evaluation of the deployment order using
principles of abstention. *See Winck*, 327 F.3d at 1299-1300
(distinguishing subject matter jurisdiction from abstention principles).

7

**ATTACHMENT**

wandering nomad or a prolific identity fraud crook, she alleges that the President "*might* have used as many as 149 addresses and 39 social security numbers prior to assuming the office of President." (*Id.* ¶ 110 (emphasis added).)  Acknowledging the existence of a document that shows the President was born in Hawaii, Plaintiff alleges that the document "cannot be verified as genuine, and should be *presumed fraudulent*." (*Id.* ¶ 113 (emphasis added).)  In further support of her claim, Plaintiff relies upon "the general opinion in the rest of the world" that "Barack Hussein Obama has, in essence, slipped through the guardrails to become President." (*Id.* ¶ 128.)  Moreover, as though the "general opinion in the rest of the world" were not enough, Plaintiff alleges in her Complaint that according to an "AOL poll 85% of Americans believe that Obama was not vetted, needs to be vetted and his vital records need to be produced." (*Id.* ¶ 154.)  Finally, in a remarkable shifting of the traditional legal burden of proof, Plaintiff unashamedly alleges that Defendant has the burden to prove his "natural born" status. (*Id.* ¶¶ 136-138, 148.)  Thus, Plaintiff's counsel, who champions herself as a defender of liberty and freedom, seeks to use the power of the judiciary to compel a citizen, albeit the President of the United States, to "prove his innocence" to "charges" that are based upon conjecture and speculation.  Any middle school civics student would readily recognize the irony of abandoning fundamental principles upon which

8

**ATTACHMENT**

our Country was founded in order to purportedly "protect and preserve" those very principles.

Although the Court has determined that the appropriate analysis here involves principles of abstention and not an examination of whether Plaintiff's complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court does find the Rule 12(b)(6) analysis helpful in confirming the Court's conclusion that Plaintiff's claim has no merit. To state a claim upon which relief may be granted, Plaintiff must allege sufficient facts to state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted). For a complaint to be facially plausible, the Court must be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged" based upon a review of the factual content pled by the Plaintiff. *Id.* The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's complaint is not plausible on its face. To the extent that it alleges any "facts," the Complaint does not connect those facts to any actual violation of Plaintiff's individual constitutional rights. Unlike in *Alice in Wonderland*, simply saying something is so does not make it so. The weakness of Plaintiff's claim certainly weighs heavily against judicial review of the deployment order, and in fact, would

9

authorize dismissal of Plaintiff's complaint for failure to state a claim.[5]

Examining the second *Mindes* factor, the Court further finds that the risk of potential irreparable injury to Plaintiff as a result of the Court's refusal to review the deployment order is minimal. Plaintiff has not sought to be excused from all military service. She does not seek a discharge from the Army.  She does not even seek to avoid taking military orders under President Obama's watch.  She simply seeks to avoid being deployed to Iraq.  As observed by the Eleventh Circuit, one "cannot say that military deployment, in and of itself, necessarily entails [irreparable harm], even if to volatile regions." *Winck*, 327 F.3d at 1305 n.9.  "Holding otherwise could unduly hamper urgent military operations during times of crisis." *Id.*  Thus, the lack of potential irreparable harm to Plaintiff weighs against judicial review.

Finally, the "type and degree of anticipated interference with the military function" that judicial review would cause is significantly burdensome.  Any interference with a deployment order

---

[5]One piece of "evidence" Plaintiff's counsel relies upon deserves further discussion.  Counsel has produced a document that she claims shows the President was born in Kenya, yet she has not authenticated that document.  She has produced an affidavit from someone who allegedly obtained the document from a hospital in Mombasa, Kenya by paying "a cash 'consideration' to a Kenyan military officer on duty to look the other way, while [he] obtained the copy" of the document. (Smith Decl. ¶ 7, Sept. 3, 2009.)  Counsel has not, however, produced an original certificate of authentication from the government agency that supposedly has official custody of the document.  Therefore, the Court finds that the alleged document is unreliable due to counsel's failure to properly authenticate the document.  *See* Fed. R. Evid. 901.

