IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHARLES F. KERCHNER, JR., et al. | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil No. 09-253 (JBS/JS) |
| v. | **OPINION** |
| BARACK HUSSEIN OBAMA, II, et al. | |
| Defendants. | |

APPEARANCES:

Mario Apuzzo, Esq.
LAW OFFICES OF MARIO APUZZO
185 Gatzmer Avenue
Jamesburg, NJ 08831
    Counsel for Plaintiffs Charles F. Kerchner, Jr., Lowell T.
    Patterson, Darrell James LeNormand, and Donald H. Nelsen,
    Jr.

Paul J. Fishman
United States Attorney
    By:  Elizabeth A. Pascal
         Assistant U.S. Attorney
401 Market Street
Fourth Floor
Camden, NJ 08101
    Counsel for Defendants Barack Hussein Obama, II, the United
    States of America, the United States Congress, the United
    States Senate, the United States House of Representatives,
    Richard B. Cheney, and Nancy Pelosi

**SIMANDLE**, District Judge:

    Under Article II, Section 1, of the Constitution, a person must be a "natural born citizen" to be eligible for the office of President of the United States. Four individuals, believing that President Barack Obama is not eligible for his office on this ground, have filed suit seeking a court order to require various officials to look into their claims and to remove the President

from office. Plaintiffs present various arguments for defining the term "natural born citizen" accompanied by allegations of how President Obama does not meet their definition.

This matter is presently before the Court on a motion to dismiss [Docket Item 27] submitted by Defendants President Barack Obama, the United States of America, the United States Congress, the United States Senate, the United States House of Representatives, former Vice-President and President of the Senate Richard Cheney, and Speaker of the House Nancy Pelosi (collectively, "Defendants"). For the reasons expressed below, the Court finds that Plaintiffs Charles F. Kerchner, Jr., Lowell T. Patterson, Darrell James LeNormand, and Donald H. Nelsen, Jr. lack standing to pursue their claims and so the Court must grant Defendants' motion to dismiss.

I.  **BACKGROUND**

   A.  **Factual Allegations**

Plaintiffs' claims, as set forth in their Second Amended Complaint,[1] arise from allegations that President Obama has failed to sufficiently prove that he is a "natural born citizen"

---

[1] The parties dispute whether Plaintiffs filed their Second Amended Complaint in conformance with Rule 15, Fed. R. Civ. P., and further whether that complaint is a short and plain statement required under Rule 8(a)(2). The Court will address the allegations of the Second Amended Complaint, notwithstanding that it was filed without leave of Court on February 9, 2009. Because the Court concludes that Plaintiffs lack standing to bring these claims, the Court will not address the procedural disputes, and Plaintiffs' belated motion for leave to assert the Second Amended Complaint on July 22, 2009, will be dismissed as moot.

eligible for the presidency and that the legislative branch has failed to sufficiently investigate President Obama's citizenship and place of birth. Plaintiffs all voted in the November 4, 2008 general election for president. (Second Am. Compl. ¶¶ 8-11.) Mr. Kerchner and Mr. Nelsen both took oaths to defend and support the Constitution of the United States -- Mr. Kerchner as part of his thirty-three years of service in the U.S. Naval Reserves and Mr. Nelsen as a former member of the Marine Reserves and Army National Guard. (Id. ¶¶ 8, 11.) In addition, Mr. Kerchner states that his is particularly harmed by the alleged uncertainty surrounding President Obama's birthplace because "while currently not statutorily subject to recall, by Executive Order of the President or an act of Congress in extreme national emergency" Mr. Kerchner might be recalled. (Id. ¶ 8.)

Plaintiffs claim violations of the First, Fifth, Ninth, Tenth, and Twentieth Amendments of the Constitution and seek declaratory and injunctive relief, as well as a writ of mandamus and quo warranto. In Court I, Plaintiff Kerchner alleges that the Congressional Defendants violated his First Amendment right to petition because they ignored his requests that they investigate President Obama's citizenship and place of birth. (Id. ¶¶ 200-214.) In Counts II and X, Plaintiffs allege that the Congressional Defendants violated their Fifth Amendment procedural due process rights and their rights under the Twentieth Amendment by failing to conduct an appropriate investigation and hold a hearing regarding President Obama's