10

injects the Court directly into the internal affairs of the military. This type of interference has serious implications. For example, it would encourage other soldiers who are not satisfied with their deployment destination to seek review in the courts. It also will have an adverse effect on other soldiers who honorably perform their duties. Presumably, some other military doctor, who does not resort to frivolous litigation to question the President's legitimacy as Commander in Chief, would be required to go to Iraq in Plaintiff's place. Similarly, the doctor who Plaintiff is being sent to relieve and who has likely been there for months would be delayed in receiving his well deserved leave because his replacement seeks special treatment due to her political views or reservations about being placed in harm's way. "It is not difficult to see that the exercise of such jurisdiction as is here urged would be a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities." *Orloff,* 345 U.S. at 94–95.

Based on an evaluation of all of these factors, the Court concludes that it must abstain from interfering with the Army's deployment orders. Accordingly, Plaintiff's motion for a temporary restraining order is denied, and her complaint is dismissed in its entirety.

II.  <u>Failure to Satisfy Elements for Temporary Restraining Order</u>

Even if the Court did not abstain from deciding the merits of Plaintiff's claim, the Court finds that Plaintiff has failed to

11

**ATTACHMENT**

establish her entitlement to a temporary restraining order. Plaintiff must establish the following to obtain a temporary restraining order:

> (1) [Plaintiff] has a substantial likelihood of success on the merits;
>
> (2) irreparable injury will be suffered unless the injunction issues;
>
> (3) the threatened injury to [Plaintiff] outweighs whatever damage the proposed injunction may cause the opposing party; and
>
> (4) if issued, the injunction would not be adverse to the public interest.

*Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005).

As explained previously, Plaintiff has demonstrated no likelihood of success on the merits. Her claims are based on sheer conjecture and speculation. She alleges no factual basis for her "hunch" or "feeling" or subjective belief that the President was not born in the United States. Moreover, she cites no legal authority supporting her bold contention that the alleged "cloud" over the President's birthplace amounts to a violation of her individual constitutional rights. Thus, for these reasons alone, she is not entitled to a temporary restraining order.

Second, as previously noted, the Court's refusal to interfere with Plaintiff's deployment orders does not pose a substantial threat of irreparable injury to her. Plaintiff does not seek to be discharged and apparently is willing to follow all orders from her

12

military command except for any order that deploys her to Iraq. Although close proximity to any combat zone certainly involves personal danger, Plaintiff, somewhat disingenuously, claims that fear is not her motivation for avoiding her military duty.  She insists that she would have no qualms about fulfilling her duties if President George W. Bush was still in office.  The Court cannot find from the present record that deployment to Iraq under the current administration will subject Plaintiff to any threat of harm that is different than the harm to which she would be exposed if another candidate had won the election.  A substantial threat of irreparable harm related to her desire not to serve in Iraq under the current President simply does not exist.

Third, any potential threatened injury that may be caused to Plaintiff by the denial of the temporary restraining order certainly does not outweigh the harm that will result if the injunction is granted. As mentioned previously, the threatened injury to Plaintiff is not substantial; yet if the temporary restraining order was granted, the harmful interference with military operations would be significant.

Finally, Plaintiff has failed to establish that the granting of the temporary restraining order will not be adverse to the public interest.   A  spurious  claim  questioning  the  President's constitutional legitimacy may be protected by the First Amendment, but a Court's placement of its imprimatur upon a claim that is so

13

**ATTACHMENT**

lacking in factual support that it is frivolous would undoubtedly disserve the public interest.

For all of these reasons, the Court finds that Plaintiff's motion for a temporary restraining order should be denied.

CONCLUSION

For the reasons previously stated, Plaintiff's motion for a temporary restraining order is denied and Plaintiff's complaint is dismissed in its entirety.  Defendants shall recover their costs from Plaintiff.  *See* Fed. R. Civ. P. 54(d).