place of birth. (Id. ¶¶ 215-234, 329-356.) In Counts III and IV, Plaintiffs allege that President Obama violated their substantive due process rights under the Fifth Amendment by holding the office of president without proving that he is a "natural born citizen" and that the Congressional Defendants violated these same rights by permitting President Obama to occupy the office and by failing to adequately confirm that his is a "natural born citizen." (Id. ¶¶ 235-270.) In Count V, Plaintiffs allege that the Congressional Defendants violated their Fifth Amendment right to equal protection by submitting to the requests of citizens who requested a hearing regarding Senator John McCain's place of birth and citizenship, but declining a similar request from Plaintiffs and other citizens regarding President Obama. (Id. ¶¶ 271-282.) In Counts VI, VII, VIII, and IX, Plaintiffs assert their rights under the Ninth and Tenth Amendments to compel President Obama to prove that his is a "natural born citizen" and to compel the Congressional Defendants to conduct appropriate congressional hearings under the Twentieth Amendment to determine whether President Obama is a "natural born citizen." (Id. ¶¶ 283-328.) In Count XI, Plaintiffs seeks a writ quo warranto removing and excluding President Obama from the office of President of the United States because he is not a "natural born citizen." (Id. ¶¶ 357-380.) Finally, in Count XII, Plaintiffs seek declaratory judgment against all Defendants defining "natural born citizen," and compelling the Congressional Defendants to hold a congressional hearing on the question and to

remove President Obama from office if they determine he is not a "natural born citizen." (Id. ¶¶ 381-387.)

The harm alleged for all of these constitutional violations is that Plaintiffs have been deprived of their right to know whether President Obama is a "natural born citizen" and to have a president who is truly a "natural born citizen."[2] (Id. ¶¶ 208, 233, 251, 269, 282, 291, 302, 314, 325, 356, 377, 378.)

**B.  Procedural History**

On January 20, 2009, Plaintiffs filed their initial complaints, which they subsequently amended twice.  Plaintiffs filed their Second Amended Complaint on February 9, 2009.  On June 26, 2009, Defendants filed the present motion to dismiss, in which they argue that Plaintiffs lack Article III standing as well as prudential standing to bring all of these claims before the Court.  Defendants argue in the alternative that the United States, the United States Congress, and former Vice-President Cheney and Speaker Pelosi in their official capacities, are entitled to sovereign immunity.  Defendants Cheney and Pelosi are

---

[2] To the extent Plaintiffs also allege that they were injured merely by the government's failure to respond to their petitions requesting investigations and hearings, this is not a cognizable constitutional injury.  Plaintiffs "have no constitutional right to force the government to listen to their views." Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 284-85 (1984).  As the Supreme Court has explained, "Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." Id. (citing Smith v. Arkansas State Highway Employees, Local 1315, 441 U.S. 463, 464-466 (1979)).

also entitled, Defendants argue, to legislative immunity, and Defendants Obama, Cheney, and Pelosi are entitled to qualified immunity as to all of Plaintiffs' claims.

## II. DISCUSSION

### A. Standard of Review

Defendants move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), Fed. R. Civ. P. A determination of proper subject matter jurisdiction is vital, because "lack of subject matter jurisdiction voids any decree entered in a federal court and the continuation of litigation in a federal court without jurisdiction would be futile." Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987). An attack on subject matter jurisdiction can be either facial -- based solely on the allegations in the complaint -- or factual -- looking beyond the allegations to attack jurisdiction in fact. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Where, as here, the challenge to subject matter jurisdiction is facial, the Court must, for the purposes of this motion, take all the allegations in the complaint to be true and construe them in the light most favorable to the Plaintiffs. Id.

### B. Article III Standing

Federal courts are courts of limited jurisdiction and may only consider those actions that meet the case-or-controversy

requirements of Article III.³  Essential to Article III jurisdiction is the doctrine of standing.  <u>Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.</u>, 528 U.S. 167, 180 (2000).  To meet the minimal constitutional mandate for Article III standing Plaintiffs must show (1) an "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that the injury will "likely" be "redressed by a favorable decision."  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).  Plaintiffs' assertion of constitutional standing fails at the first prong, because Plaintiffs cannot establish an "injury in fact" as that phrase has been defined by the Supreme Court.  Instead, while Plaintiffs feel themselves very seriously injured, that alleged grievance is one they share with all United States citizens.

An "injury in fact" is defined as "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical."  <u>Lujan</u>, 504 U.S. at 560.  The Supreme Court has interpreted the requirement that an injury be "concrete and particularized" to preclude harms that are suffered by many or all of the American people.  <u>Lujan</u>, 504 U.S. at 573-74; <u>United States v. Richardson</u>,

---

³ Plaintiffs cite a Commonwealth Court of Pennsylvania decision, <u>Lawless v. Jubelirer</u>, 789 A.2d 820 (Pa. Commw. Ct. 2002), for the proposition that there are exceptions to the standing requirement at issue here.  The Court wishes to clarify that Plaintiffs are asserting federal subject matter jurisdiction and consequently the various state court jurisdictional doctrines are inapplicable to this case.