IT IS SO ORDERED, this 16th day of September, 2009.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

14

**ATTACHMENT**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

CONNIE RHODES,                         *

        Plaintiff,                     *

vs.                                    *
                                              CASE NO. 4:09-CV-106 (CDL)
THOMAS D. MACDONALD, Colonel,          *
Garrison Commander, Fort
Benning; et al.,                       *

        Defendants.                    *

------------------------------------

                      O R D E R

        "It was *deja vu* all over again."[1]

        In   her   most   recent   tirade,   Plaintiff's   counsel   seeks

reconsideration of the Court's order dismissing this action.[2] Instead

of seriously addressing the substance of the Court's order, counsel

repeats her political diatribe against the President, complains that

she did not have time to address dismissal of the action (although

she sought expedited consideration), accuses the undersigned of

treason, and maintains that "the United States District Courts in the

11th Circuit are subject to political pressure, external control, and

. . . subservience to the same illegitimate chain of command which

Plaintiff has previously protested." (Pl.'s Emergency Req. for Stay

of Deployment 2.)  This filing contemptuously ignores the Court's

------------------------------------

        [1]Attributed to New York Yankees baseball legend and philosopher, Yogi
Berra.

        [2]Though  the  motion  is  titled  "Emergency  Request  for  Stay  of
Deployment," it appears to be a motion for reconsideration because it
catalogues Plaintiff's reasons why she believes the Court's order of
dismissal should be vacated.

**ATTACHMENT**

previous admonition that Plaintiff's counsel discontinue her illegitimate use of the federal judiciary to further her political agenda. The Court finds that the claims and legal contentions asserted in the present motion are not warranted by existing law and that no reasonable basis exists to conclude that Plaintiff's arguments would be accepted as an extension, modification, or reversal of existing law. Simply, put the motion is frivolous. Moreover, the Court further finds that Plaintiff's motion is being presented for the improper purpose of using the federal judiciary as a platform to espouse controversial political beliefs rather than as a legitimate forum for hearing legal claims. Counsel's conduct violates Rule 11 of the Federal Rules of Civil Procedure, and sanctions are warranted. Accordingly, Plaintiff's motion for reconsideration (Doc. 15) is denied, and counsel for Plaintiff is ordered to show cause why the Court should not impose a monetary penalty of $10,000.00 upon Plaintiff's counsel for her misconduct. Counsel shall file her response to this show cause order within 14 days of today's order.

### The Sanctionable Conduct

Plaintiff's counsel filed the present action seeking a temporary restraining order to prevent the deployment of Plaintiff, a Captain in the United States Army, to Iraq. Counsel maintains that the President has not produced sufficient evidence of his place of birth to satisfy her that he is a natural born citizen of the United

2

States.  Therefore, she alleges he was not eligible to be elected President of the United States and has no authority to act as Commander in Chief.  At the request of Plaintiff's counsel, the Court held an expedited hearing on Plaintiff's request for relief.  Within two days of that expedited hearing, the Court issued an order dismissing Plaintiff's Complaint in its entirety.  (*See* Order Den. TRO, Sept. 16, 2009.)  The Court also found that Plaintiff's Complaint was legally frivolous and that any future similar frivolous conduct on the part of Plaintiff's counsel would subject counsel to sanctions.

Notwithstanding the Court's finding that Plaintiff's claims were frivolous and that this Court had no legal authority under the facts alleged to interfere with a lawful deployment order, Plaintiff's counsel filed the present motion seeking reconsideration of that order and seeking a stay of Plaintiff's deployment.  Plaintiff's counsel seeks this drastic relief based upon the following arguments, each of which is frivolous.