418 U.S. 166, 176-77 (1974); Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 220-22 (1974); Ex Parte Levitt, 302 U.S. 633, 633 (1937). As the Court explained in Schlesinger,

> We reaffirm Levitt in holding that standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share. Concrete injury, whether actual or threatened, is that indispensable element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution. It adds the essential dimension of specificity to the dispute by requiring that the complaining party have suffered a particular injury caused by the action challenged as unlawful. This personal stake is what the Court has consistently held enables a complainant authoritatively to present to a court a complete perspective upon the adverse consequences flowing from the specific set of facts undergirding his grievance. Such authoritative presentations are an integral part of the judicial process, for a court must rely on the parties' treatment of the facts and claims before it to develop its rules of law. Only concrete injury presents the factual context within which a court, aided by parties who argue within the context, is capable of making decisions.

418 U.S. at 221. Consequently, "a plaintiff raising only a generally available grievance about government -- claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large -- does not state an Article III case or controversy." Lujan, 504 U.S. at 573-74.

In the present case, assuming as the Court must that Plaintiffs' allegations are true for the purposes of deciding

this jurisdictional motion, the injury, if any, suffered by Plaintiffs is one that would be shared by all the American people.  Plaintiffs allege that they have been injured because Defendants have not adequately established that the President is truly a "natural born citizen" and because, according to Plaintiffs, President Obama is not a "natural born citizen" and therefore an illegitimate president.  These alleged harms apply equally to all United States residents.  In fact, Plaintiffs' complaint repeatedly acknowledges that the injuries they allege are generally applicable to "the people."[4]  As explained above, the Supreme Court has consistently held that this generalized harm is not sufficient to establish standing under Article III. <u>Lujan</u>, 504 U.S. at 573-74.

In an effort to distinguish themselves from the rest of the citizenry, Plaintiffs point out that Mr. Kerchner and Mr. Nelsen have both taken oaths to protect and defend the Constitution. They also suggest that they feel more threatened by the alleged uncertainty surround President Obama's place of birth and citizenship than many citizens.  While the Court accepts that Plaintiffs are more concerned about President Obama's birthplace

---

[4] By way of example, Plaintiffs' complaint outlines the various failures to adequately establish President Obama's place of birth "on Behalf of the Plaintiffs and the People."  (Second Am. Compl. ¶¶ 84-188.)  Plaintiffs identify the "Irreparable Harm" to be suffered as follows: "If Obama is sworn in as President of the United States and Commander in Chief, there will be substantial and irreparable harm to the stability of the United States, its people, and the plaintiffs."

than many citizens and that they likewise feel a greater sense of obligation to bring the present action, Plaintiffs' motivations do not alter the nature of the injury alleged. Plaintiffs state that they have been injured because President Obama's birthplace and citizenship have not been established to their satisfaction; this harm is equally applicable to all American citizens.

Finally, Plaintiffs point to the risk that Mr. Kerchner may be recalled to active duty in the U.S. Naval Reserves by Executive Order of the President or an act of Congress in an extreme national emergency. Under these circumstances, Mr. Kerchner "would need to know whether the President and Commander in Chief who may be giving him orders is in fact the legitimate President and Commander in Chief and therefore obligate him to follow those orders or risk being prosecuted for disobeying such legitimate orders." (Second Am. Compl. ¶ 8.) While the Court has doubts about the particularity of this harm, the Court will not address this issue because the alleged harm is neither actual nor imminent, but rather is impermissibly conjectural. The hypothetical nature of this future injury, conditioned on the occurrence of "an extreme national emergency," is not an "injury in fact" necessary to establish standing. See Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 297 (3d Cir. 2003) (an allegation of potential future property loss, should a municipality disallow a present non-conforming use, cannot demonstrate injury in fact for standing purposes because it is conjectural). Without an "injury in fact" necessary for Article

III standing, the Court cannot exercise jurisdiction over the present action.[5]

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss for lack of subject matter jurisdiction. The accompanying Order shall be entered.


**October 20, 2009**                    **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        United States District Judge

---

[5] Moreover, had Plaintiffs alleged an "injury in fact" sufficient to satisfy Article III standing, prudential standing concerns would likewise prevent the Court from exercising jurisdiction. The Supreme Court has held that "even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 474-75 (1982). Plaintiffs' claims fall squarely into the category of generalized grievances that are most appropriately handled by the legislative branch. The Court acknowledges Plaintiffs' frustration with what they perceive as Congress' inaction in this area, but their remedy may be found through their vote.

To this extent, it appears that Plaintiffs have raised claims that are likewise barred under the "political question doctrine" as a question demonstrably committed to a coordinate political department. See Baker v. Carr, 369 U.S. 186, 216 (1962). The Constitution commits the selection of the President to the Electoral College in Article II, Section 1, as amended by the Twelfth Amendment and the Twentieth Amendment, Section 3. The Constitution's provisions are specific in the procedures to be followed by the Electors in voting and the President of the Senate and of Congress in counting the electoral votes. Further, the Twentieth Amendment, Section 3, also provides the process to be followed if the President elect shall have failed to qualify, in which case the Vice President elect shall act as President until a President shall have qualified. None of these provisions evince an intention for judicial reviewability of these political choices.