First, counsel contends that the Court dismissed her Complaint without giving her an opportunity to respond adequately as required by the Federal Rules of Civil Procedure and the Court's Local Rules. Counsel ignores that she sought to have the case heard in an expedited fashion in the first place because of Plaintiff's imminent deployment.  The Court modified its schedule to accommodate this request, and in fact held the hearing during the lunch break in an

3

**ATTACHMENT**

ongoing jury trial. Yet, she now complains that she only wanted the temporary restraining order expedited and not the entire case. What Plaintiff's counsel either fails to understand or refuses to acknowledge is that in order to address the motion for a temporary restraining order the Court had to satisfy itself first that it had jurisdiction and legal authority to decide the matter. *See, e.g.,* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."); *see also Winck v. England*, 327 F.3d 1296, 1303 & n.4 (11th Cir. 2003) (explaining framework a court must use to decide whether it may review a military determination). As thoroughly explained in the Court's order of dismissal, the Court found that under well established legal precedent related to abstention principles, it did not have authority to interfere with the United States Army's deployment order. Therefore, the Court determined that the case must be dismissed in  its entirety.  The Court did not grant the Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), although the Court did note that any such motion if considered would be granted based upon the implausibility of Plaintiff's claims.  If counsel had carefully read the Court's order, she would have understood that the Court dismissed the Complaint based upon abstention principles.  Furthermore, competent counsel would have understood that the Court was required to address

4

**ATTACHMENT**

abstention prior to ruling upon the motion for a temporary restraining order.[3]

Counsel's contention that the Court denied Plaintiff her due process rights under the 5th Amendment to the Constitution by dismissing her Complaint on abstention grounds without giving her more time to respond is frivolous. Counsel sought expedited review of the motion for temporary restraining order. To consider that motion, the Court had the obligation to satisfy itself that it had legal authority to hear the case. It therefore, at Plaintiff's counsel's urging, made an expedited decision on that issue. Now that it did not go her way, counsel has fabricated a specious argument that she needed more time to address the issue.

Second, counsel argues that the Court ignored her arguments when it dismissed her Complaint. The Court considered Plaintiff's Complaint, her motion for temporary restraining order, and all evidence Plaintiff submitted in support of her motion, including testimony from the Plaintiff. Upon its consideration of Plaintiff's allegations in her Complaint and the evidence submitted prior to the hearing, the Court found that under well established precedent Plaintiff's Complaint must be dismissed based upon abstention principles. Remarkably, in her motion for reconsideration, Plaintiff does not even attempt to distinguish the legal precedent cited by the

---

[3]In an alternative finding, the Court also denied the motion for temporary restraining order on the merits, finding that Plaintiff had not satisfied the elements for such relief.

5

**ATTACHMENT**

Court in its order of dismissal.  She simply repeats the same bare and conclusory allegations that the Court found frivolous in its previous order.  A motion for reconsideration that does not even address the legal basis for the Court's previous order is frivolous.

Finally, it is clear that Plaintiff's counsel seeks to continue to use the federal judiciary as a platform to further her political "birther agenda."[4]  She has provided no legal or factual basis for the Court to interfere with deployment orders of the United States Army.  She supports her claims with subjective belief, speculation and conjecture, which have never been sufficient to maintain a legal cause of action.  She continues to file motions that do not address legal issues but that describe the President as a "prevaricator," allege that the President's father was "disloyal and possibly treacherous" to the "British Crown," accuse the undersigned of treason, and suggest that the United States District Courts in this Circuit are "subservient" to the "illegitimate" "de facto President." Although the First Amendment may allow Plaintiff's counsel to make these wild accusations on her blog or in her press conferences, the federal courts are reserved for hearing genuine legal disputes and not as a platform for political rhetoric that is disconnected from any legitimate legal cause of action.

---

[4] As explained in the Court's dismissal order, Plaintiff's counsel is a leader in the so-called "birther movement."  She and her followers do not believe that President Obama is eligible to hold the office of President because he has not satisfied them that he was born in the United States.

6

The conduct described above warrants that sanctions be imposed upon Plaintiff's counsel, Orly Taitz.

CONCLUSION

The Court finds Plaintiff's Motion for Stay of Deployment (Doc. 15) to be frivolous. Therefore, it is denied. The Court notifies Plaintiff's counsel, Orly Taitz, that it is contemplating a monetary penalty of $10,000.00 to be imposed upon her, as a sanction for her misconduct. Ms. Taitz shall file her response within fourteen days of today's order showing why this sanction should not be imposed.

IT IS SO ORDERED, this 18th day of September, 2009.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

7

**31**                                    **ATTACHMENT**