1                **UNITED STATES DISTRICT COURT**

2                **CENTRAL DISTRICT OF CALIFORNIA**

3            **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                    – – – – – – –

5    ALAN KEYES, PH.D., ET AL.,          )
                                         )
6              Plaintiffs,               )
                                         )
7          vs.                           ) No. SACV 09-0082 DOC
                                         )     Item No. 3
8    BARACK H. OBAMA, et al.,            )
                                         )
9              Defendants.               )
     _____)

10

11

12

13            REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                   Hearing on Motions

15                  Santa Ana, California

16                 Monday, October 5, 2009

17

18

19

20   Debbie Gale, CSR 9472, RPR
     Federal Official Court Reporter
21   United States District Court
     411 West 4th Street, Room 1-053
22   Santa Ana, California 92701
     (714) 558-8141
23

24   09cv0082 Obama 2009-10-05 Item 3

25

1    **APPEARANCES OF COUNSEL:**

2

     FOR THE PLAINTIFFS:
3
             ORLY TAITZ, DDS, ESQUIRE
4            Defend Our Freedoms Foundation
             26302 La Paz
5            Suite 211
             Mission Viejo, California 92691
6            (949) 683-5411

7

8    FOR THE PLAINTIFFS:

9            GARY G. KREEP, ESQUIRE
             United States Justice Foundation
10           932 "D" Street
             Suite 3
11           Ramona, California 92065
             (760) 788-6624

12

13

     FOR THE UNITED STATES OF AMERICA:
14
             U.S. DEPARTMENT OF JUSTICE
15           UNITED STATES ATTORNEY'S OFFICE
             BY:  DAVID A. DeJUTE
16               ROGER E. WEST
                 Assistant United States Attorney
17           300 North Los Angeles Street
             Suite 7516
18           Los Angeles, California 90012
             (213) 894-2574

19
             -AND-
20
             U.S. DEPARTMENT OF JUSTICE
21           CIVIL DIVISION
             BY:  ERIC J. SOSKIN
22               Trial Attorney
             20 Massachusetts Avenue, NW
23           Room 6140
             Washington, DC 20001
24           (202) 353-0533

25

1                          **I N D E X**

2    **PROCEEDINGS**                                    **PAGE**

3    Motion by defendants to dismiss case              4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | 1 | **SANTA ANA, CALIFORNIA, MONDAY, OCTOBER 5, 2009** |
|---|---|---|
| | 2 | **Item No. 3** |
| | 3 | (8:38 a.m.) |
| 08:38 | 4 | THE COURT:  All right.  Counsel, let me call to |
| 08:38 | 5 | order the matter of Captain Pamela Barnett, et al. versus |
| 08:38 | 6 | Barack Obama, et al. |
| 08:38 | 7 | Counsel, will you make your appearances, please. |
| 08:38 | 8 | MS. TAITZ:  Yes.  Orly Taitz for all the |
| 08:38 | 9 | plaintiffs aside from two. |
| 08:38 | 10 | THE COURT:  Counsel. |
| 08:38 | 11 | MR. WEST:  Good morning, Your Honor.  Assistant |
| 08:38 | 12 | United States Attorney, Roger West, for the defendants. |
| 08:38 | 13 | With me today is co-counsel David DeJute, Assistant U.S. |
| 08:38 | 14 | Attorney. |
| 08:38 | 15 | MR. DeJUTE:  Hello. |
| 08:38 | 16 | MR. WEST:  And also, with us today is Mr. Eric |
| 08:38 | 17 | Soskin, who is a trial attorney with the Department of |
| 08:39 | 18 | Justice, Washington, Your Honor. |
| 08:39 | 19 | THE COURT:  Where is Mr. Kreep? |
| 08:39 | 20 | MR. WEST:  I haven't seen him, Your Honor. |
| 08:39 | 21 | THE COURT:  Is he in another room? |
| 08:39 | 22 | MR. WEST:  I don't know, Your Honor.  I haven't |
| 08:39 | 23 | seen him. |
| 08:39 | 24 | MS. TAITZ:  I haven't seen him. |
| 08:39 | 25 | THE COURT:  Is 45 minutes acceptable to both |

| | | |
|---|---|---|
| 08:39 | 1 | sides?  I think that's an adequate time, since I read your |
| 08:39 | 2 | papers. |
| 08:39 | 3 | MR. WEST:  Yes, Your Honor.  Might I just bring up |
| 08:39 | 4 | one housekeeping matter?  Inasmuch as the surreply -- leave |
| 08:39 | 5 | was given to file a surreply, and it was filed on Thursday |
| 08:39 | 6 | evening.  I was out of town.  Mr. DeJute, able co-counsel, |
| 08:39 | 7 | has done the research on that, and I would ask permission |
| 08:39 | 8 | for him to argue that part. |
| 08:39 | 9 | THE COURT:  Certainly.  But you have 45 minutes. |
| 08:39 | 10 | However you want to divide that is your decision. |
| 08:39 | 11 | MR. WEST:  Thank you, Your Honor. |
| 08:39 | 12 | THE COURT:  All right.  45 minutes is starting, |
| 08:39 | 13 | counsel on behalf of the government.  And then I'll have |
| 08:39 | 14 | some questions of both of you. |
| 08:39 | 15 | MR. WEST:  Yes, Your Honor. |
| 08:39 | 16 | Just very briefly, I do not intend to go back over |
| 08:39 | 17 | the briefing that we've done in the case.  I know Your |
| 08:40 | 18 | Honor's read it, and it's not my habit to reiterate things |
| 08:40 | 19 | that are in the brief. |
| 08:40 | 20 | What I'd like to do right now, however, is just |
| 08:40 | 21 | focus briefly on the policy issues in this case, the |
| 08:40 | 22 | questions that really underlie why the government has taken |
| 08:40 | 23 | the position that it has in the case. |
| 08:40 | 24 | Your Honor, if plaintiffs had their way in this |
| 08:40 | 25 | case and this case were not dismissed, that would mean that |

08:40   1   anyone with a political agenda and a filing fee could file

08:40   2   an action in any of the 93 United States District Courts in

08:40   3   this United States seeking to contest the qualifications and

08:40   4   the right to continue in office of any sitting president.

08:40   5           That, Your Honor, I submit, would render the very

08:40   6   delicate balance that the founding fathers created in the

08:40   7   Constitution, in the separation of powers doctrine and in

08:41   8   the doctrine of balanced -- checks and balances -- that

08:41   9   would do tremendous damage to that.

08:41   10          Imagine the specter -- and in this case it's

08:41   11  already happened.  The President has been sued in a number

08:41   12  of districts.

08:41   13          THE COURT:  Which districts?

08:41   14          MR. WEST:  The Middle District of Georgia.  I

08:41   15  believe the Western District of Texas -- at least those two

08:41   16  I know of.  I believe there are several others as well.  I

08:41   17  believe in Pennsylvania in the *Berg* case, B-E-R-G, case.

08:41   18          In any event -- and there may be others.  And the

08:41   19  same issue is being raised in every case.  If the President

08:41   20  were forced to go through pretrial and discovery and trial,

08:41   21  imagine what would happen to his ability to function as the

08:41   22  chief executive officer of the United States of America.

08:41   23          Moreover, what would happen if, for example, some

08:41   24  judge in one district were to decide that the President is

08:42   25  not qualified or did not meet the qualifications to be

08:42  1   President, and another judge faced with the same issue in

08:42  2   another district were to decide, yes, he is qualified.

08:42  3            What would we do then?  We would have appeals.

08:42  4            In the meantime, the President's ability, for

08:42  5   example, to conduct foreign policy would be severely

08:42  6   damaged.

08:42  7            I mean, imagine the prospect of going into

08:42  8   negotiations, for example, over nuclear nonproliferation or

08:42  9   some other extremely delicate matter with our foreign

08:42  10  adversaries and allies looking at the President saying,

08:42  11  "Wait a minute, I just heard that a district judge in your

08:42  12  country decided that you're not fit to be President.  Why

08:42  13  should I engage you in negotiations?"  Imagine what it would

08:42  14  do to the ability of the President -- and this is any

08:42  15  President.  We're not just talking about the current

08:42  16  incumbent President.  This is an attack on the presidency

08:43  17  itself.

08:43  18            Imagine the damage that would accrue if matters

08:43  19  such as these could be litigated in courts.  The damage that

08:43  20  could accrue to the President's ability to pass his domestic

08:43  21  agenda.  The President of the United States is the only

08:43  22  officer of the United States who is elected through the vote

08:43  23  of all of the people of the United States.  He's not -- it's

08:43  24  not like a Congressman or a Senator.  He doesn't have just

08:43  25  one constituency.  His constituency is the people of the

| 08:43 | 1 | United States. |
| 08:43 | 2 | I submit that the constitutional -- the textual |
| 08:43 | 3 | commitment in the Constitution to the questions which the |
| 08:43 | 4 | plaintiffs in this case seek to raise renders it mandatory, |
| 08:43 | 5 | in my view, that these matters be considered nonjusticiable. |
| 08:43 | 6 | That the remedies, if any, which these plaintiffs have and |
| 08:43 | 7 | other plaintiffs who wish to challenge the fitness and |
| 08:43 | 8 | qualifications of a President to serve in office -- those |
| 08:44 | 9 | are committed to the legislative branch, to the Congress, |
| 08:44 | 10 | and not to courts, and for very good reasons. |
| 08:44 | 11 | THE COURT:  Only to the Congress? |
| 08:44 | 12 | MR. WEST:  Yes, Your Honor. |
| 08:44 | 13 | THE COURT:  And then in your argument you stated |
| 08:44 | 14 | that minimally if the Court disagreed, it should be |
| 08:44 | 15 | transferred to the D.C. District. |
| 08:44 | 16 | MR. WEST:  No, Your Honor.  The *quo warranto* -- |
| 08:44 | 17 | the plaintiffs have made the argument that the *quo warranto* |
| 08:44 | 18 | aspects of this case should be transferred to the D.C. |
| 08:44 | 19 | District.  We have not suggested that that be transferred. |
| 08:44 | 20 | If the -- if, in fact, they wish to bring a *quo* |
| 08:44 | 21 | *warranto* action, they should bring an original one in the |
| 08:44 | 22 | D.C. District. |
| 08:44 | 23 | THE COURT:  Thank you. |
| 08:44 | 24 | MR. WEST:  And I'll submit the matter for any |
| 08:44 | 25 | other questions which the Court may have. |

| | | |
|---|---|---|
| 08:44 | 1 | THE COURT:  I going to have a couple, but not now. |
| 08:44 | 2 | Counsel. |
| 08:44 | 3 | MR. DeJUTE:  Thank you, Your Honor. |
| 08:44 | 4 | THE COURT:  Once again, would you make your |
| 08:44 | 5 | appearance for the record.  I know who you are, but I want |
| 08:44 | 6 | my record to know who you are. |
| 08:44 | 7 | MR. DeJUTE:  Good morning, Your Honor.  David |
| 08:44 | 8 | DeJute, Assistant United States Attorney for the defendants. |
| 08:45 | 9 | Just briefly, Your Honor.  With respect to the |
| 08:45 | 10 | surreply, it makes essentially two points.  The one is that |
| 08:45 | 11 | the reserved rights of the Ninth Amendment entitle these |
| 08:45 | 12 | plaintiffs to come before this Court.  And without going |
| 08:45 | 13 | through the historical analysis, which is very interesting, |
| 08:45 | 14 | of the law of nations and treatises that were extant in the |
| 08:45 | 15 | 1750s and so on, plaintiffs concede that the Ninth Amendment |
| 08:45 | 16 | has to do with unenumerated rights.  They also concede, as |
| 08:45 | 17 | they must, that the Constitution is a written document. |
| 08:45 | 18 | That written document, as Your Honor just mentioned, gives |
| 08:45 | 19 | to Congress and to no one else the ability to remove a |
| 08:45 | 20 | sitting President from office. |
| 08:45 | 21 | The Ninth Amendment simply is not a source of |
| 08:45 | 22 | rights even as a matter of theory when that written document |
| 08:45 | 23 | already enumerates those rights to a different coordinate |
| 08:45 | 24 | branch of government. |
| 08:45 | 25 | The only other point that they make in their |

DEBBIE GALE, U.S. COURT REPORTER

08:45   1   surreply is with respect to the FOIA, or Freedom of

08:46   2   Information Act, claims.  And their argument is essentially

08:46   3   that this Court should disregard the fact that they haven't

08:46   4   been filed properly and should use its power to

08:46   5   constructively construe that because they've been attempting

08:46   6   to get information, then this Court should construe those as

08:46   7   proper FOIA requests.  It simply is not the law that they

08:46   8   can circumvent the jurisdictional requirements of venue and

08:46   9   district to do their FOIA requests in a roundabout way.

08:46   10      They did not file their FOIA requests in a proper

08:46   11  manner, and they should be held to have those FOIA requests

08:46   12  dismissed and re-file or make them; and if the final agency

08:46   13  action is something with which they disagree, then they can

08:46   14  file the appropriate FOIA action in the appropriate district

08:46   15  at that time.

08:46   16      Thank you, Your Honor.

08:47   17      THE COURT:  Thank you.

08:47   18      Counsel, your argument concerning standing, I'd

08:47   19  like to hear it, please.  You stated that that was the crux

08:47   20  of the issue, that the Court didn't need to go any further,

08:47   21  so I'd like you to repeat your argument.

08:47   22      MR. WEST:  Well, I believe the political question

08:47   23  is clearly also present.  But with respect to standing,

08:47   24  Your Honor, our argument is that plaintiffs cannot establish

08:47   25  the requisite injury in fact to establish standing in this

| | | |
|---|---|---|
| 08:47 | 1 | case.  No plaintiff in this case can establish a |
| 08:47 | 2 | particularized harm as to him or her sufficient to vest them |
| 08:47 | 3 | with what is traditionally known as standing to bring an |
| 08:47 | 4 | action in the U.S. District Court. |
| 08:47 | 5 | They -- no plaintiff in this case has any greater |
| 08:47 | 6 | standing than a taxpayer standing.  You know, try as they |
| 08:47 | 7 | might, they cannot particularize an injury to them.  In |
| 08:47 | 8 | fact, they cannot even -- in certain cases they cannot even |
| 08:48 | 9 | identify an injury itself. |
| 08:48 | 10 | Moreover, with the respect to the question of |
| 08:48 | 11 | redressability, which is another aspect, another prong of |
| 08:48 | 12 | the standing question, as I've stated before, we do not |
| 08:48 | 13 | believe that any of the questions in this case are |
| 08:48 | 14 | justiciable, and therefore, there's no redressability -- |
| 08:48 | 15 | there's nothing that this Court can redress. |
| 08:48 | 16 | And that, in essence, is our standing argument. |
| 08:48 | 17 | No injury in fact and no redressability. |
| 08:48 | 18 | THE COURT:  Okay.  Have you concluded your |
| 08:48 | 19 | arguments?  Are you satisfied? |
| 08:48 | 20 | MR. DeJUTE:  Yes, sir. |
| 08:48 | 21 | THE COURT:  Counsel, are you satisfied? |
| 08:48 | 22 | MR. SOSKIN:  Yes, sir. |
| 08:48 | 23 | THE COURT:  Do you have anything you would like to |
| 08:48 | 24 | say? |
| 08:48 | 25 | MR. SOSKIN:  No, Your Honor.  I'm just here to |

| | | |
|---|---|---|
| 08:48 | 1 | advise and assist these gentlemen in any way possible. |
| 08:48 | 2 | THE COURT: Counsel, are you satisfied? |
| 08:48 | 3 | MR. WEST: Yes, Your Honor. Thank you. |
| 08:48 | 4 | THE COURT: Before I turn to Ms. Taitz for a |
| 08:48 | 5 | moment, I just have one or two questions for you. |
| 08:49 | 6 | This idea of political question is an interesting |
| 08:49 | 7 | one. I'd like you to walk me through the process, if you |
| 08:49 | 8 | would, of how that would actually take place. In other |
| 08:49 | 9 | words, if, in fact, Ms. Taitz was correct, or better yet, |
| 08:49 | 10 | let's assume that Arnold Schwarzenegger was running for |
| 08:49 | 11 | President. He was born in Austria, apparently cannot become |
| 08:49 | 12 | or run as a candidate, and he now decides to declare for the |
| 08:49 | 13 | Presidency of the United States. |
| 08:49 | 14 | In this belief on your part that Congress is the |
| 08:49 | 15 | deciding branch of government, I want you to assume that |
| 08:49 | 16 | that Congress is a Republican Congress for a moment and |
| 08:49 | 17 | explain to me and walk me through -- and I'm going to |
| 08:49 | 18 | require you to do that. We can spend all day or night until |
| 08:50 | 19 | you do. Walk me through how that works. |
| 08:50 | 20 | MR. WEST: First of all, Your Honor, you're |
| 08:50 | 21 | talking about a candidate for President. |
| 08:50 | 22 | THE COURT: I'm going to talk about both |
| 08:50 | 23 | eventually, so I've got plenty of time. Let's just start |
| 08:50 | 24 | with Arnold Schwarzenegger. I'm going to suggest to you the |
| 08:50 | 25 | Courts are going to have to intervene at some time in what |

08:50    1    you perceive to be a political question and stop

08:50    2    Schwarzenegger from running for President.

08:50    3          MR. WEST:  Well, I believe, your Honor, the

08:50    4    question of whether a person is properly qualified as a

08:50    5    candidate is a different breed of cat altogether from

08:50    6    someone who is a sitting President whom the plaintiffs are

08:50    7    seeking to remove from office.

08:50    8          THE COURT:  Are you going to answer my question?

08:50    9          MR. WEST:  Yes.  I believe that the Courts could

08:50    10    have some jurisdiction over the question of whether a

08:50    11    candidate is qualified to be on the ballot.

08:50    12          THE COURT:  Do you agree, Counsel?

08:50    13          MR. DeJUTE:  I do agree, Your Honor.

08:50    14          THE COURT:  Counsel, do you agree?

08:50    15          MR. SOSKIN:  I don't believe we need to take that

08:50    16    position at this time, but it's conceivable that there would

08:51    17    be standing in a scenario in which such a case could be

08:51    18    adjudicated.

08:51    19          THE COURT:  So in what might be commonly called a

08:51    20    political question, because that's a broad word, at least in

08:51    21    that hypothetical, the Courts might be the intervening

08:51    22    party.  We can just say might.

08:51    23          Okay.  Now, I want to take this situation.  I want

08:51    24    you to walk me through, assuming that this is a Democratic

08:51    25    Congress, the process wherein Congress would take this issue

| | | |
|---|---|---|
| 08:51 | 1 | and decide that President Obama did not meet the |
| 08:51 | 2 | constitutional mandates.  How would that work? |
| 08:51 | 3 | MR. WEST:  I believe a bill could be introduced in |
| 08:51 | 4 | the Congress to -- probably to call for an investigation |
| 08:51 | 5 | into the issue of whether he is qualified to be President. |
| 08:51 | 6 | There are provisions within the Constitution which call |
| 08:51 | 7 | for -- for instance, the 25th Amendment, which calls for -- |
| 08:51 | 8 | which has a set schedule, if you will, or a set of |
| 08:52 | 9 | procedures for questioning whether a President is capable of |
| 08:52 | 10 | remaining in office or whether he should be removed either |
| 08:52 | 11 | temporarily or permanently. |
| 08:52 | 12 | In addition, as we point out in our papers, under |
| 08:52 | 13 | the *Nixon* case, the question of impeachment, if we were to |
| 08:52 | 14 | talk about impeachment here -- and I don't really know where |
| 08:52 | 15 | the Court is going, so I'm giving you the lay of the land as |
| 08:52 | 16 | I see it.  And I'm not suggesting in any way, shape, or form |
| 08:52 | 17 | that impeachment is appropriate in this case.  But let me |
| 08:52 | 18 | just say this:  That the *Nixon* case makes it clear, both the |
| 08:52 | 19 | D.C. Circuit and the Supreme Court, that the question of |
| 08:52 | 20 | impeachment is not a question which Courts can involve |
| 08:52 | 21 | themselves in. |
| 08:52 | 22 | That's one of the reasons why we are making the |
| 08:52 | 23 | argument we're making, because the Constitution is clear. |
| 08:52 | 24 | The only two uses of the words "sole," "sole power" anywhere |
| 08:52 | 25 | in the Constitution are where Congress -- where the founding |

08:53  1   fathers gave to Congress the sole power to impeach and the

08:53  2   sole power to try impeachments.

08:53  3          So if you're talking about the impeachment

08:53  4   procedure, the articles of impeachment are drawn up in the

08:53  5   House, and the impeachment is tried in the Senate.

08:53  6          THE COURT:  Now, I'm going to come back to my

08:53  7   question.  I want you to walk me through the process in this

08:53  8   particular case.  Is it impeachment?

08:53  9          MR. WEST:  I don't know.

08:53  10         THE COURT:  That's my belief also, that we don't

08:53  11  know.

08:53  12         MR. WEST:  Right.  I believe it would depend upon

08:53  13  how Congress wished to address it, how Congress wished to

08:53  14  view it.  And I think that if these plaintiffs believe that

08:53  15  they have some claim that Barack Obama's birth certificate

08:53  16  is forged, let them go through their congressman.  It's the

08:53  17  only workable way, Your Honor.  It's the way the founding

08:53  18  fathers intended.

08:53  19         THE COURT:  I understand.  I'm going to come back

08:53  20  to my question because I'm still unclear about what you

08:54  21  said.

08:54  22         I heard you say that you didn't know the

08:54  23  methodology at the present time by which the legislative

08:54  24  branch, Congress, would proceed.  That it could be

08:54  25  impeachment, or I also heard the implication that there was

| 08:54 | 1 | no process in place, and that Congress might enact a process |
| 08:54 | 2 | in this peculiar situation. |
| 08:54 | 3 | MR. WEST:  Well, I believe we have the 25th |
| 08:54 | 4 | Amendment, Your Honor, which sets forth a procedure.  For |
| 08:54 | 5 | example, the contemplation, I believe, in the 25th Amendment |
| 08:54 | 6 | is a situation where the President is incapacitated for some |
| 08:54 | 7 | reason.  I believe that this could be a species of |
| 08:54 | 8 | incapacitation if they want to try to establish that Barack |
| 08:54 | 9 | Obama was not a United States citizen.  The procedures |
| 08:54 | 10 | outlined in the 25th Amendment I believe would be the |
| 08:54 | 11 | procedures that would be utilized. |
| 08:54 | 12 | THE COURT:  Do you agree, Counsel? |
| 08:54 | 13 | MR. DeJUTE:  I do agree, Your Honor.  And I would |
| 08:54 | 14 | just add that, you know, the reason we don't know what the |
| 08:55 | 15 | procedure is, is because the plaintiffs through no fault |
| 08:55 | 16 | have been somewhat unclear.  And it either is impeachment or |
| 08:55 | 17 | it's not impeachment, it seems to me.  "Impeachment" simply |
| 08:55 | 18 | meaning, in the colloquial way, removal from office.  So |
| 08:55 | 19 | they are seeking the President's removal from office, or |
| 08:55 | 20 | they are not. |
| 08:55 | 21 | If they are seeking the President's removal from |
| 08:55 | 22 | office, not as a candidate, but as someone whom the electors |
| 08:55 | 23 | have sworn in and the Chief Justice twice swore into office, |
| 08:55 | 24 | then it seems to me the only way you can remove a sitting |
| 08:55 | 25 | President from office is through the impeachment procedures. |

08:55   1  And as Mr. West has indicated, that is entirely the province

08:55   2  of Congress.

08:55   3        If they are not seeking removal, if they are

08:55   4  seeking something else, then there's the whole doctrine of

08:55   5  this Court not being willing to issue nugatory orders.

08:56   6        If the sole power to remove someone is through

08:56   7  impeachment, then if they're seeking anything other than

08:56   8  that, then, at the end of this trial, when this Court were

08:56   9  to declare, at their best case scenario -- I'm not

08:56  10  suggesting this is in any way factual -- that somehow the

08:56  11  President is ineligible for office, this Court would be

08:56  12  without power to enforce -- no Court is in the business of

08:56  13  giving advisory judgments, where the only thing that they

08:56  14  could do with it was to pass it on to Congress and say do

08:56  15  what they will with this.

08:56  16        So it's either impeachment, where they do not have

08:56  17  jurisdiction, or it is an advisory opinion, in which this

08:56  18  Court should not issue one.

08:56  19        THE COURT:  Lastly, with the Military Commission

08:56  20  Act, or with numerous iterations, Congress sought to make

08:56  21  certain that this disparity -- in other words, 600 federal

08:56  22  judges in the United States, 93 districts, the specter could

08:56  23  be that the parties were picking a forum, either a liberal

08:57  24  or conservative forum, for their own uses, whichever party,

08:57  25  whichever entity is involved.  I hear that argument very

08:57  1    clearly.  Congress sought to cause uniformity in the

08:57  2    Military Commission Act, et cetera, by placing that within

08:57  3    the purview of the D.C. Circuit.  Now, I understand a

08:57  4    *quo warranto* going to the D.C. Circuit.  But is that your

08:57  5    position also, that if there ever was a resolution by a

08:57  6    Court, that it should be in the D.C. Circuit?

08:57  7         MR. WEST:  I don't believe that *quo warranto* is

08:57  8    applicable to the President of the United States.  I would

08:57  9    not concede that.

08:57  10        However, if it were, the only statute that we know

08:57  11   of that would cover this kind of a situation would be the

08:57  12   D.C. statute.  But I think that we're not conceding at all

08:57  13   that *quo warranto* would apply to the President of the

08:57  14   United States.

08:57  15        THE COURT:  I'm not asking you to take that

08:57  16   position either.  I just recognize the value of your

08:57  17   argument and how discomforting it is that parties could go

08:58  18   across the nation and simply pick what they perceive, by

08:58  19   either party's choice, a liberal or conservative district by

08:58  20   reputation, which doesn't mean that we are on the bench.  We

08:58  21   cast away politics when we come to the bench, as you know.

08:58  22        But still there's a perception different parts of

08:58  23   the country are more liberal or conservative than others,

08:58  24   and the question I've always had is whether Congress, with

08:58  25   the separation of powers, had the ability literally under

| | | |
|---|---|---|
| 08:58 | 1 | the Military Commission Act to start focusing the Courts and |
| 08:58 | 2 | directing the Courts to hear a motion or decide these issues |
| 08:58 | 3 | in one jurisdiction and if that wasn't violative of the |
| 08:58 | 4 | separation of powers in and of itself.  But that's not an |
| 08:58 | 5 | issue before us. |
| 08:58 | 6 | Are you satisfied with your argument for the time |
| 08:58 | 7 | being? |
| 08:58 | 8 | MR. DeJUTE:  I am, Your Honor. |
| 08:58 | 9 | THE COURT:  (To Mr. Soskin:)  And you're, once |
| 08:58 | 10 | again, taking no position on anything? |
| 08:58 | 11 | MR. SOSKIN:  Mr. West and Mr. DeJute have ably |
| 08:58 | 12 | stated the position. |
| 08:58 | 13 | THE COURT:  (To Mr. West:)  Counsel, are you |
| 08:58 | 14 | satisfied? |
| 08:58 | 15 | MR. WEST:  Yes, Your Honor.  I have very able |
| 08:58 | 16 | assistance from Mr. DeJute.  Thank you. |
| 08:59 | 17 | THE COURT:  All right.  Ms. Taitz, the lectern's |
| 08:59 | 18 | yours for 45 minutes. |
| 08:59 | 19 | MS. TAITZ:  Well, Your Honor, I actually can |
| 08:59 | 20 | answer all those questions that you just asked.  And I would |
| 08:59 | 21 | start by saying that impeachment might not be a proper |
| 08:59 | 22 | proceeding, because impeachment is a proceeding for someone |
| 08:59 | 23 | who is a legitimate President.  If this Court will find that |
| 08:59 | 24 | indeed Mr. Obama was not legitimate for presidency due to |
| 08:59 | 25 | the fact that he did not fulfill the requirements of |

| 08:59 | 1 | Article II, Section 1, of the Constitution, then not only he |
| 08:59 | 2 | didn't qualify for Presidency, he didn't qualify for |
| 08:59 | 3 | impeachment.  And that's why we have *quo warranto*.  And we |
| 08:59 | 4 | do have *quo warranto* statutes both in the District of |
| 08:59 | 5 | Columbia and the Supreme Court. |
| 09:00 | 6 | THE COURT:  Now, just a moment. |
| 09:00 | 7 | And there's where counsel's argued that if you're |
| 09:00 | 8 | going to file *quo warranto*, you should be in the District of |
| 09:00 | 9 | Columbia. |
| 09:00 | 10 | MS. TAITZ:  Well, Your Honor -- |
| 09:00 | 11 | THE COURT:  I think you concede that in your |
| 09:00 | 12 | papers. |
| 09:00 | 13 | MS. TAITZ:  No, actually, I brought with me |
| 09:00 | 14 | several cases that state that California choice of law would |
| 09:00 | 15 | require, under the government interest test, for you, |
| 09:00 | 16 | Your Honor, to use a home statute for the defendants when |
| 09:00 | 17 | the defendants are providing interest of the government. |
| 09:00 | 18 | Who are the defendants here?  We have the |
| 09:00 | 19 | President, the Vice President, Secretary of State.  Clearly, |
| 09:00 | 20 | these other defendants that would be under -- that would be |
| 09:00 | 21 | the proper defendants of -- under the governmental interest |
| 09:01 | 22 | test.  And as such, Your Honor, not only you would be |
| 09:01 | 23 | allowed to use a *quo warranto* statutes, you would be |
| 09:01 | 24 | mandated to use this statute, *quo warranto* statute of the |
| 09:01 | 25 | District of Columbia, as applied to the defendants. |

| | | |
|---|---|---|
| 09:01 | 1 | Why do we have this provision?  Specifically |
| 09:01 | 2 | because our interest is the interest of the United States of |
| 09:01 | 3 | America and its government.  Not individuals that happen to |
| 09:01 | 4 | be in the position.  Our interest is to make sure that those |
| 09:01 | 5 | individuals are legitimate for the position, and therefore, |
| 09:01 | 6 | I would expect the Department of Justice not be an |
| 09:01 | 7 | adversary, because as a matter of fact, they came in this |
| 09:01 | 8 | case, July the 13th, as an intervening party representing |
| 09:01 | 9 | United States of America, stating that if legitimacy of the |
| 09:02 | 10 | President is at stake, the Department of Justice needs to |
| 09:02 | 11 | represent the United States of America as an interest in |
| 09:02 | 12 | parties. |
| 09:02 | 13 | THE COURT:  All right.  Well, I know they're a |
| 09:02 | 14 | proper party.  I want you now to address the Court |
| 09:02 | 15 | concerning standing.  I want to hear about standing. |
| 09:02 | 16 | MS. TAITZ:  Absolutely, Your Honor. |
| 09:02 | 17 | Well, actually, before I go into standing, I |
| 09:02 | 18 | wanted to kind of go straight for the jugular and respond to |
| 09:02 | 19 | what Mr. West just mentioned. |
| 09:02 | 20 | And he started -- I mean, his main argument, and I |
| 09:02 | 21 | just want to address it off the bat, is that any plaintiff |
| 09:02 | 22 | with a political agenda can file, and a filing fee -- and I |
| 09:02 | 23 | know about all those filing fees.  I've been filing them and |
| 09:02 | 24 | paying them -- will be able to bring a legal action against |
| 09:02 | 25 | the sitting President. |

| | | |
|---|---|---|
| 09:02 | 1 | Well, Mr. West has misrepresented the case. This |
| 09:03 | 2 | is not a case of a political agenda. This is a legal |
| 09:03 | 3 | question of constitutional law. And the question is whether |
| 09:03 | 4 | Mr. Obama is legitimate for presidency or not. There is |
| 09:03 | 5 | nothing political about it. I didn't bring a case saying |
| 09:03 | 6 | whether we should or shouldn't bomb Iran or their nuclear |
| 09:03 | 7 | facilities. I didn't bring a question whether we should or |
| 09:03 | 8 | should not adopt health care, even though as a health |
| 09:03 | 9 | professional I have strong feelings about that. No. I |
| 09:03 | 10 | brought a question about legitimacy for presidency. And, |
| 09:03 | 11 | therefore, the political agenda argument just falls by the |
| 09:03 | 12 | wayside. It's just irrelevant in this particular case. |
| 09:03 | 13 | Now, another issue I would like to address, and |
| 09:03 | 14 | that's what Mr. West brought at the very beginning, his main |
| 09:04 | 15 | argument, that there were a number of cases around the |
| 09:04 | 16 | country. |
| 09:04 | 17 | However, Your Honor, there was never *res judicata*. |
| 09:04 | 18 | None of those questions were ever tried on the merits. And |
| 09:04 | 19 | I do hope that it would be that you will have the bravery |
| 09:04 | 20 | to -- to try this case on the merits as we've been bringing |
| 09:04 | 21 | those cases for a year. |
| 09:04 | 22 | They've been dismissed on technicalities, on the |
| 09:04 | 23 | issues of jurisdiction or standing. It was never brought on |
| 09:04 | 24 | standing. |
| 09:04 | 25 | The closest I came was in the state of Georgia. |

| 09:04 | 1 | The first was the case of Major Cook.  We did have TRO, |
| 09:04 | 2 | temporary restraining order, filed.  But what happened in |
| 09:04 | 3 | that case is that Judge Land dismissed it, not because the |
| 09:04 | 4 | case was tried on the merits, but because the Department of |
| 09:05 | 5 | Defense has revoked Major Cook's deployment orders. |
| 09:05 | 6 | When I brought the case to Georgia stating that my |
| 09:05 | 7 | client, Major Cook, cannot in good conscience be deployed to |
| 09:05 | 8 | Afghanistan due to the fact that he does not know whether |
| 09:05 | 9 | the orders given by the President are legitimate orders, |
| 09:05 | 10 | instead of bringing proper evidence, proper documents |
| 09:05 | 11 | showing that the President is indeed eligible and the orders |
| 09:05 | 12 | are lawful, the Department of Defense has revoked his |
| 09:05 | 13 | orders.  They stated you -- you no longer have to go to |
| 09:05 | 14 | Afghanistan; go home to your wife. |
| 09:05 | 15 | And that's why Judge Land has dismissed the case |
| 09:05 | 16 | of Major Cook.  If anything, that case has shown to the |
| 09:06 | 17 | whole world that there is a serious problem with legitimacy |
| 09:06 | 18 | of Mr. Obama.  Why else would the Department of Defense |
| 09:06 | 19 | revoke the deployment orders?  And by this, undermine the |
| 09:06 | 20 | whole U.S. military? |
| 09:06 | 21 | The only reasonable explanation is that the top |
| 09:06 | 22 | brass of U.S. military knew that they don't have proper |
| 09:06 | 23 | documentation, and that's why they revoked the orders. |
| 09:06 | 24 | Now, the second case where we also had a hearing, |
| 09:06 | 25 | again was never decided on the merits.  If anything, that |

| | | |
|---|---|---|
| 09:06 | 1 | case actually provided standing, as Judge Land heard the |
| 09:06 | 2 | case.  And in that case, my client, Captain Connie Rhodes, |
| 09:06 | 3 | M.D., was stating similarly that she cannot in good |
| 09:06 | 4 | conscious go to Iran -- to Iraq -- be deployed to Iraq under |
| 09:07 | 5 | the orders of Commander-in-Chief specifically because she |
| 09:07 | 6 | has grave doubts to his legitimacy. |
| 09:07 | 7 | And on the stand she argued that she is a medical |
| 09:07 | 8 | doctor who went through training in Illinois, any place -- |
| 09:07 | 9 | state of Illinois, and as a doctor, she knows that no person |
| 09:07 | 10 | can be born in this country without having a proper hospital |
| 09:07 | 11 | birthing file, a proper hospital birth certificate that |
| 09:07 | 12 | would show the name of the hospital, the name of an |
| 09:07 | 13 | attending physician and signatures.  She is an attending |
| 09:07 | 14 | physician.  She had grave concerns. |
| 09:07 | 15 | And in that case, Judge Land decided -- |
| 09:07 | 16 | THE COURT:  Did she refuse to serve? |
| 09:07 | 17 | MS. TAITZ:  Um, well, what happened in her case -- |
| 09:08 | 18 | and I brought -- |
| 09:08 | 19 | THE COURT:  Did she refuse to serve? |
| 09:08 | 20 | MS. TAITZ:  At the end she agreed, but it was |
| 09:08 | 21 | under coercion.  It was under duress.  I have brought her |
| 09:08 | 22 | e-mails because in order to -- to address this issue, I have |
| 09:08 | 23 | asked -- after she agreed not to proceed with the case and I |
| 09:08 | 24 | was threatened by Judge Land if I bring yet again another |
| 09:08 | 25 | case about legitimacy I will be sanctioned.  And I said, |

| | | |
|---|---|---|
| 09:08 | 1 | here you go, I'll bring it right away.  I'll bring it yet |
| 09:08 | 2 | again.  Go ahead, sanction me.  And I would like to -- leave |
| 09:08 | 3 | of court not to be the counsel on the case as she did end up |
| 09:08 | 4 | deploying to Iraq.  But I was given leave of court -- |
| 09:08 | 5 | THE COURT:  Is Lieutenant Freese going to deploy |
| 09:08 | 6 | if given orders? |
| 09:09 | 7 | MS. TAITZ:  Pardon? |
| 09:09 | 8 | THE COURT:  Is Lieutenant Freese going to deploy |
| 09:09 | 9 | if given orders? |
| 09:09 | 10 | MS. TAITZ:  Well, Lieutenant Freese is a plaintiff |
| 09:09 | 11 | in this case. |
| 09:09 | 12 | THE COURT:  Is Lieutenant Freese going to deploy |
| 09:09 | 13 | if given orders? |
| 09:09 | 14 | MS. TAITZ:  I don't know.  I cannot state for |
| 09:09 | 15 | sure, Your Honor. |
| 09:09 | 16 | THE COURT:  It's troubling.  It's troubling, I |
| 09:09 | 17 | would think, to this Court and any Court to have the specter |
| 09:09 | 18 | of what I believe is probably the most patriot group of |
| 09:09 | 19 | individuals in our country, those who serve in the military, |
| 09:09 | 20 | to decide to serve by virtue of who the President is or is |
| 09:09 | 21 | not.  And until either resolved by Congress or the Courts or |
| 09:09 | 22 | never resolved, that's the Commander-in-Chief. |
| 09:09 | 23 | It's difficult because I think anybody who served |
| 09:09 | 24 | in the military, if I recall correctly, took an oath to |
| 09:09 | 25 | serve the Constitution and to serve the United States.  Some |

| | | |
|---|---|---|
| 09:10 | 1 | may have served, as myself, under President Johnson in |
| 09:10 | 2 | conflict and also under President Nixon, and I can never |
| 09:10 | 3 | recall questioning who the President was.  I only had one |
| 09:10 | 4 | country, and I think most people in the military believe |
| 09:10 | 5 | that.  Therefore, when we get to standing eventually, which |
| 09:10 | 6 | I've asked you to address. |
| 09:10 | 7 | MS. TAITZ:  Yes. |
| 09:10 | 8 | THE COURT:  It's speculative on this Court's part |
| 09:10 | 9 | at the present time until I hear your argument, because |
| 09:10 | 10 | Lieutenant Freese takes the position that he's troubled by |
| 09:10 | 11 | this, but in the motion that you've brought, I don't see at |
| 09:10 | 12 | the present time any harm, any actual harm.  There's been no |
| 09:10 | 13 | refusal to serve.  And I'm not even certain if orders have |
| 09:10 | 14 | been cut for overseas military duty, which is why I've asked |
| 09:10 | 15 | you to address the issue of standing. |
| 09:10 | 16 | MS. TAITZ:  Yes, Your Honor.  Going to the issue |
| 09:10 | 17 | of standing, there are several layers of standing that I |
| 09:10 | 18 | would like to address.  And the first one, it's as you have |
| 09:11 | 19 | mentioned already.  It's standing of ones that took an oath |
| 09:11 | 20 | to uphold the Constitution of this nation.  And as a matter |
| 09:11 | 21 | of fact, as we speak, there is a case going on in the |
| 09:11 | 22 | District of Columbia, and I'm sure you're aware of it -- |
| 09:11 | 23 | it's a case of David Rodearmel v. Hillary Clinton, where the |
| 09:11 | 24 | only standing there is the standing of a governmental |
| 09:11 | 25 | official to uphold his oath, and whereby, according to |

| 09:11 | 1 | Mr. Rodearmel, according to his oath, he cannot serve under |
| 09:11 | 2 | Hillary Clinton because there is a constitutional violation. |
| 09:11 | 3 | And the three district judge panel has found |
| 09:11 | 4 | sufficient standing to go ahead with this case.  In case at |
| 09:12 | 5 | hand, majority of plaintiffs are plaintiffs that took an |
| 09:12 | 6 | oath to uphold the Constitution of this nation.  I believe |
| 09:12 | 7 | 40 out of 48 took such an oath.  Majority of them are |
| 09:12 | 8 | members of U.S. military, and several State representatives, |
| 09:12 | 9 | one State senator. |
| 09:12 | 10 | And the argument that Mr. West has brought was, |
| 09:12 | 11 | well, your clients continue their life as they did before. |
| 09:12 | 12 | Well, so did Mr. Rodearmel.  He works in the State |
| 09:12 | 13 | Department.  He gets up in the morning, he goes to the State |
| 09:12 | 14 | Department every day.  However, there is this pesky issue of |
| 09:12 | 15 | the Constitution of the United States of America that needs |
| 09:13 | 16 | to be upheld. |
| 09:13 | 17 | And clearly, if three judges in District of |
| 09:13 | 18 | Columbia found sufficient standing to proceed with this |
| 09:13 | 19 | case, and it is being decided right now, there is no reason |
| 09:13 | 20 | for not one but over 40 plaintiffs in this case not to have |
| 09:13 | 21 | standing based on the oath of office that they took. |
| 09:13 | 22 | And we do have perfect precedence for that.  We |
| 09:13 | 23 | have *Allen v. Board of Education* and *Clark v. United States* |
| 09:13 | 24 | *of America*. |
| 09:13 | 25 | THE COURT:  All right.  I'm going to break the |

09:13  1    standing issue down and have you focus on it.

09:13  2           Your complaint states that "All inactive or

09:13  3    military personnel have standing to challenge and demand

09:13  4    clear and convincing proof because they are subject to

09:13  5    recall service at any time and subject to the *de facto* chain

09:13  6    of command."  End of quote.

09:14  7           In order for Article III standing to be met, the

09:14  8    Supreme Court requires that the injury be both actual and

09:14  9    imminent, not conjectural or hypothetical, and that the

09:14  10   injury must be likely, not merely speculative.  And that's

09:14  11   the *Lujan* case.

09:14  12          Now, the plaintiffs, at least in this category

09:14  13   concerning standing, are currently inactive in the military,

09:14  14   and are therefore not currently subject to any orders from

09:14  15   the Commander-in-Chief, President Obama; therefore, it

09:14  16   appears you're basing your standing on the possibility that

09:14  17   they could be called back to service at any time and would

09:14  18   at that point have to follow the Commander-in-Chief's

09:14  19   commands, which it appears that plaintiff believes would be

09:14  20   injurious because they would have to follow the commands of

09:14  21   someone who does not meet the requirements to hold the

09:14  22   position.

09:14  23          However, tentatively, my feeling is that the

09:14  24   chance that plaintiffs would be called back to active duty

09:14  25   fails to meet the requirement that injury not be merely

| | | |
|---|---|---|
| 09:14 | 1 | hypothetical or speculative, and is thereby both |
| 09:15 | 2 | hypothetical and speculative at the present time.  And |
| 09:15 | 3 | that's *Bates v. Rumsfeld*, where plaintiff challenged the |
| 09:15 | 4 | military's policy of forcing personnel to receive Anthrax |
| 09:15 | 5 | vaccine, was no longer on active duty and the vaccine was |
| 09:15 | 6 | only being administered to selective units.  There plaintiff |
| 09:15 | 7 | did not meet the requirement that injury be concrete, |
| 09:15 | 8 | actual, or imminent. |
| 09:15 | 9 | Now, I'm going to make you break down your |
| 09:15 | 10 | argument for a moment.  I'm going to speak to you about that |
| 09:15 | 11 | group, because I'm going to get to Lieutenant Freese next. |
| 09:15 | 12 | So tentatively, right now you're losing, at least |
| 09:15 | 13 | as far as that group of retired or inactive military |
| 09:15 | 14 | personnel, because it's conjectural or hypothetical, and I |
| 09:15 | 15 | want you to address me and convince me that I'm wrong on |
| 09:15 | 16 | that. |
| 09:15 | 17 | MS. TAITZ:  Sure.  With pleasure, Your Honor. |
| 09:15 | 18 | When we're talking about constitutional rights of |
| 09:15 | 19 | citizens, those rights have to be viewed in completely |
| 09:16 | 20 | different light than any other rights.  And I would give you |
| 09:16 | 21 | an example of *Brown v. Board of Education*.  If Thurgood |
| 09:16 | 22 | Marshall were to stand here in front of you today and he |
| 09:16 | 23 | would state my client -- |
| 09:16 | 24 | THE COURT:  He's dead, Counsel. |
| 09:16 | 25 | MS. TAITZ:  I know, I know.  But I'm just giving |

| | | |
|---|---|---|
| 09:16 | 1 | you a hypothetical question. |
| 09:16 | 2 | How about any constitutional attorney would state, |
| 09:16 | 3 | would stand here and argue to you, Your Honor, my clients |
| 09:16 | 4 | are harmed by segregation.  You could state, well, how were |
| 09:16 | 5 | they harmed?  They get up in the morning and they go to |
| 09:16 | 6 | their school.  What is the harm that they go to one school |
| 09:16 | 7 | and not another school? |
| 09:16 | 8 | When the plaintiffs bring cases such as cases of |
| 09:16 | 9 | establishment clause, separation of state -- of religion and |
| 09:17 | 10 | state, when the Supreme Court have already decided *Brown v.* |
| 09:17 | 11 | *Board of Education* and *Clark v. USA*, what was the specific |
| 09:17 | 12 | harm to the members of the Board of Education when they |
| 09:17 | 13 | brought this lawsuit?  Nobody was standing with a bat ready |
| 09:17 | 14 | to hit them.  Nobody was telling them you have to go to |
| 09:17 | 15 | Iran.  Nobody was killing them.  But yet they brought this |
| 09:17 | 16 | case.  And the Supreme Court decided that when there is a |
| 09:17 | 17 | violation of the Constitution of the United States of |
| 09:17 | 18 | America, that's harm enough for a person who took an oath of |
| 09:17 | 19 | office to uphold this Constitution. |
| 09:17 | 20 | And therefore, all of my plaintiffs who took an |
| 09:18 | 21 | oath to uphold the Constitution, based on prior -- based on |
| 09:18 | 22 | precedence of *Allen v. Board of Education*, and *Clark v.* |
| 09:18 | 23 | *United States of America*, finding -- where they have a |
| 09:18 | 24 | finding that telling a plaintiff to do something which would |
| 09:18 | 25 | violate his oath of office is a harm, is a measurable harm, |

09:18   1   and therefore he has standing.

09:18   2           THE COURT:  All right.  I'm going to read to you

09:18   3   some initial thoughts I have and let you address this more

09:18   4   directly, and persuade me that I'm wrong.

09:18   5           Your complaint states that, "Because Lieutenant

09:18   6   Freese is on active military duty, he has standing to

09:18   7   challenge and demand clear and convincing proof of the

09:18   8   constitutional qualifications of the Commander-in-Chief and

09:18   9   the legality of the current chain of command,"

09:19   10  quote/unquote.  That's in Paragraph 6.

09:19   11          Your opposition argues that standing stems from

09:19   12  the oath that the military officers are required to take in

09:19   13  which they swear to support and defend the Constitution.

09:19   14          For support of this proposition, you've relied

09:19   15  primarily, as you've stated, on *Board of Education v. Allen*.

09:19   16  In Allen, the plaintiffs on the Board of Education took an

09:19   17  oath which required them to uphold the Constitution, and

09:19   18  they alleged that if pursuant to that oath they refused to

09:19   19  follow a law requiring them to lend books to parochial

09:19   20  schools on the basis that it violated the establishment

09:19   21  clause of the First Amendment to the Constitution, then they

09:19   22  would likely be expelled from office, that state funds to

09:19   23  their school district would be reduced.  While standing was

09:19   24  not challenged before the Court, the Court observed that it

09:19   25  had no doubt that the Board of Education had a personal

09:19    1    stake in the outcome of the litigation.

09:19    2            Plaintiffs argued in this action it is similar to

09:20    3    the one in Allen because the active military officer has

09:20    4    taken an oath to support and defend the Constitution, and

09:20    5    Lieutenant Freese argues that if pursuant to that oath he

09:20    6    refused to follow the orders of President Obama on the basis

09:20    7    that his holding the Office of President violates the

09:20    8    natural-born citizen clause of the Constitution, he would

09:20    9    face a substantial risk of disciplinary action.

09:20   10            That's the argument you propose to me.  However,

09:20   11    the footnote regarding standing in Allen is not binding

09:20   12    Supreme Court precedent, and the Supreme Court has

09:20   13    significantly tightened the standing requirement subsequent

09:20   14    to the Allen ruling.

09:20   15            And I want you to talk to me about *City of South

09:20   16    Lake Tahoe v. California Tahoe Regulatory Planning

09:20   17    Commission*.  That's at 625 F.2d 231.  It's a Ninth Circuit

09:20   18    1980 case.

09:20   19            Moreover, plaintiffs' argument is difficult to

09:20   20    follow because the Ninth Circuit has rejected the reasoning

09:20   21    of the footnote in *Allen* on the basis that the real source

09:20   22    of an oathtaker's complaint is not sufficiently concrete to

09:21   23    establish standing.

09:21   24            The Ninth Circuit, discussing the standing of

09:21   25    persons who take an oath to enforce the Constitution to

09:21    1    bring an action for injunctive and declaratory relief

09:21    2    regarding the constitutionality of an action, reasoned that

09:21    3    an oathtaker's complaint is limited to an abstract objection

09:21    4    at an unconstitutional act because he generally faces no

09:21    5    injury other than an abstract one should they not object to

09:21    6    the act.

09:21    7          The Court found that the oathtaker's objection was

09:21    8    insufficient to invoke standing because, quote, "The

09:21    9    difficulty with abstract constitutional grievances is that

09:21   10    they lack the specificity and adversarial coloration that

09:21   11    transmute vague notions of constitutional principle into a

09:21   12    forum historically viewed as capable of judicial

09:21   13    resolution."

09:21   14          Therefore, pursuant to the reasoning of *South*

09:21   15    *Lake Tahoe*, it appears, at least tentatively, that Plaintiff

09:22   16    Lieutenant Freese is failing to establish standing on his

09:22   17    military oath because his injuries are not sufficiently

09:22   18    concrete to establish an Article III standing.

09:22   19          So now I want you to once again address me

09:22   20    concerning Lieutenant Freese, and then I want to move on to

09:22   21    the state representatives in just a moment.  We'll get each

09:22   22    one of these down.

09:22   23          MS. TAITZ:  Absolutely.  Absolutely, Your Honor.

09:22   24          What's interesting that, actually, in their reply

09:22   25    to my response, the Department of Justice has already

| 09:22 | 1 | considered the point that in general, the oathtakers have |
|---|---|---|
| 09:22 | 2 | standing, so there is no adversarial point there.  Their |
| 09:22 | 3 | only point that they brought in their reply to my response |
| 09:22 | 4 | was that nothing new has happened; that there is no -- that |
| 09:22 | 5 | in *Allen v. Board of Education* there was something new |
| 09:22 | 6 | whereby the Board of Education was forced to buy certain |
| 09:23 | 7 | books.  And in this case nothing new has happened. |
| 09:23 | 8 | Your Honor, I submit to you that nothing -- that |
| 09:23 | 9 | something very new has happened.  The whole nation was |
| 09:23 | 10 | forced to buy Mr. Obama as a legitimate President.  That's |
| 09:23 | 11 | something new.  And when I have presented to this Court |
| 09:23 | 12 | information showing that according to Sandra Ramsey Lines -- |
| 09:23 | 13 | THE COURT:  I want you to answer my question |
| 09:23 | 14 | concerning Lieutenant Freese. |
| 09:23 | 15 | MS. TAITZ:  What I'm saying -- that Lieutenant |
| 09:23 | 16 | Freese have taken an oath before the election, and after |
| 09:23 | 17 | election, when Mr. Obama became the President, a new act has |
| 09:23 | 18 | happened that created this adversarial position.  If -- if |
| 09:23 | 19 | Lieutenant Freese would have taken an oath of office after |
| 09:23 | 20 | the election, the government could have rightfully argued |
| 09:24 | 21 | that nothing new happened.  But as a matter of fact, all of |
| 09:24 | 22 | my plaintiffs took an oath to defend the Constitution before |
| 09:24 | 23 | the election. |
| 09:24 | 24 | THE COURT:  All right.  Now, just a moment, |
| 09:24 | 25 | please, Ms. Taitz. |

09:24   1              I want to move on for a moment.

09:24   2              Your complaint alleges that because the state

09:24   3    representatives have a special nondelegable constitutional

09:24   4    right and responsibility to verify the qualifications of the

09:24   5    chief legislative -- or Chief Executive Officer of the

09:24   6    United States of America, who is responsible for allocating

09:24   7    large sums of funds, since receipt of those funds from any

09:24   8    officer without legal authority would be complicitly in

09:24   9    theft or conversion.  That's your paragraph 8 of the

09:24   10   complaint.

09:24   11             You've argued that this -- the defendants have

09:24   12   argued that this allegation is wholly insufficient to

09:24   13   constitute injury in fact because it is neither actual or

09:25   14   imminent and is highly speculative.  And that's in the

09:25   15   motion, I believe, at page 8, if I'm not mistaken.

09:25   16             Moreover, defendants assert that the allegation

09:25   17   fails to withstand any logical scrutiny, because the causes

09:25   18   of action of theft and conversion require intent, et al.

09:25   19             Now, I want to take Plaintiffs Alan Keyes and Gail

09:25   20   Lightfoot for a moment, because remember this spectrum of

09:25   21   standing.  You've got 30 or 40-some different complainants.

09:25   22             MS. TAITZ:  Yes.

09:25   23             THE COURT:  And therefore I don't want to sweep

09:25   24   that issue either one side or the other, which is why I'm

09:25   25   giving both sides a very fair opportunity to break this

09:25   1   down.

09:25   2           Let's discuss Alan Keyes for a moment, and Gail

09:25   3   Lightfoot.  They appeared on the California ballot as

09:25   4   candidates for President or Vice President in the 2008

09:25   5   national presidential elections.

09:26   6           Plaintiff Wiley Drake, who I think I saw earlier

09:26   7   in the audience, is here.  And Mr. Drake, or Reverend Drake,

09:26   8   was the vice presidential nominee for the American

09:26   9   Independent Party in the 2008 presidential election on the

09:26  10   California ballot.

09:26  11           Plaintiff Robinson is -- is Robinson present?

09:26  12           All right.  Plaintiff Robinson was a pledged

09:26  13   presidential elector for the American Independent Party in

09:26  14   the 2008 presidential election for the California ballot.

09:26  15           Defendants are arguing to this Court that the

09:26  16   political candidate -- that the political candidate

09:26  17   plaintiffs have failed to establish injury in fact because

09:26  18   they were not serious enough contenders for the presidency

09:26  19   That's the argument.  That Obama's alleged lack of

09:26  20   qualifications for the position caused them any harm.  In

09:27  21   other words, they were nonfactors is what's politely being

09:27  22   said from defendants' standpoint.  In other words,

09:27  23   defendants are really arguing that the political candidate

09:27  24   plaintiffs would have lost in any event.

09:27  25           Defendants are arguing to this Court that these

09:27   1   plaintiffs cannot meet the injury-in-fact requirement

09:27   2   because they cannot counter the argument that from a simple

09:27   3   mathematical analysis, they were not on the ballot in enough

09:27   4   states in the 2008 Presidential Election to even hope that

09:27   5   they could gain the requisite 270 electoral votes to win the

09:27   6   presidency or vice presidency of the United States.

09:27   7          Now, I've been in a quandary over the last week

09:27   8   and weekend of how Ross Perot would have fit into that

09:27   9   scenario, how many states do you have to qualify and what

09:27   10  happens if you qualify in 34 states rather than 50 states,

09:27   11  but those are states with high voting populations that might

09:27   12  have given you the majority vote in the country as happened

09:28   13  under Gore-Bush, but didn't give you the electoral college

09:28   14  vote, you know, that old conundrum.

09:28   15         In order to establish injury in fact, the injury

09:28   16  must affect the plaintiff in a personal and individual way.

09:28   17         How do you address the defense' argument that in

09:28   18  effect they've stated that your clients had little or no

09:28   19  chance and that this didn't make a difference?

09:28   20         MS. TAITZ:  Absolutely.

09:28   21         THE COURT:  It might to the Republican Party,

09:28   22  certainly, and maybe historically, maybe if Ross Perot was

09:28   23  involved today -- but the American Independent Party didn't

09:28   24  have a prayer.

09:28   25         MS. TAITZ:  Sure.  That's a very good argument

| | | |
|---|---|---|
| 09:28 | 1 | that was brought by the Department of Justice. |
| 09:28 | 2 | Now, first of all, I would like to state that out |
| 09:28 | 3 | of 48 plaintiffs, I represent 46.  Two plaintiffs are |
| 09:28 | 4 | represented by Mr. Kreep. |
| 09:28 | 5 | THE COURT:  No, no.  Remember this.  They are, but |
| 09:28 | 6 | today's the day of the hearing.  And what I did was point |
| 09:28 | 7 | out to each of you the nonsense that would occur if I |
| 09:29 | 8 | severed Reverend Drake, because upon filing a new complaint, |
| 09:29 | 9 | I would have joined you back together again.  These are the |
| 09:29 | 10 | same issues basically.  And I'm not going to wait now for |
| 09:29 | 11 | the third or fourth or fifth bite of the apple, which is why |
| 09:29 | 12 | I encouraged you to file properly to get this resolved one |
| 09:29 | 13 | way or the other for the good of the country and the good of |
| 09:29 | 14 | the parties involved. |
| 09:29 | 15 | So if Mr. Kreep is here, so be it, he's going to |
| 09:29 | 16 | be welcome to argue in a few moments.  But if he's not, this |
| 09:29 | 17 | is his day.  So you, in a sense, represent 48.  Mr. Kreep is |
| 09:29 | 18 | representing two other persons. |
| 09:29 | 19 | MS. TAITZ:  Mr. Kreep is representing Mr. Drake. |
| 09:29 | 20 | I don't know if Mr. Robinson is here. |
| 09:29 | 21 | THE COURT:  He's not.  But anyway, let's address |
| 09:29 | 22 | this.  I'm breaking it down.  I don't want to hear this |
| 09:29 | 23 | mushroom argument. |
| 09:29 | 24 | MS. TAITZ:  Okay.  Sure.  My only point is that I |
| 09:29 | 25 | was not prepared to argue on behalf of Mr. Drake and |

| | | |
|---|---|---|
| 09:29 | 1 | Mr. Robinson -- |
| 09:30 | 2 | THE COURT:  You don't have to. |
| 09:30 | 3 | MS. TAITZ:  -- as Mr. Kreep is representing them. |
| 09:30 | 4 | But I will argue -- |
| 09:30 | 5 | THE COURT:  I'm giving that you opportunity. |
| 09:30 | 6 | MS. TAITZ:  -- on behalf of Ambassador Keyes and |
| 09:30 | 7 | Gail Lightfoot, who was vice presidential candidate. |
| 09:30 | 8 | THE COURT:  Because essentially it's the same |
| 09:30 | 9 | argument, I expect. |
| 09:30 | 10 | MS. TAITZ:  What is interesting -- that with |
| 09:30 | 11 | Ambassador Keyes it's a more in-depth argument and more of |
| 09:30 | 12 | an injury, because I don't know if Your Honor is aware, but |
| 09:30 | 13 | Ambassador Keyes was actually a runner-up in a senatorial -- |
| 09:30 | 14 | in a senatorial election in Illinois. |
| 09:30 | 15 | THE COURT:  I'm aware. |
| 09:30 | 16 | MS. TAITZ:  Prior to Mr. Obama becoming the |
| 09:30 | 17 | President, he was one time senator and therefore -- |
| 09:30 | 18 | *(Mr. Kreep enters the courtroom.)* |
| 09:30 | 19 | THE COURT:  Let the record reflect Mr. Kreep is |
| 09:30 | 20 | now present. |
| 09:30 | 21 | MS. TAITZ:  Yes. |
| 09:30 | 22 | And therefore, he can show a very sizable and |
| 09:31 | 23 | measurable injury here, because if indeed it is found that |
| 09:31 | 24 | Mr. Obama did not satisfy his -- satisfy the necessary |
| 09:31 | 25 | requirements of residency, of citizenship, then not only |

| | | |
|---|---|---|
| 09:31 | 1 | Mr. –– Ambassador Keyes had a very strong case for damages |
| 09:31 | 2 | against Mr. Obama in relation to the presidential election, |
| 09:31 | 3 | but also in relation to the senatorial election. |
| 09:31 | 4 | THE COURT:  All right.  Now, I'm going to briefly |
| 09:31 | 5 | ask you a question concerning jurisdiction, and then invite |
| 09:31 | 6 | you to be seated, and then I'll hear from Mr. Kreep. |
| 09:31 | 7 | (To Mr. Kreep:)  And pay you the equal courtesy |
| 09:31 | 8 | and tell you where we're at briefly, but your arguments will |
| 09:31 | 9 | be brief. |
| 09:31 | 10 | I'm concerned about this political question |
| 09:31 | 11 | doctrine, and this is going to be addressed in the argument |
| 09:31 | 12 | and I expect a response.  So get your pen in hand, write it |
| 09:31 | 13 | down.  If I'm asking, I'm curious, and I want an answer. |
| 09:32 | 14 | The political questions may be a justiciable |
| 09:32 | 15 | question, not directly a jurisdictional question, but they |
| 09:32 | 16 | appear to be intertwined.  I'd anticipated that you would |
| 09:32 | 17 | argue on behalf of the administration that challenging |
| 09:32 | 18 | President Obama's natural citizenship is a political |
| 09:32 | 19 | question, something only the elective branches can decide, |
| 09:32 | 20 | which you've done this morning very effectively. |
| 09:32 | 21 | I'm curious about that.  A political question |
| 09:32 | 22 | suffered its first modern setback back in *Baker v. Carr* in |
| 09:32 | 23 | 1962, the classic "one-person, one-vote" case involving |
| 09:32 | 24 | state reapportionment practices.  That pretty much declared |
| 09:32 | 25 | that the only consistent area for political questions is |

09:32   1    national security, foreign relation issues.

09:33   2         Then came along *Powell v. McCormack* at 395 U.S.

09:33   3    486, in 1969, which effectively dismantled the political

09:33   4    question when it came to the exclusion of a tainted but duly

09:33   5    elected member of Congress, or at least it appears to have

09:33   6    done so.  It held that federal courts have jurisdiction over

09:33   7    such an issue, and that *Powell*, on the merits, had been

09:33   8    unconstitutionally excluded.

09:33   9         Whatever was left of the political question

09:33   10   doctrine in the area of foreign policy and national security

09:33   11   appears to be pretty much destroyed in *Boumediene v. Bush*,

09:33   12   128 Supreme Court 2229, 2008, which overturned the Military

09:33   13   Commission Act for denying Guantanamo detainees their habeas

09:33   14   corpus rights, which is why I started there, but wanted you

09:33   15   to conclude your argument.

09:34   16        So, therefore, be careful about this

09:34   17   jurisdictional issue, and that you don't believe it's simply

09:34   18   being swept under the rug by the Court or that you've

09:34   19   addressed it.  And in your next go-around, briefly, I want

09:34   20   you to come right back to this jurisdictional issue just as

09:34   21   I've given Ms. Taitz my concerns about standing and letting

09:34   22   her effectively argue that rather than this broad argument.

09:34   23   I want you to specifically address that.

09:34   24        So let's assume that the jurisdictional question

09:34   25   is in play, and the question may be whether this is a

| | | |
|---|---|---|
| 09:34 | 1 | substantial -- |
| 09:34 | 2 | (To Mr. West:)  Go ahead, finish your |
| 09:34 | 3 | conversation, because I want you to huddle. |
| 09:34 | 4 | MR. WEST:  I'm sorry, Your Honor. |
| 09:34 | 5 | THE COURT:  It's not impolite; in fact, I'm |
| 09:34 | 6 | encouraging it.  Make sure, because I want you to hear what |
| 09:34 | 7 | I'm saying.  I'm not going to let you do this mushroom |
| 09:34 | 8 | argument either. |
| 09:34 | 9 | Okay.  Now, the question may be whether there's a |
| 09:34 | 10 | substantial federal question and whether the suit has been |
| 09:35 | 11 | brought in the wrong district court versus in this federal |
| 09:35 | 12 | court rather than the district circuit.  And that's why I |
| 09:35 | 13 | started in that place and didn't adequately express my |
| 09:35 | 14 | concerns and wanted to hear your argument first. |
| 09:35 | 15 | I'm a little concerned about simply sweeping this |
| 09:35 | 16 | case under the jurisdictional rug concerning the merits or |
| 09:35 | 17 | lack thereof concerning President Obama's legitimacy to be |
| 09:35 | 18 | the President. |
| 09:35 | 19 | One of the interesting things -- and we're getting |
| 09:35 | 20 | ahead of ourselves, and I don't know if we'll get that far |
| 09:35 | 21 | or not -- but it's the citizenship statute at 8 U.S.C. |
| 09:35 | 22 | 1401(g), which is "undeniability," favorable to your |
| 09:35 | 23 | argument eventually, especially as termed by Justice Kennedy |
| 09:35 | 24 | in Tuan Anh Nguyen v. INS at 533 U.S. 53, 2001.  Kennedy's |
| 09:36 | 25 | read on that is very interesting; and that is, he basically |

09:36   1    throws away, in a sense, location.  We've got the oddity of

09:36   2    one candidate, Senator McCain, actually being born in

09:36   3    Panama, but it's a, quote/unquote, "territory."

09:36   4           Well, think about that for a moment.  Let's assume

09:36   5    that he would have been in transit -- well, his mother would

09:36   6    have been in transit -- my apologies -- through West Germany

09:36   7    and would have had the child prematurely.  How denigrating

09:36   8    to say to a woman that, by virtue of service with your

09:36   9    husband in the military, that because you were in Panama,

09:36   10   you couldn't run for president -- but ably serving our

09:36   11   military, as Senator McCain's father had, and a mother who's

09:37   12   following her husband, in a sense in his military duty and

09:37   13   patriotism to this country, passing through West Germany,

09:37   14   cannot be a candidate.  Very interesting argument.

09:37   15          What Justice Kennedy seems to do, and what I would

09:37   16   expect would be a 5-4 Court, is pay a lot of deference to a

09:37   17   pregnant mother and wife and say really it doesn't matter

09:37   18   whether it's Panama or West Germany, that that's an American

09:37   19   mother, an American citizen.  So there's the oddity there.

09:37   20   And perhaps we get to the merits of that some day, perhaps

09:37   21   we don't.

09:37   22          But that's a very strong case, quite frankly, in

09:37   23   the government's corner if we ever get to the merits of

09:37   24   this.  And I've been really questioning, not looking ahead,

09:37   25   but wondering how we place a woman who is ably, in a sense,

| 09:38 | 1 | serving this country along with her husband in the position |
|---|---|---|
| 09:38 | 2 | of serving this country and passing through West Germany or |
| 09:38 | 3 | some other NATO country during this period of time, having a |
| 09:38 | 4 | child outside the United States and not be able to be a |
| 09:38 | 5 | presidential candidate.  It's a real conundrum and a real |
| 09:38 | 6 | insult, I think, to the mother. |
| 09:38 | 7 | With your candidate -- |
| 09:38 | 8 | MS. TAITZ:  Yes. |
| 09:38 | 9 | THE COURT:  -- whether born, from your |
| 09:38 | 10 | perspective, in Kenya or whatever, I think I would have |
| 09:38 | 11 | raised the same questions if we ever get to the merits of |
| 09:38 | 12 | this; and that is, how can you take an American mother |
| 09:38 | 13 | passing into another jurisdiction to see a husband, or for |
| 09:38 | 14 | whatever reason, and cast aside the ability to run? |
| 09:38 | 15 | MS. TAITZ:  Absolutely. |
| 09:38 | 16 | THE COURT:  That's that real insult to, quite |
| 09:38 | 17 | frankly, gender. |
| 09:38 | 18 | MS. TAITZ:  Absolutely, Your Honor. |
| 09:38 | 19 | And well, first of all, of course, this is an |
| 09:38 | 20 | issue to be decided on the merits.  And -- |
| 09:38 | 21 | THE COURT:  By Congress? |
| 09:38 | 22 | MS. TAITZ:  Pardon? |
| 09:38 | 23 | THE COURT:  By Congress? |
| 09:38 | 24 | MS. TAITZ:  No, no.  By you, Your Honor.  We can |
| 09:39 | 25 | deal with this.  We don't need Congress.  And as a matter of |

| | | |
|---|---|---|
| 09:39 | 1 | fact, members of Congress and Senate actually told us so. |
| 09:39 | 2 | And as I submitted my surreply, I have submitted a letter |
| 09:39 | 3 | from Senator Jeff Sessions, which actually echoed numerous |
| 09:39 | 4 | such letters, as I was questioning the issue of eligibility. |
| 09:39 | 5 | As I have written to the Secretary of State of California, |
| 09:39 | 6 | Deborah Bowen, and questioned her, how did she verify |
| 09:39 | 7 | Mr. Obama's eligibility, and I actually got a response from |
| 09:39 | 8 | her.  I still cherish that e-mail that's saying "I didn't." |
| 09:39 | 9 | They didn't verify anything.  They just took his statement |
| 09:39 | 10 | for granted where he had filled out a declaration that he is |
| 09:39 | 11 | eligible.  They just took it for granted and ran with it. |
| 09:39 | 12 | And I have urged my supporters to check, and they did check. |
| 09:40 | 13 | They did a great job.  They checked with each and every |
| 09:40 | 14 | Secretary of State all over the nation, and the point is |
| 09:40 | 15 | that nobody checked.  So we're not dealing here with a |
| 09:40 | 16 | political question.  We're dealing here with a question |
| 09:40 | 17 | whether fraud was committed. |
| 09:40 | 18 |             THE COURT:  All right. |
| 09:40 | 19 |             MS. TAITZ:  And -- and -- |
| 09:40 | 20 |             THE COURT:  Thank you.  Let me take two other |
| 09:40 | 21 | issues into -- and I may -- |
| 09:40 | 22 |             MS. TAITZ:  If I can just finish responding to |
| 09:40 | 23 | what you just stated. |
| 09:40 | 24 |             THE COURT:  All right.  Briefly. |
| 09:40 | 25 |             MS. TAITZ:  So we have received letters from |

| | | |
|---|---|---|
| 09:40 | 1 | Senator Sessions as well as other senators and congressmen. |
| 09:40 | 2 | And they stated, "Senate ethics rules preclude me from |
| 09:40 | 3 | becoming personally involved in pending litigation.  I |
| 09:40 | 4 | sincerely hope that this matter can be fully and promptly |
| 09:40 | 5 | resolved by the Courts --" by you, Your Honor.  "In the |
| 09:40 | 6 | meantime, please do not hesitate to contact me in the future |
| 09:40 | 7 | should you have a question regarding an issue over which I |
| 09:40 | 8 | have jurisdiction." |
| 09:40 | 9 | THE COURT:  I'm going to joke for a moment.  I |
| 09:41 | 10 | wonder if Senator Sessions was in the party in power at the |
| 09:41 | 11 | present time, if he would take the same position, or if he |
| 09:41 | 12 | viewed this as a question for the legislature and for |
| 09:41 | 13 | Congress. |
| 09:41 | 14 | MS. TAITZ:  Actually -- |
| 09:41 | 15 | THE COURT:  Just a moment, Counsel.  I want to |
| 09:41 | 16 | address two other things. |
| 09:41 | 17 | You've consistently requested discovery if we go |
| 09:41 | 18 | beyond the 12(b)(6).  And, believe me, that's very much in |
| 09:41 | 19 | balance right now.  But assume we did for a moment.  For the |
| 09:41 | 20 | life of me, I do not understand why this Court would require |
| 09:41 | 21 | President Obama or -- I mean, you actually wanted |
| 09:41 | 22 | appearances at one time.  I mean, the first obvious, he |
| 09:41 | 23 | doesn't have any memory of his birth.  He's of no value in |
| 09:41 | 24 | terms of testimony, affidavits, or anything else.  I don't |
| 09:41 | 25 | have any memory of my birth, believe it or not.  So, |

09:41   1    therefore, that's not going to go very far.

09:41   2            Number two, why am I going through all the FOIA

09:41   3    requests originally with Mueller, et cetera?  I always had

09:42   4    great pride in this country.  Never liked the phrase "second

09:42   5    to none." I always believed that we were first.  Let me talk

09:42   6    to you patriotically for a moment.

09:42   7            If we ever went to the merits, why aren't we just

09:42   8    obtaining a birth certificate from Hawaii?  Why isn't that

09:42   9    certificate examined, if we ever got to the merits?  Why am

09:42   10   I going outside this country, and what kind of credence do I

09:42   11   give to foreign records, whether there are from Indonesia,

09:42   12   Slovakia, Italy -- I don't want to miss anybody here -- or

09:42   13   Kenya?  I always thought and believed that America was

09:42   14   ethical and good and that our records, you know, our way of

09:42   15   life was, quite frankly --

09:42   16           MS. TAITZ:  Absolutely.

09:42   17           THE COURT:  -- to be emulated across the world.

09:42   18           MS. TAITZ:  Absolutely.  And that's --

09:42   19           THE COURT:  And so why am I -- and there's a lot

09:42   20   of controversy, apparently, about these Kenyan birth

09:42   21   certificates, and there's controversy, from your standpoint,

09:43   22   about the birth certificate from Hawaii.

09:43   23           But why do I need to go through the machinations

09:43   24   of the FBI, Mueller, et cetera?

09:43   25           MS. TAITZ:  Yes.

| | | |
|---|---|---|
| 09:43 | 1 | THE COURT:  Those are easily obtained.  They're |
| 09:43 | 2 | something I can take judicial notice of. |
| 09:43 | 3 | So why this, in a sense, growing mushroom of |
| 09:43 | 4 | people who have to come into this Court and who you think |
| 09:43 | 5 | you would depose? |
| 09:43 | 6 | MS. TAITZ:  Absolutely, Your Honor. |
| 09:43 | 7 | Well, in regards to the birth certificate, as it |
| 09:43 | 8 | was stated previously, a number of lawsuits were filed, and |
| 09:43 | 9 | the position of the State of Hawaii is that they would be |
| 09:43 | 10 | happy to give us the original birth certificate provided |
| 09:43 | 11 | there is a consent.  The problem here is that Mr. Obama |
| 09:43 | 12 | refuses to give such a consent. |
| 09:43 | 13 | And that's why -- yeah, I didn't say that he |
| 09:43 | 14 | remembers his birth.  I don't remember my birth either. |
| 09:43 | 15 | THE COURT:  Good. |
| 09:43 | 16 | MS. TAITZ:  However -- however, if I am not lying, |
| 09:44 | 17 | if I'm not defrauding anybody, I will have no problem |
| 09:44 | 18 | signing a consent form.  You want my birth certificate? |
| 09:44 | 19 | Fine.  Be my guest.  Go to Russia, get my birth certificate. |
| 09:44 | 20 | There is nothing wrong there. |
| 09:44 | 21 | And it is, as a matter of fact, a circumstantial |
| 09:44 | 22 | evidence of guilty mind when Mr. Obama has spent over a |
| 09:44 | 23 | million dollars on attorneys, in attorneys' fees, trying to |
| 09:44 | 24 | quash each and every subpoena to obtain such a birth |
| 09:44 | 25 | certificate and birthing file from a hospital -- any |

| | | |
|---|---|---|
| 09:44 | 1 | hospital. |
| 09:44 | 2 | THE COURT:  The last question to you is this:  I |
| 09:44 | 3 | understand your point, by the way.  It doesn't need to be |
| 09:44 | 4 | belabored now. |
| 09:44 | 5 | MS. TAITZ:  If I may add just one more point. |
| 09:44 | 6 | THE COURT:  No, Counsel, you may not.  Just one |
| 09:44 | 7 | moment. |
| 09:44 | 8 | The concern that the government expresses is that |
| 09:45 | 9 | they truly believe and argue that the congressional, the |
| 09:45 | 10 | legislative branch should resolve this.  And I think that we |
| 09:45 | 11 | will recognize that once a President has taken the oath that |
| 09:45 | 12 | they're in a different position -- and the government's had |
| 09:45 | 13 | a hard time explaining to me what that methodology is once a |
| 09:45 | 14 | President has taken the oath, but certainly before the |
| 09:45 | 15 | President takes an oath of office, the electoral college is |
| 09:45 | 16 | required to cast their votes.  The government has argued -- |
| 09:45 | 17 | I forget in which page of their brief -- that that was the |
| 09:45 | 18 | proper time to raise what you perceive the illegitimacy of |
| 09:46 | 19 | President Obama's qualifications to be President.  In this |
| 09:46 | 20 | particular lawsuit, the lawsuit before this Court, not the |
| 09:46 | 21 | Pennsylvania or the Georgia lawsuit -- it's my belief that, |
| 09:46 | 22 | in this lawsuit, you filed on the day of the inauguration. |
| 09:46 | 23 | Is that true? |
| 09:46 | 24 | MS. TAITZ:  Yes. |
| 09:46 | 25 | THE COURT:  All right.  Now, in filing on the day |

09:46  1    of the inauguration, what effectively occurred was that the

09:46  2    electoral college had no opportunity to call qualification

09:46  3    into question.  Why did you file in this jurisdiction or

09:46  4    file this lawsuit on the day of President Obama's

09:46  5    inauguration?

09:46  6               MS. TAITZ:  Well --

09:46  7               THE COURT:  I believe at 3:00 o'clock or

09:46  8    1:00 o'clock after he'd been installed.

09:46  9               MS. TAITZ:  Well, actually, I came in the morning.

09:46  10              THE COURT:  Okay.

09:46  11              MS. TAITZ:  And it took some time to process the

09:46  12   paperwork.  And specifically it was done to prevent the

09:47  13   government from coming back and arguing *fait accompli*; he is

09:47  14   already the President.  I brought the original action on the

09:47  15   day of inauguration before he had any opportunity to perform

09:47  16   any function.

09:47  17              THE COURT:  Where did you do that?

09:47  18              MS. TAITZ:  Pardon?

09:47  19              THE COURT:  Where did you bring that?

09:47  20              MS. TAITZ:  Downstairs, right here.

09:47  21              THE COURT:  What day?

09:47  22              MS. TAITZ:  On January 20th, inauguration day, I

09:47  23   brought the case.  The case was filed on inauguration day.

09:47  24              THE COURT:  Why didn't you follow it?  It was

09:47  25   stamped at 3:26 p.m.  You mean it took you from 8:00 o'clock

| | | |
|---|---|---|
| 09:47 | 1 | in the morning to 3:26 to file this? |
| 09:47 | 2 | MS. TAITZ:  Well, Your Honor, your clerks don't |
| 09:47 | 3 | start until later.  It was 10:00 o'clock. |
| 09:47 | 4 | THE COURT:  Kristee, what time did you get here |
| 09:47 | 5 | today?  No, no.  Kristee, what time did you get here? |
| 09:47 | 6 | THE CLERK:  Around 7:00. |
| 09:47 | 7 | THE COURT:  All my clerks get here at 7:00. |
| 09:47 | 8 | Downstairs they opened about 8:00 to 9:00. |
| 09:48 | 9 | MS. TAITZ:  They -- but they don't accept |
| 09:48 | 10 | paperwork, from what I recall, until later in the day.  I |
| 09:48 | 11 | think it was 10:00 o'clock.  That's when they start taking |
| 09:48 | 12 | paperwork. |
| 09:48 | 13 | THE COURT:  Regardless -- |
| 09:48 | 14 | MS. TAITZ:  And some of the paperwork -- |
| 09:48 | 15 | THE COURT:  Regardless, why did you wait and move |
| 09:48 | 16 | this case into a posture where we already had a duly sworn |
| 09:48 | 17 | President, rather than filing this case so that the |
| 09:48 | 18 | electoral college could bring this up?  Because, you see, |
| 09:48 | 19 | any member of the electoral college could have raised this. |
| 09:48 | 20 | MS. TAITZ:  Yes, Your Honor.  And I actually |
| 09:48 | 21 | brought the issue that I tried to explain to you last time. |
| 09:48 | 22 | I did bring the case on behalf of these plaintiffs |
| 09:48 | 23 | back in November, and at that time Mr. Drake and |
| 09:48 | 24 | Mr. Robinson has argued that they wanted Mr. Kreep to be one |
| 09:48 | 25 | of the attorneys on the case.  Mr. Kreep left the state and |

| | | |
|---|---|---|
| 09:48 | 1 | went to Hawaii.  He showed up back one day before the |
| 09:49 | 2 | electoral college meeting, and when he showed up -- |
| 09:49 | 3 | THE COURT:  So just a moment. |
| 09:49 | 4 | MS. TAITZ:  -- it was too late. |
| 09:49 | 5 | THE COURT:  Without getting into the nuances |
| 09:49 | 6 | between the two of you.  Then, this is something internally |
| 09:49 | 7 | that happened, a breakdown of some type in the plaintiffs' |
| 09:49 | 8 | team of attorneys? |
| 09:49 | 9 | MS. TAITZ:  Well, in this particular case -- |
| 09:49 | 10 | THE COURT:  And if so -- |
| 09:49 | 11 | MS. TAITZ:  -- I brought -- |
| 09:49 | 12 | THE COURT:  Just a minute.  And if so, why |
| 09:49 | 13 | couldn't you have filed?  Do you need Mr. Kreep?  It appears |
| 09:49 | 14 | that you don't necessarily like him. |
| 09:49 | 15 | MS. TAITZ:  Well, in this case, I don't.  However, |
| 09:49 | 16 | in prior case, since both of us represented all three of the |
| 09:49 | 17 | plaintiffs, I have a whole number of e-mails that I have |
| 09:49 | 18 | addressed to Mr. -- |
| 09:49 | 19 | THE COURT:  Just a moment.  You didn't answer my |
| 09:49 | 20 | question.  Why didn't you file this case? |
| 09:49 | 21 | MS. TAITZ:  Because the plaintiffs wanted to wait |
| 09:49 | 22 | for Mr. Kreep. |
| 09:49 | 23 | THE COURT:  So that's a conscious choice on the |
| 09:49 | 24 | plaintiffs' team, then, that you acceded to at that time to |
| 09:50 | 25 | put this case in the posture and position of a duly sworn |

| | | |
|---|---|---|
| 09:50 | 1 | President. |
| 09:50 | 2 | MS. TAITZ:  Well, again, Your Honor, not duly |
| 09:50 | 3 | sworn President.  If one is sworn based on fraudulent |
| 09:50 | 4 | information, then the word "duly" wouldn't... |
| 09:50 | 5 | THE COURT:  Just a moment, just a moment.  I won't |
| 09:50 | 6 | quibble with you about the hour -- our stamp shows 3:26. |
| 09:50 | 7 | I'm going to assume you tried to file it at 8:30.  Okay? |
| 09:50 | 8 | But remember, I believe he was sworn in at, I don't know, |
| 09:50 | 9 | 11:00, 12:00, I'm not sure.  There's three hours' time |
| 09:50 | 10 | difference.  So he would have already been sworn in or close |
| 09:50 | 11 | to have been sworn in by the time you ever got to the front |
| 09:50 | 12 | desk. |
| 09:50 | 13 | So if there's lack of diligence here, it's not |
| 09:50 | 14 | that you didn't get to the counter in time; it's the fact |
| 09:50 | 15 | that you waited until the last day.  That's not -- I don't |
| 09:50 | 16 | understand that.  No court could have interjected a |
| 09:50 | 17 | preliminary injunction as you've asked in that short period |
| 09:50 | 18 | of time.  No court probably would have been willing to. |
| 09:51 | 19 | So I'm hearing and I'm going to make a finding, |
| 09:51 | 20 | unless I hear differently, that this is an internal |
| 09:51 | 21 | breakdown in the plaintiffs' team, some type of disagreement |
| 09:51 | 22 | that puts us in the position of the electoral college not |
| 09:51 | 23 | being able to decide this issue. |
| 09:51 | 24 | Now, you can briefly respond to that, and then I |
| 09:51 | 25 | want to hear from Mr. Kreep for a moment. |

| | | |
|---|---|---|
| 09:51 | 1 | MS. TAITZ:  Well, Your Honor, this is more -- more |
| 09:51 | 2 | than the breakdown of the team.  The whole point is I |
| 09:51 | 3 | brought a number of legal actions.  And one of these -- of |
| 09:51 | 4 | those legal actions, *Lightfoot v. Bowen* on behalf of one of |
| 09:51 | 5 | the plaintiffs in this case, Gail Lightfoot, was filed |
| 09:51 | 6 | before the electoral college meeting. |
| 09:51 | 7 | And I went straight to the Supreme Court of |
| 09:51 | 8 | California, and then I went to the Supreme Court of the |
| 09:51 | 9 | United States of America.  And the stamp -- I will be happy |
| 09:51 | 10 | to provide it -- shows December 12th.  The Supreme Court of |
| 09:51 | 11 | the United States of America had my case where I already |
| 09:52 | 12 | represented Gail Lightfoot.  I represented Pamela Barnett. |
| 09:52 | 13 | I represented Mr. Turner, who is here right now, seven |
| 09:52 | 14 | plaintiffs in all.  And the Supreme Court did not act. |
| 09:52 | 15 | Luckily, Chief Justice Roberts agreed that the |
| 09:52 | 16 | case needs to be heard by all nine justices; but he |
| 09:52 | 17 | scheduled it, not for December 13 and 14, saying, wait a |
| 09:52 | 18 | minute, we need to get this information, he scheduled it for |
| 09:52 | 19 | January the 23rd, after inauguration. |
| 09:52 | 20 | On January 21st, right after inauguration, |
| 09:52 | 21 | somebody erased all the information about this case from the |
| 09:52 | 22 | docket of the Supreme Court.  And I have filed complaints. |
| 09:52 | 23 | I have -- I have -- |
| 09:52 | 24 | THE COURT:  All right.  Thank you very much. |
| 09:52 | 25 | MS. TAITZ:  -- questioned. |

| | | |
|---|---|---|
| 09:52 | 1 | THE COURT:  Thank you.  Would you be seated for |
| 09:52 | 2 | just a moment.  You'll have another opportunity. |
| 09:52 | 3 | Mr. Kreep, where we stand is the following: |
| 09:53 | 4 | I'm deeply concerned about whether you have |
| 09:53 | 5 | standing or not. |
| 09:53 | 6 | Concerning the military personnel that have been |
| 09:53 | 7 | either retired or inactive, I'm deeply concerned that this |
| 09:53 | 8 | is conjectural and hypothetical, that the injury is not |
| 09:53 | 9 | actual and imminent. |
| 09:53 | 10 | Concerning Lieutenant Freese, I'm deeply |
| 09:53 | 11 | concerned, unless there's a refusal of orders -- which is |
| 09:53 | 12 | not before us, and apparently was the Georgia case involving |
| 09:53 | 13 | Major Cook -- that this is conjectural also. |
| 09:53 | 14 | And concerning the state representatives, when you |
| 09:53 | 15 | came in, I was talking to counsel about Allen Keyes and Gail |
| 09:53 | 16 | Lightfoot, but Pastor Drake is here, and -- the vice |
| 09:53 | 17 | presidential nominee for the American Independent Party. |
| 09:53 | 18 | And also I'd asked if the -- if Robinson was present, who is |
| 09:53 | 19 | not. |
| 09:53 | 20 | Now, you can address me on any issues, but I'm |
| 09:54 | 21 | deeply concerned about standing after reading government's |
| 09:54 | 22 | brief. |
| 09:54 | 23 | MR. KREEP:  First of all, Your Honor, let me |
| 09:54 | 24 | apologize to you and to counsel for my delay.  I ran into |
| 09:54 | 25 | some automobile problems that kept me, and I tried to -- |

SACV 09-0082 DOC - 10/5/2009 - Item No. 3

56

| | | |
|---|---|---|
| 09:54 | 1 | THE COURT:  Well, you're here.  This is your |
| 09:54 | 2 | opportunity. |
| 09:54 | 3 | MR. KREEP:  Please accept my apologies, |
| 09:54 | 4 | Your Honor, and counsel. |
| 09:54 | 5 | THE COURT:  I know there was a severance motion |
| 09:54 | 6 | filed on Friday or Thursday evening.  I'm not going to grant |
| 09:54 | 7 | that severance motion.  It's ridiculous in the sense that |
| 09:54 | 8 | even if there's a conflict between the two of you, even if I |
| 09:54 | 9 | granted a severance, what would occur is that the severance |
| 09:54 | 10 | would take place, and I can tell you I would rejoin you. |
| 09:54 | 11 | This isn't going to be a seriatim hearing.  The issues are |
| 09:54 | 12 | the same.  And if there's a disagreement over tactics, you |
| 09:54 | 13 | can argue a different viewpoint. |
| 09:54 | 14 | So, Counsel. |
| 09:54 | 15 | MR. KREEP:  Thank you, Your Honor.  I didn't |
| 09:54 | 16 | intend that matter to be heard this morning, obviously, Your |
| 09:54 | 17 | Honor, but obviously, the Court's order is the Court's |
| 09:54 | 18 | order. |
| 09:54 | 19 | THE COURT:  It's been heard, and it's going to be |
| 09:54 | 20 | denied. |
| 09:54 | 21 | MR. KREEP:  Thank you, Your Honor. |
| 09:54 | 22 | THE COURT:  Let's move on now. |
| 09:54 | 23 | MR. KREEP:  We also filed a motion for leave to |
| 09:54 | 24 | file another amended complaint. |
| 09:55 | 25 | THE COURT:  You can, Counsel, but you can guess |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:55 | 1 | where that's going.  Today's the day.  It's been clear to |
| 09:55 | 2 | all parties.  I've been gracious in terms of setting aside |
| 09:55 | 3 | this time, and I've tried to indicate in every which way |
| 09:55 | 4 | that these issues are the same.  And what's not going to |
| 09:55 | 5 | happen is Ms. Taitz bringing her motion, and then you |
| 09:55 | 6 | following with another motion, following with another |
| 09:55 | 7 | hearing.  Even if your clients are in conflict -- okay? -- |
| 09:55 | 8 | that doesn't stop you from arguing a different position |
| 09:55 | 9 | today.  So I'm being a gentleman about that.  What I don't |
| 09:55 | 10 | want to do is catch you by surprise later on.  I'm giving |
| 09:55 | 11 | you every opportunity today and indicating that if I was |
| 09:55 | 12 | you, I would argue my matters today. |
| 09:55 | 13 | MR. KREEP:  Yes, Your Honor. |
| 09:55 | 14 | THE COURT:  Okay.  The lectern's yours. |
| 09:55 | 15 | MR. KREEP:  Thank, You Honor. |
| 09:55 | 16 | First of all, I only represent two plaintiffs in |
| 09:55 | 17 | this case, Mr. Robinson and Pastor Drake.  I am not in a |
| 09:55 | 18 | position to nor would I speak on behalf of any of the other |
| 09:55 | 19 | plaintiffs because I don't think it's proper.  They are |
| 09:55 | 20 | represented by counsel.  They have their own chosen counsel. |
| 09:56 | 21 | My clients have me. |
| 09:56 | 22 | With regard to some -- I would like to address |
| 09:56 | 23 | some of the issues that you questioned Dr. Taitz about, if I |
| 09:56 | 24 | may, briefly. |
| 09:56 | 25 | THE COURT:  Please. |

| | | |
|---|---|---|
| 09:56 | 1 | MR. KREEP:  One of the things I think is |
| 09:56 | 2 | misunderstood, with all due respect to the Court, because |
| 09:56 | 3 | I've done some research on this, is that at the time that -- |
| 09:56 | 4 | if we were to talk about Mr. McCain, your analogy is not a |
| 09:56 | 5 | good one.  And the reason why is at that point in time the |
| 09:56 | 6 | federal law was that people born in the Panama Canal to |
| 09:56 | 7 | military were not considered natural-born citizens.  The law |
| 09:56 | 8 | was actually changed subsequently.  We need to go into that, |
| 09:56 | 9 | but so -- with all due respect, it's not a good analogy. |
| 09:56 | 10 | The second thing is, is that federal law at the |
| 09:56 | 11 | time required Mr. Obama's mother to be a resident |
| 09:56 | 12 | continuously in the United States for five years after age |
| 09:56 | 13 | 14 in order to convey her citizenship if the child was not |
| 09:57 | 14 | born in the United States.  So the issue is if the child was |
| 09:57 | 15 | born in Mombasa, in what was then -- |
| 09:57 | 16 | THE COURT:  Just a moment.  There's the |
| 09:57 | 17 | interesting point. |
| 09:57 | 18 | Bear with me for a moment. |
| 09:57 | 19 | The law got changed, didn't it? |
| 09:57 | 20 | MR. KREEP:  Yes, Your Honor. |
| 09:57 | 21 | THE COURT:  So therefore, depending upon the |
| 09:57 | 22 | Congress, we can change the constitutional right to be |
| 09:57 | 23 | President? |
| 09:57 | 24 | MR. KREEP:  No, Your Honor. |
| 09:57 | 25 | THE COURT:  It appears to me that Congress did. |

| | | |
|---|---|---|
| 09:57 | 1 | MR. KREEP:  Well -- |
| 09:57 | 2 | THE COURT:  So when we talk about constitutional |
| 09:57 | 3 | and embedded principles, it appears to me that Congress has |
| 09:57 | 4 | acted and changed what our perception would be of this |
| 09:57 | 5 | constitutional mandate. |
| 09:57 | 6 | MR. KREEP:  Your Honor, Congress -- |
| 09:57 | 7 | THE COURT:  A big concern. |
| 09:57 | 8 | MR. KREEP:  Congress changes laws all the time |
| 09:57 | 9 | that have a variety of implications for the Constitution. |
| 09:57 | 10 | Some of them get challenged, some of them don't.  Some of |
| 09:57 | 11 | them wait 20 years before or 40 years before they're |
| 09:57 | 12 | challenged. |
| 09:57 | 13 | THE COURT:  All I'm doing is pointing out that |
| 09:57 | 14 | this isn't the constitutional bedrock that the public and |
| 09:58 | 15 | you might argue; that this is something that Congress has, |
| 09:58 | 16 | in a sense, changed from time to time.  And therefore, this |
| 09:58 | 17 | has become a political issue. |
| 09:58 | 18 | And what I pointed out to you how absurd it is, |
| 09:58 | 19 | from at least Justice Kennedy's standpoint in the case that |
| 09:58 | 20 | I cited to you, that an American citizen who's a woman might |
| 09:58 | 21 | be transiting through a particular zone and give birth, and |
| 09:58 | 22 | therefore you can be the presidential candidate or not the |
| 09:58 | 23 | presidential candidate. |
| 09:58 | 24 | I can imagine the hue and cry you would be raising |
| 09:58 | 25 | on the other side if this had been Senator John McCain, |

09:58 1  whose father was, you know, head of CINCPAC at the time,

09:58 2  commander-in-chief of all the forces in Vietnam, when his

09:58 3  son was captured, and he couldn't run for President of the

09:58 4  United States after ably serving our country?

09:58 5       MR. KREEP: Well, there actually was litigation

09:58 6  over that issue, Your Honor. In fact, one of my clients,

09:58 7  Mr. Robinson, was a plaintiff in the litigation up in

09:59 8  federal court in San Francisco over that exact issue.

09:59 9       THE COURT: Judge Illston.

09:59 10       MR. KREEP: I apologize. I don't remember the

09:59 11  judge's name, Your Honor. I was not involved in that case.

09:59 12  I'm just aware of it.

09:59 13       THE COURT: Okay.

09:59 14       MR. KREEP: Getting back, Your Honor, with regard

09:59 15  to -- a lot of the complaint -- the reason why -- and I'm

09:59 16  not arguing the motion to amend the complaint, but the

09:59 17  reason why we didn't argue a lot of points in the complaint

09:59 18  was because, as we stated in our brief, we didn't think they

09:59 19  were well-taken.

09:59 20       We thought that -- we thought that a lot of the

09:59 21  plaintiffs -- strike that -- a lot of the defendants there

09:59 22  shouldn't have been in there. We thought it was just

09:59 23  muddying the waters, and we wanted to focus --

09:59 24       THE COURT: You've been much more focused, I

09:59 25  agree.

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:59 | 1 | MR. KREEP:  -- on what we believe should be the |
| 09:59 | 2 | issue, which is the eligibility issue, Your Honor. |
| 09:59 | 3 | With regard to deposing Mr. Obama, Your Honor, |
| 09:59 | 4 | that's something, obviously, that will be taken up.  I think |
| 09:59 | 5 | a justification for it, with all due respect, is that he |
| 09:59 | 6 | says in his book he has his birth certificate.  So if, for |
| 10:00 | 7 | whatever reason, there is a problem obtaining it from |
| 10:00 | 8 | Hawaii, and if this case survives today, Your Honor, I've |
| 10:00 | 9 | already made arrangements with a Hawaiian attorney to |
| 10:00 | 10 | associate and become *pro hac vice* to help us ford the |
| 10:00 | 11 | barriers in Hawaii to obtain that birth certificate.  It can |
| 10:00 | 12 | be done by an appropriate subpoena. |
| 10:00 | 13 | Whether there's need to take Mr. Obama's |
| 10:00 | 14 | deposition would remain to be seen.  But I think since he is |
| 10:00 | 15 | the only logical defendant in this case, I don't think it's |
| 10:00 | 16 | out of the realm of possibility. |
| 10:00 | 17 | And with regard -- I'm not going to get into the |
| 10:00 | 18 | false statements Dr. Taitz has made about me.  She's |
| 10:00 | 19 | repeatedly done it.  I can back up everything I say as to |
| 10:00 | 20 | what happened.  I didn't get back to California the day |
| 10:01 | 21 | before the electoral college.  I got back a week before and |
| 10:01 | 22 | had been working on the case with an attorney in Hawaii, by |
| 10:01 | 23 | the way, and attorneys on the East Coast.  Throughout the |
| 10:01 | 24 | entire time, I was in Hawaii on a business trip, not a |
| 10:01 | 25 | vacation, Your Honor.  Anyway, with regard to our position, |

| | | |
|---|---|---|
| 10:01 | 1 | Your Honor, we've argued in our brief how the electoral |
| 10:01 | 2 | college, as a result of changes in state laws, 26 state |
| 10:01 | 3 | laws, and the District of Columbia have mandated that |
| 10:01 | 4 | electors vote according to the election's results in their |
| 10:01 | 5 | particular states.  If they fail to do that, they are facing |
| 10:01 | 6 | criminal fines, civil penalties, a variety of things. |
| 10:01 | 7 | So it's no longer the way it was when the founding |
| 10:01 | 8 | fathers set all this up, and that we would have wise men who |
| 10:01 | 9 | would cast their votes in the electoral college to make sure |
| 10:01 | 10 | that people who were in the rural areas weren't swayed by |
| 10:01 | 11 | inappropriate reasons to vote, for some bribery, lack of |
| 10:01 | 12 | information, whatever.  Today with the internet, today with |
| 10:01 | 13 | television, everybody seems to have the ability to learn |
| 10:02 | 14 | just about anything they want.  I'm amazed to see the things |
| 10:02 | 15 | that are being written about me by various people on the |
| 10:02 | 16 | internet.  Always fascinates me. |
| 10:02 | 17 | That was the original intent of the electoral |
| 10:02 | 18 | college.  Now, we have a situation where not only do the |
| 10:02 | 19 | electors in the big "E" sense, the electoral college, but |
| 10:02 | 20 | the electors in the small "E" sense, the voters -- |
| 10:02 | 21 | THE REPORTER:  Your Honor. |
| 10:02 | 22 | THE COURT:  A little slower.  I want a complete |
| 10:02 | 23 | record. |
| 10:02 | 24 | MR. KREEP:  I apologize. |
| 10:02 | 25 | Now, the days -- we are in the situation where, |

| | | |
|---|---|---|
| 10:02 | 1 | because of the internet and television, the big "E" |
| 10:02 | 2 | electors, electoral college electors, and the small "E" |
| 10:02 | 3 | electors, the voters, have access to just about any piece of |
| 10:02 | 4 | information about any candidate that they might want.  It's |
| 10:02 | 5 | amazing what's out there.  A lot of it's false.  I can't |
| 10:02 | 6 | tell you how many bizarre rumors I've seen about Mr. Obama |
| 10:02 | 7 | on the internet. |
| 10:02 | 8 | THE COURT:  Let's get to the argument. |
| 10:02 | 9 | MR. KREEP:  Okay. |
| 10:02 | 10 | THE COURT:  Okay. |
| 10:02 | 11 | MR. KREEP:  So the electoral college is not |
| 10:03 | 12 | serving the job that it originally did, so there is no more |
| 10:03 | 13 | electoral college to be the one to challenge us, because we |
| 10:03 | 14 | don't have Mr. Levenshane *(phonetic)* in Virginia in 1972 |
| 10:03 | 15 | casting -- |
| 10:03 | 16 | THE COURT:  Let me stop you for a moment.  Let me |
| 10:03 | 17 | repeat to you what I just heard.  The electoral college |
| 10:03 | 18 | procedurally can challenge this, but they're not doing their |
| 10:03 | 19 | job. |
| 10:03 | 20 | MR. KREEP:  No, they're not. |
| 10:03 | 21 | THE COURT:  That's what I heard. |
| 10:03 | 22 | MR. KREEP:  They're not allowed in the state -- |
| 10:03 | 23 | because of state laws passed imposing civil and criminal |
| 10:03 | 24 | penalties on electors in 26 states and the District of |
| 10:03 | 25 | Columbia, they can't. |

| | | |
|---|---|---|
| 10:03 | 1 | THE COURT:  Has that been passed in Illinois? |
| 10:03 | 2 | MR. KREEP:  I'm sorry, I don't remember the list |
| 10:03 | 3 | of all states that it's been passed in, Your Honor. |
| 10:03 | 4 | THE COURT:  If it hasn't been passed in Illinois, |
| 10:03 | 5 | assuming that, then it could be raised by one of the |
| 10:03 | 6 | electoral college persons from Illinois.  If it hasn't been |
| 10:03 | 7 | passed in Alabama and Senator Sessions was concerned, it |
| 10:04 | 8 | could be raised by one of the electoral college persons from |
| 10:04 | 9 | Alabama. |
| 10:04 | 10 | MR. KREEP:  Yes, Your Honor. |
| 10:04 | 11 | THE COURT:  It's -- the 26 is not impressive to |
| 10:04 | 12 | me.  It can be raised by any member of the electoral |
| 10:04 | 13 | college. |
| 10:04 | 14 | MR. KREEP:  But it still would have to be voted on |
| 10:04 | 15 | by the majority of the electoral college to do it, |
| 10:04 | 16 | Your Honor, and given the mandates, that would be |
| 10:04 | 17 | exceedingly hard. |
| 10:04 | 18 | THE COURT:  So was the conscious decision, then, |
| 10:04 | 19 | made not to raise this in the electoral college and let |
| 10:04 | 20 | President Obama be sworn in? |
| 10:04 | 21 | And I'm coming back to the original question I |
| 10:04 | 22 | asked Ms. Taitz. |
| 10:04 | 23 | We find ourselves in significantly different |
| 10:04 | 24 | positions -- or a different position, I'm sorry, when a |
| 10:04 | 25 | person is sworn into office, which is why I started this |

| | | |
|---|---|---|
| 10:04 | 1 | discussion with the government to walk me through the |
| 10:04 | 2 | process.  They've not adequately answered that.  They tossed |
| 10:04 | 3 | out impeachment as a possibility, and they also tossed out |
| 10:04 | 4 | that Congress could really make up the rules as they go in a |
| 10:04 | 5 | unique situation, if your position was well-taken. |
| 10:05 | 6 | I'm being a little facetious about that, but I'm |
| 10:05 | 7 | not.  They didn't answer my question.  You're not answering |
| 10:05 | 8 | my question either. |
| 10:05 | 9 | MR. KREEP:  Your Honor, I am of the belief that |
| 10:05 | 10 | any individual should have the right to bring a case before |
| 10:05 | 11 | any federal district court to challenge the eligibility. |
| 10:05 | 12 | THE COURT:  And my question was why this wasn't |
| 10:05 | 13 | raised in the electoral college, whether you believe that 26 |
| 10:05 | 14 | states mandated to those representatives from that electoral |
| 10:05 | 15 | college or not.  And at least there ought to have been due |
| 10:05 | 16 | notice.  It should have been raised in the electoral |
| 10:05 | 17 | college.  And that's the crux really of the government's |
| 10:05 | 18 | argument. |
| 10:05 | 19 | And I'm asking you again, and for the final time, |
| 10:05 | 20 | why wasn't this raised in the electoral college?  If you |
| 10:05 | 21 | choose not to answer it or you tend to just give me a |
| 10:05 | 22 | mushroom argument, then I'll take it as you don't know. |
| 10:05 | 23 | MR. KREEP:  I'll just tell you right out, |
| 10:05 | 24 | Your Honor, I don't know. |
| 10:05 | 25 | THE COURT:  Okay.  Continue your argument. |

| | | |
|---|---|---|
| 10:05 | 1 | MR. KREEP:  Thank you, Your Honor. |
| 10:05 | 2 | With regard to the issue of Congress, Your Honor, |
| 10:05 | 3 | we've gone through in our brief the restrictions on what |
| 10:06 | 4 | Congress can do regarding the vote in the electoral college. |
| 10:06 | 5 | There is no provision -- there is a provision for reviewing |
| 10:06 | 6 | the paper.  If you remember our brief, we laid that out very |
| 10:06 | 7 | succinctly, Your Honor.  There's no provision for Congress |
| 10:06 | 8 | to make a determination of eligibility.  And given the |
| 10:06 | 9 | political reality of these days, I'm not sure how many |
| 10:06 | 10 | people have the -- would have had the guts to do it. |
| 10:06 | 11 | There was the option at the certification of the |
| 10:06 | 12 | electoral college vote for a congressman or a senator -- |
| 10:06 | 13 | there have to be one of each -- to have raised the issue at |
| 10:06 | 14 | this -- |
| 10:06 | 15 | THE COURT:  If Senator Sessions is concerned, why |
| 10:06 | 16 | didn't he raise it? |
| 10:06 | 17 | MR. KREEP:  I have no idea, Your Honor.  Okay? |
| 10:06 | 18 | But I can tell you procedurally why he couldn't |
| 10:06 | 19 | have.  Okay?  He -- procedurally he couldn't have because, |
| 10:06 | 20 | according to the record -- and this is not an issue brought |
| 10:06 | 21 | up, so I didn't go out and get the paperwork -- Vice |
| 10:06 | 22 | President Chaney didn't ask the magic -- use the magic |
| 10:07 | 23 | words, didn't ask the question.  He didn't ask if there was |
| 10:07 | 24 | a challenge, which he's supposed to do.  Why didn't he do |
| 10:07 | 25 | it?  I have no idea. |

10:07  1      THE COURT:  Within the same party, certainly, I

10:07  2  assume that they're talking to each other.

10:07  3      MR. KREEP:  I would assume so, Your Honor, but I

10:07  4  gave up a long time ago trying to understand politicians.

10:07  5      THE COURT:  Okay.  All right.  Why don't you

10:07  6  conclude your argument.

10:07  7      MR. KREEP:  Your Honor, it's the position of my

10:07  8  clients -- and again, I'm only representing my clients.  I'm

10:07  9  not representing the military.  I'm not representing any of

10:07  10  the people that you -- most of which you asked me about

10:07  11  originally, Your Honor, so I can't speak for them.  I would

10:07  12  not speak for them.  But it is our position that the

10:07  13  citizens of the United States have a right to know whether

10:07  14  Mr. Obama is constitutionally eligible to serve as President

10:07  15  of the United States.  If for no other reason than if he is

10:07  16  not, then every action he has taken is subject to challenge

10:07  17  and possible invalidation because the actions he has taken

10:07  18  as President require a President.

10:07  19      THE COURT:  How do you respond to the question I

10:08  20  asked the government, finally, before we take a recess, and

10:08  21  that is, what does that look like?  In other words, I asked

10:08  22  the government, how does that work?  It looks wonderful on

10:08  23  paper, but how does Congress react to that especially when

10:08  24  Congress might be the same party that's in power?  After

10:08  25  all, it's a political branch.

| | | |
|---|---|---|
| 10:08 | 1 | Your argument is that it's not a political |
| 10:08 | 2 | question.  Your argument is that that's why the Court should |
| 10:08 | 3 | intervene. |
| 10:08 | 4 | Their argument is, from the government's |
| 10:08 | 5 | perspective, no, it's Congress that should intervene.  I've |
| 10:08 | 6 | heard impeachment as a possibility, difficult to surmise |
| 10:08 | 7 | that coming from any house or any legislative body that's in |
| 10:08 | 8 | power with the same President, whether it's Democrat or |
| 10:08 | 9 | Republican.  I've asked them how that works.  Nobody's been |
| 10:08 | 10 | able to explain that to me, and I can't walk through that |
| 10:08 | 11 | process myself. |
| 10:08 | 12 | MR. KREEP:  I think what happens, Your Honor, and |
| 10:08 | 13 | maybe I'm being naive, but I've been also accused of worse |
| 10:08 | 14 | things.  I believe that if Mr. Obama is not eligible to |
| 10:09 | 15 | serve as President of the United States, he never was. |
| 10:09 | 16 | Therefore, any action that he has taken would be invalid. |
| 10:09 | 17 | And I believe that under the 25th Amendment, because that |
| 10:09 | 18 | would seem to be the closest thing we've got, if he is |
| 10:09 | 19 | disqualified or unqualified or unable to serve, Mr. Biden |
| 10:09 | 20 | would -- Vice President Biden, would take over as President |
| 10:09 | 21 | of the United States, and then any things, any executive |
| 10:09 | 22 | orders, any nominations, any legislation that had to be |
| 10:09 | 23 | signed by a valid President would have to be redone.  It |
| 10:09 | 24 | would be a do-over. |
| 10:09 | 25 | THE COURT:  And that's why, in short summary, I'm |

| 10:09 | 1 | hearing you believe that the federal court should intervene. |
| 10:09 | 2 | MR. KREEP:  Yes, Your Honor. |
| 10:09 | 3 | THE COURT:  Now, one more question.  Ninety-three |
| 10:09 | 4 | or 94 districts across the United States.  If I was in the |
| 10:09 | 5 | government's position, and I think counsel ably argued this, |
| 10:09 | 6 | that perceive for a moment hypothetically that I'm either a |
| 10:09 | 7 | conservative or a liberal.  You can chose which one.  And |
| 10:10 | 8 | I'm not, of course, on the bench because we're not a |
| 10:10 | 9 | political body.  But the public believes that different |
| 10:10 | 10 | parts of the country are more liberal or conservative.  Now, |
| 10:10 | 11 | I decide because I'm the opposition party, either Democrat |
| 10:10 | 12 | or Republican or Independent, to search across the country |
| 10:10 | 13 | in what I perceive is the best judicial forum.  For goodness |
| 10:10 | 14 | sakes, I want, for instance, all Republicans who are on the |
| 10:10 | 15 | federal bench or all Democrats on the federal bench |
| 10:10 | 16 | appointed by a certain president, or the Ninth Circuit might |
| 10:10 | 17 | be perceived to be more liberal than, say, the Fourth |
| 10:10 | 18 | Circuit by some.  I don't believe that's true, but let's |
| 10:10 | 19 | just assume that for a moment.  By the way, I think we're a |
| 10:10 | 20 | very well-balanced circuit. |
| 10:10 | 21 | But the danger from the government's perspective |
| 10:10 | 22 | is that the opposition, the person not in power, can seek |
| 10:10 | 23 | out what they believe is the most favorable forum.  So for |
| 10:10 | 24 | instance, you might perceive hypothetically that Orange |
| 10:11 | 25 | County may have a reputation for being a conservative to |

| | | |
|---|---|---|
| 10:11 | 1 | moderate county, and therefore, this is a good place to |
| 10:11 | 2 | bring a lawsuit.  Whereas, you want to avoid another |
| 10:11 | 3 | particular jurisdiction in the country. |
| 10:11 | 4 | Why did you two bring the lawsuit in Orange |
| 10:11 | 5 | County? |
| 10:11 | 6 | MR. KREEP:  I didn't bring the lawsuit in Orange |
| 10:11 | 7 | County, Your Honor.  I came in much after the lawsuit was |
| 10:11 | 8 | filed. |
| 10:11 | 9 | THE COURT:  Ms. Taitz, why did you bring the |
| 10:11 | 10 | lawsuit here?  I know you live here, don't you?  You're a |
| 10:11 | 11 | resident. |
| 10:11 | 12 | MS. TAITZ:  I am a resident. |
| 10:11 | 13 | THE COURT:  Why here?  It could have been brought |
| 10:11 | 14 | in Illinois.  It could have been brought in D.C.  Why in |
| 10:11 | 15 | Orange County? |
| 10:11 | 16 | MS. TAITZ:  First of all, I can bring an action |
| 10:11 | 17 | where I am a licensed attorney. |
| 10:11 | 18 | THE COURT:  I know you can.  I'm asking why. |
| 10:11 | 19 | MS. TAITZ:  And, you know, it's not only where. |
| 10:11 | 20 | THE COURT:  Excuse me, I'm asking why. |
| 10:11 | 21 | MS. TAITZ:  (A) because I'm a licensed attorney |
| 10:11 | 22 | here.  I cannot go to Illinois and bring an action there, |
| 10:11 | 23 | because I'm not a licensed attorney in Illinois. |
| 10:11 | 24 | THE COURT:  Can you go *pro hac vice*? |
| 10:12 | 25 | MS. TAITZ:  In order to have *pro hac vice*, you |

| | | |
|---|---|---|
| 10:12 | 1 | need to have an attorney from another jurisdiction who |
| 10:12 | 2 | cosigns it. |
| 10:12 | 3 | And as a matter of fact, I did attempt to resolve |
| 10:12 | 4 | this issue in the District of Columbia because District of |
| 10:12 | 5 | Columbia has *quo warranto*. Before I did it, I followed all |
| 10:12 | 6 | the procedures. I submitted to Eric Holder. I submitted -- |
| 10:12 | 7 | THE COURT: So that's your answer. You did try it |
| 10:12 | 8 | on earlier dates. |
| 10:12 | 9 | MS. TAITZ: Exactly. |
| 10:12 | 10 | THE COURT: It's not simply a forum that you |
| 10:12 | 11 | chose. You had a multiplicity of forums that you signed |
| 10:12 | 12 | before. |
| 10:12 | 13 | MS. TAITZ: Yes. |
| 10:12 | 14 | THE COURT: That answers the question. Thank you |
| 10:12 | 15 | very much. I'm satisfied. |
| 10:12 | 16 | MR. KREEP: May I? |
| 10:12 | 17 | THE COURT: Counsel? |
| 10:12 | 18 | MR. KREEP: Yes. Just one brief thing, Your |
| 10:12 | 19 | Honor. |
| 10:12 | 20 | THE COURT: I just wanted to make sure there's no |
| 10:12 | 21 | forum shopping. And I'm satisfied, Ms. Taitz, with your |
| 10:12 | 22 | answer. You filed in Georgia. You attempted to file in |
| 10:12 | 23 | Pennsylvania. You attempted to file with the California |
| 10:12 | 24 | Supreme Court. You attempted to file with the |
| 10:12 | 25 | Washington D.C. court. That answers the question. |

| | | |
|---|---|---|
| 10:12 | 1 | MS. TAITZ: And, Your Honor, Mr. Obama can rest |
| 10:12 | 2 | assured this is not the most conservative forum in the |
| 10:12 | 3 | nation. |
| 10:12 | 4 | THE COURT: Well, thank you. I hope we're a |
| 10:13 | 5 | well-balanced forum. |
| 10:13 | 6 | Counsel. |
| 10:13 | 7 | MR. KREEP: Just a side note, Your Honor. I'm |
| 10:13 | 8 | well aware of what's happened with a certain federal court |
| 10:13 | 9 | judge in Sacramento, how a certain group has managed to put |
| 10:13 | 10 | people in line and trade spaces to get certain types of |
| 10:13 | 11 | cases in forums. That's the reality of life. Okay. |
| 10:13 | 12 | As far as I know, that did not happen here as far |
| 10:13 | 13 | as I know. This was just the luck the draw, good or bad. |
| 10:13 | 14 | THE COURT: Depends on which way I rule for which |
| 10:13 | 15 | party. |
| 10:13 | 16 | Mr. Kreep, have a seat for a moment. Thank you |
| 10:13 | 17 | very much. |
| 10:13 | 18 | Counsel, what we're going to do is there. We're |
| 10:13 | 19 | going to take a very, very brief recess, probably 15 minutes |
| 10:13 | 20 | to 20 minutes so you can use the restroom. And I want to be |
| 10:13 | 21 | respectful of the audience because the facilities are |
| 10:13 | 22 | limited. Maybe we'll make that 20 minutes to half an hour |
| 10:13 | 23 | so you can go out and come back in if you choose to. Then, |
| 10:13 | 24 | it's very brief. |
| 10:13 | 25 | Answer my question concerning jurisdiction. |

SACV 09-0082 DOC – 10/5/2009 – Item No. 3

73

| | | |
|---|---|---|
| 10:13 | 1 | That's the main thing that I am concerned with right now. |
| 10:13 | 2 | You can respond, if you will, to the standing issue.  That's |
| 10:13 | 3 | where you really asked me to start.  You can respond, if you |
| 10:14 | 4 | like, finally to this initial question I had about walking |
| 10:14 | 5 | me through the process. |
| 10:14 | 6 | I can tell you I don't know if there's a |
| 10:14 | 7 | satisfactory answer, so you don't have to waste time with |
| 10:14 | 8 | it.  I hear impeachment.  I hear the 25th Amendment, but |
| 10:14 | 9 | it's unique.  We really don't know, quite frankly.  We're |
| 10:14 | 10 | not there.  So I'm not expecting, I just have been weighing |
| 10:14 | 11 | in my own mind what is the political, what's not. |
| 10:14 | 12 | The complaint came to me in this large a form with |
| 10:14 | 13 | so many parties, and I was a little worried about Congress' |
| 10:14 | 14 | ability to isolate cases in the D.C. circuit and whether |
| 10:14 | 15 | that, in fact, was a separation of powers problem, although |
| 10:14 | 16 | they did it, of course, under the act. |
| 10:14 | 17 | I was a little concerned, also, initially if this |
| 10:14 | 18 | was forum shopping.  I'm convinced now it was not after |
| 10:14 | 19 | Mrs. Taitz' answer, and I appreciate that. |
| 10:14 | 20 | Ms. Taitz, I would respectfully ask you to address |
| 10:14 | 21 | succinctly the question concerning standing.  That's your |
| 10:14 | 22 | shakiest ground right there.  We may not be going any |
| 10:14 | 23 | further unless you can address that in terms of the actual |
| 10:15 | 24 | harm, not the hypothetical harm. |
| 10:15 | 25 | And I like cases decided on the merits, but we |

| | | |
|---|---|---|
| 10:15 | 1 | have to get that legally.  That's why I've given you every |
| 10:15 | 2 | opportunity to file correctly.  I've invited the government |
| 10:15 | 3 | to get this case moving.  They've been courteous, and we've |
| 10:15 | 4 | got the case at least into court rather than floating it to |
| 10:15 | 5 | the Ninth Circuit and back on this issue concerning service. |
| 10:15 | 6 | So I'm very pleased at least. |
| 10:15 | 7 | Finally, I believe this:  I think that we as |
| 10:15 | 8 | Americans appreciate one thing.  We appreciate being heard. |
| 10:15 | 9 | We can criticize the decider in his or her decision-making |
| 10:15 | 10 | process, but the one thing we abhor is not having an open |
| 10:15 | 11 | forum, a place to speak to these issues.  I hope that I've |
| 10:15 | 12 | been relatively courteous.  I know I've only given you 45 |
| 10:15 | 13 | minutes to an hour each, but I read your briefing a number |
| 10:15 | 14 | of times and I'm satisfied. |
| 10:15 | 15 | The questions I'm asking you are questions I'm |
| 10:15 | 16 | truly concerned about, and my mind isn't made up, or I'd |
| 10:15 | 17 | have a tentative out for you right now, and one of you would |
| 10:15 | 18 | have prevailed and gone on your way. |
| 10:16 | 19 | So when you come back, about ten minutes on each |
| 10:16 | 20 | side.  I don't need to hear a complete retracing.  You can |
| 10:16 | 21 | cite a case if you would like to.  But why don't we |
| 10:16 | 22 | reconvene, let's say, about 25 minutes to the hour.  Okay. |
| 10:16 | 23 | We'll try at that time, or 20 minutes to the hour. |
| 10:16 | 24 | Thank you, Counsel. |
| 10:16 | 25 | *(Recess held at 10:16 a.m.)* |

10:38    1              THE COURT:  All right.  We're back on record.  And

10:38    2    once again just reintroduce yourself to the record just so I

10:38    3    have a complete record.

10:38    4              MR. WEST:  Thank you, Your Honor.  Assistant

10:38    5    United States Attorney Roger West for the government.

10:38    6              THE COURT:  Thank you.

10:38    7              MR. WEST:  Your Honor asked the government to

10:38    8    address the question of jurisdiction in the -- in two

10:38    9    respects.  The first, I think, Your Honor, correct me if I'm

10:38   10    wrong, but you're most interested in the political question

10:38   11    issue, and as you phrased it before, walk you through the

10:38   12    procedures.

10:39   13              Let me say a couple of things about that if I

10:39   14    could.  The first is, with respect to removal of the

10:39   15    President, it is absolutely clear from the text of the

10:39   16    Constitution in various sections that the power to remove a

10:39   17    President, whether through impeachment or through the other

10:39   18    procedures which are now enumerated in the 25th Amendment to

10:39   19    the Constitution, are committed to the Congress.

10:39   20              There is a textual -- demonstrable, textual

10:39   21    commitment by the Constitution of these questions to the

10:39   22    legislative branch.  And while that's important, as

10:39   23    Your Honor pointed out, that there has been an erosion over

10:39   24    the years, at least some legal scholars believe so, in the

10:39   25    whole question of the political question doctrine.  Talked

| | | |
|---|---|---|
| 10:39 | 1 | about *Powell v. McCormack*, talked about certain other cases. |
| 10:39 | 2 | But if you go back to *Baker v. Carr*, Your Honor, |
| 10:39 | 3 | it is clear, and it's never been overruled that a political |
| 10:40 | 4 | question that -- the political question doctrine involves at |
| 10:40 | 5 | least a situation where the Constitution, the text of the |
| 10:40 | 6 | Constitution, the document created by our founding fathers |
| 10:40 | 7 | and since amended, where the text of the Constitution |
| 10:40 | 8 | commits a question to a branch.  That's where it belongs. |
| 10:40 | 9 | And, here, the text of the Constitution, it's |
| 10:40 | 10 | absolutely -- it could not be clearer, vests in the |
| 10:40 | 11 | Congress, both the power to impeach, and in fact, if you |
| 10:40 | 12 | read the *Nixon* case*, Nixon v. United States*.  It's at 938 |
| 10:40 | 13 | Fed 2d 239 and also affirmed by the Supreme Court. |
| 10:40 | 14 | THE COURT:  I represent to you I have. |
| 10:40 | 15 | MR. WEST:  Yes, sir. |
| 10:40 | 16 | You will see from that case that even the question |
| 10:40 | 17 | of the procedures that the Senate chose to use to impeach |
| 10:40 | 18 | Judge Walter Nixon were off limits to the courts.  It was a |
| 10:40 | 19 | political question, and it -- and the Ninth Circuit -- the |
| 10:41 | 20 | D.C. Circuit cites with approval and the Supreme Court |
| 10:41 | 21 | affirmed it, the political question, the textual -- |
| 10:41 | 22 | demonstratively committed, textual commitment of the |
| 10:41 | 23 | question to the legislative branch, that that part of the |
| 10:41 | 24 | political question doctrine is alive and well. |
| 10:41 | 25 | THE COURT:  What I hear from your argument is |

| 10:41 | 1 | therefore the federal court or courts, including the circuit |
|---|---|---|
| 10:41 | 2 | courts and the Supreme Court, would never have -- |
| 10:41 | 3 | jurisdiction is a wrong word, but to enter into this arena |
| 10:41 | 4 | and area; that this is the exclusive domain of Congress. |
| 10:41 | 5 | MR. WEST: Yes, Your Honor, it is. |
| 10:41 | 6 | THE COURT: And that would even occur when the |
| 10:41 | 7 | hypothetical I gave you that was so weighted where I had the |
| 10:41 | 8 | President of the United States from the same majority that |
| 10:42 | 9 | would be empowering the Senate and Congress, you know, the |
| 10:42 | 10 | likelihood of impeachment would be small probably, in a |
| 10:42 | 11 | political sense. In the real world. |
| 10:42 | 12 | But even in that situation, the courts would never |
| 10:42 | 13 | have a role to play from your perspective? |
| 10:42 | 14 | MR. WEST: Yes. The only -- the only part of a |
| 10:42 | 15 | court that would have a role to play would be the Chief |
| 10:42 | 16 | Justice of the United States, who would have the power under |
| 10:42 | 17 | article -- under the Article I, Section 2, Clause 5 and |
| 10:42 | 18 | Article I, Section 3, Clause 6, the two clauses -- the two |
| 10:42 | 19 | articles that deal with impeachment, if the President is -- |
| 10:42 | 20 | if articles of impeachment are drafted in the House of |
| 10:42 | 21 | Representatives against the President the United States, and |
| 10:42 | 22 | subsequently there is a trial in the Senate, that trial is |
| 10:42 | 23 | presided over by the Chief Justice of the United States. |
| 10:42 | 24 | THE COURT: It's never a question for the court? |
| 10:42 | 25 | MR. WEST: No. No, Your Honor. I know courts |

| 10:43 | 1 | don't like to hear that they don't have power, but with all |
| 10:43 | 2 | due respect, Your Honor, this is a situation where no court |
| 10:43 | 3 | has the power to do this. |
| 10:43 | 4 | And I set forth at the outset, Your Honor, some |
| 10:43 | 5 | big picture reasons why I believe it would be a disaster of |
| 10:43 | 6 | stunning proportions.  It would render our constitutional |
| 10:43 | 7 | system of government which was carefully crafted by the |
| 10:43 | 8 | founding fathers, it would render it crippled if we had a |
| 10:43 | 9 | situation where a single United States District Court judge |
| 10:43 | 10 | would have the power to remove a President of the |
| 10:43 | 11 | United States, which brings up another aspect of the |
| 10:43 | 12 | political question doctrine; namely, separation of powers. |
| 10:43 | 13 | THE COURT:  Let me finish your argument for you. |
| 10:43 | 14 | And then that individual potential judge, whoever he or she |
| 10:43 | 15 | was in the country, that case, then, going to the circuit or |
| 10:43 | 16 | to the Supreme Court, and you've cast out at the very |
| 10:43 | 17 | beginning the harm to the country in terms of the cloud or |
| 10:44 | 18 | taint hanging over the executive branch. |
| 10:44 | 19 | MR. WEST:  Yes, Your Honor. |
| 10:44 | 20 | THE COURT:  Okay.  I understand your argument. |
| 10:44 | 21 | MR. WEST:  Now, with respect to the question that |
| 10:44 | 22 | you had before of helping you to walk through the procedure |
| 10:44 | 23 | that might occur -- now, with respect to impeachment, the |
| 10:44 | 24 | legislative branch has the power to decide how they're going |
| 10:44 | 25 | to do that.  In the case -- if you go back to the *Nixon* |

| | | |
|---|---|---|
| 10:44 | 1 | case.  That was a case where a federal judge was being |
| 10:44 | 2 | impeached.  *Nixon* was all about the question of what |
| 10:44 | 3 | procedures the Senate decided to use in that case and |
| 10:44 | 4 | whether those procedures constituted a trial within the |
| 10:44 | 5 | meaning of the Constitution. |
| 10:44 | 6 | And the Senate in that case had a procedure, I |
| 10:44 | 7 | believe, where they used a committee to decide the question, |
| 10:44 | 8 | and that was the issue in the case. |
| 10:44 | 9 | So there is room within the legislative branch for |
| 10:44 | 10 | some, you know, crafting of some procedures on occasion. |
| 10:44 | 11 | THE COURT:  Does this preclude, then, an |
| 10:44 | 12 | individual senator raising this issue or question?  In other |
| 10:45 | 13 | words, you say it's the legislative branch.  The courts have |
| 10:45 | 14 | no power.  They should not enter into this area because of |
| 10:45 | 15 | separation of powers.  Does that mean an individual senator |
| 10:45 | 16 | can raise this? |
| 10:45 | 17 | MR. WEST:  I believe an individual senator can |
| 10:45 | 18 | raise anything he wishes at any time.  I think it's a |
| 10:45 | 19 | question then of what happens next, and I believe that is |
| 10:45 | 20 | within the province of Congress to decide. |
| 10:45 | 21 | THE COURT:  That's the proper forum, you believe? |
| 10:45 | 22 | MR. WEST:  Yes. |
| 10:45 | 23 | THE COURT:  It's raised by Congress or the Senate? |
| 10:45 | 24 | MR. WEST:  Right. |
| 10:45 | 25 | THE COURT:  Okay. |

| | | |
|---|---|---|
| 10:45 | 1 | MR. WEST:  With respect to walking you through the |
| 10:45 | 2 | major portion of the Constitution. |
| 10:45 | 3 | THE COURT:  Just a moment. |
| 10:45 | 4 | Ms. Taitz, has any senator raised this issue?  Any |
| 10:45 | 5 | congress person, and if so, why not? |
| 10:45 | 6 | MS. TAITZ:  Maybe I'll let the government -- |
| 10:45 | 7 | THE COURT:  I'll come back to that. |
| 10:45 | 8 | Okay.  Answer that question. |
| 10:45 | 9 | MR. WEST:  Your Honor, just briefly, with respect |
| 10:45 | 10 | to the procedures that would be utilized to remove a |
| 10:45 | 11 | President under the 25th Amendment to the Constitution, |
| 10:45 | 12 | Section 4 of that amendment talks about some of the |
| 10:45 | 13 | procedures.  It says whenever the Vice President and the |
| 10:45 | 14 | majority of either the principle officers of the executive |
| 10:46 | 15 | departments or such other body as Congress may by law |
| 10:46 | 16 | provide transmit to the President *pro tempore* of the Senate |
| 10:46 | 17 | and the Speaker of the House of Representatives their |
| 10:46 | 18 | written declaration that the President is unable to |
| 10:46 | 19 | discharge the powers and duties of his office, the Vice |
| 10:46 | 20 | President shall immediately assume the powers and duties of |
| 10:46 | 21 | office as acting President. |
| 10:46 | 22 | THE COURT:  Slower.  Just a little slower. |
| 10:46 | 23 | MR. WEST:  I'm sorry. |
| 10:46 | 24 | Thereafter, when the President transmits to the |
| 10:46 | 25 | President *pro tempore* of Senate and the Speaker of the House |

| 10:46 | 1 | of Representatives his written declaration that no inability |
|---|---|---|
| 10:46 | 2 | exists, he shall resume the powers and duties of his office |
| 10:46 | 3 | unless the Vice President and a majority of either the |
| 10:46 | 4 | principle officers of the executive department or of such |
| 10:46 | 5 | other body as Congress may by law provide transmit within |
| 10:46 | 6 | four days to the President *pro tempore* of the Senate and the |
| 10:46 | 7 | Speaker of the House of Representatives their written |
| 10:47 | 8 | declaration that the President is unable to discharge the |
| 10:47 | 9 | powers and duties of his office.  Thereupon, Congress shall |
| 10:47 | 10 | decide the issue, assembling within 48 hours for that |
| 10:47 | 11 | purpose if not in session.  If the Congress within 21 days |
| 10:47 | 12 | after receipt of the latter written declaration, or if |
| 10:47 | 13 | Congress is not in session, within 21 days after the |
| 10:47 | 14 | Congress is required to assemble, determines by two-thirds |
| 10:47 | 15 | vote of both houses that the President is unable to |
| 10:47 | 16 | discharge the powers and duties of his office, the Vice |
| 10:47 | 17 | President shall continue to discharge the same as acting |
| 10:47 | 18 | President; otherwise, the President shall resume the powers |
| 10:47 | 19 | and duties of the office. |
| 10:47 | 20 | Seems to me, Your Honor, that that is a clear |
| 10:47 | 21 | textual commitment to the Congress of the power to remove a |
| 10:47 | 22 | President.  And I would respectfully submit that it's a |
| 10:47 | 23 | political, nonjusticiable question. |
| 10:47 | 24 | Thank you, Your Honor. |
| 10:48 | 25 | THE COURT:  Counsel, thank you very much. |

| 10:48 | 1 | I think you've answered many of my questions. |
| 10:48 | 2 | Counsel, do you have any further comments? |
| 10:48 | 3 | MR. DeJUTE:  I would simply add to tie that up, |
| 10:48 | 4 | Your Honor, not that it needs much tying up from Mr. West, |
| 10:48 | 5 | but that Your Honor left the break by suggesting that maybe |
| 10:48 | 6 | there's not an adequate, you know, solution to what the |
| 10:48 | 7 | proper process would be.  I think Mr. West has -- |
| 10:48 | 8 | THE COURT:  Excuse me.  Or that there may be, but |
| 10:48 | 9 | it's for Congress to implement.  And therefore that the |
| 10:48 | 10 | Constitution, if your argument is correct, allows Congress |
| 10:48 | 11 | to implement what is very unclear at the present time, and |
| 10:48 | 12 | therefore, my initial question really has no answer. |
| 10:48 | 13 | There's no methodology that you can point out to me, subject |
| 10:48 | 14 | or short of the impeachment process at the present time. |
| 10:48 | 15 | MR. DeJUTE:  Your Honor has it perfectly, and the |
| 10:48 | 16 | only thing I would add is that in the absence of being able |
| 10:48 | 17 | to point out what the correct or proper process would be |
| 10:48 | 18 | does not mean that we cannot be clear that this is not the |
| 10:49 | 19 | proper process. |
| 10:49 | 20 | THE COURT:  Right. |
| 10:49 | 21 | MR. DeJUTE:  These plaintiffs, this forum, with |
| 10:49 | 22 | all due respect, is not the proper people or forum to talk |
| 10:49 | 23 | about removing the duly elected and sworn-in President from |
| 10:49 | 24 | office. |
| 10:49 | 25 | THE COURT:  Okay.  Now, I'm going to kid you a |

| | | |
|---|---|---|
| 10:49 | 1 | little bit.  How did they do?  Did they do okay?  The able |
| 10:49 | 2 | colleague who takes no position. |
| 10:49 | 3 | MR. SOSKIN:  The able gentlemen here did a |
| 10:49 | 4 | commendable job. |
| 10:49 | 5 | THE COURT:  They did fine.  Thank you very much. |
| 10:49 | 6 | Now, Ms. Taitz, the lectern's yours, please. |
| 10:49 | 7 | MS. TAITZ:  Well, Your Honor, you brought an |
| 10:49 | 8 | example of Arnold Schwarzenegger, and I'm going to bring |
| 10:49 | 9 | another example just to show how absolutely ridiculous this |
| 10:49 | 10 | whole argument was. |
| 10:49 | 11 | And right -- actually, before the election, when |
| 10:49 | 12 | I'd written to Secretary of State Bowen and she said that |
| 10:49 | 13 | they did not check credentials of the candidate.  I have |
| 10:49 | 14 | written an article, and this article was published in the |
| 10:50 | 15 | local newspaper.  And it stated -- and it might be a more |
| 10:50 | 16 | extreme article, but it stated Osama bin Laden can be on |
| 10:50 | 17 | your ballot in the next election because, arguendo, |
| 10:50 | 18 | hypothetically speaking, if we allow this ridiculous |
| 10:50 | 19 | argument that one can become a President and |
| 10:50 | 20 | Commander-in-Chief by virtue of massive fraud and not one |
| 10:50 | 21 | citizen in the country, not one judge in the country can |
| 10:50 | 22 | challenge it aside from biased Congress and Senate that has |
| 10:50 | 23 | the majority of the same party, we have a dictatorship.  We |
| 10:50 | 24 | have a tyranny.  We don't have a Constitution.  We don't |
| 10:50 | 25 | have a rule of law. |

| | | |
|---|---|---|
| 10:50 | 1 | Because I argue somebody like Osama bin Laden can |
| 10:50 | 2 | show up in this country and just like Barack Obama write, I |
| 10:50 | 3 | am eligible, and he can bring $700 million from Saudi Arabia |
| 10:51 | 4 | buy an election and then say too late, too late, *deja vu*, |
| 10:51 | 5 | *fait accompli*, we're done. |
| 10:51 | 6 | THE COURT:  Let me go back to my question, then. |
| 10:51 | 7 | If the government's right and impeachment is available, |
| 10:51 | 8 | minimally impeachment, or Congress implementing some method |
| 10:51 | 9 | to resolve this issue, why hasn't that been raised by |
| 10:51 | 10 | congressional representatives or senators? |
| 10:51 | 11 | MS. TAITZ:  Your Honor, I'm not here representing |
| 10:51 | 12 | the Congress. |
| 10:51 | 13 | THE COURT:  But better yet -- I'm sorry, that's |
| 10:51 | 14 | unfair on my part.  Has it been raised? |
| 10:51 | 15 | MS. TAITZ:  But, Your Honor, if you have given the |
| 10:51 | 16 | government time to -- |
| 10:51 | 17 | THE COURT:  Answer that question for me.  You'll |
| 10:51 | 18 | have plenty of time.  Has it been raised? |
| 10:51 | 19 | MS. TAITZ:  As I have read to you the letters that |
| 10:51 | 20 | were sent by the senators and congressmen to their |
| 10:52 | 21 | constituency, and I might repeat it, they have stated, yet |
| 10:52 | 22 | again, "that Senate ethics rules preclude me from becoming |
| 10:52 | 23 | personally involved in pending litigation.  I will sincerely |
| 10:52 | 24 | hope this matter can be fully and promptly resolved by the |
| 10:52 | 25 | courts." |

| | | |
|---|---|---|
| 10:52 | 1 | THE COURT:  I'm sorry.  That does not answer my |
| 10:52 | 2 | question. |
| 10:52 | 3 | MS. TAITZ:  Well, that answers it.  Congress and |
| 10:52 | 4 | Senate responded to the citizen by saying if I as a senator |
| 10:52 | 5 | get involved, then it would be prejudicial.  Ethics |
| 10:52 | 6 | committee prevents me from getting involved in cases like |
| 10:52 | 7 | this one because it would be undue influence on you as a |
| 10:52 | 8 | district judge, and that's why the senators and congressmen |
| 10:52 | 9 | sustained so that you can decide this case on the merits. |
| 10:52 | 10 | And what the Department of Justice did, they |
| 10:52 | 11 | completely misrepresented the issue.  They kept saying duly |
| 10:53 | 12 | elected.  No.  Sorry. |
| 10:53 | 13 | If one got in the White House by virtue of massive |
| 10:53 | 14 | fraud when I have presented to you statements from two |
| 10:53 | 15 | licensed investigators from different sides -- different |
| 10:53 | 16 | parts of the country showing that Mr. Obama has 39 different |
| 10:53 | 17 | social security numbers in national databases and the social |
| 10:53 | 18 | security number that he used most often is the social |
| 10:53 | 19 | security number of an individual who is deceased today, who |
| 10:53 | 20 | was born in 1890 in the state of Connecticut, Your Honor, I |
| 10:53 | 21 | submit to you this is massive fraud. |
| 10:53 | 22 | And we know how corrupt the government and the |
| 10:53 | 23 | Congress is.  They have the same ruling party in government |
| 10:53 | 24 | and in Congress.  They, no matter what, will not -- will not |
| 10:53 | 25 | decide this issue.  Even if I were to present to them a |

| 10:54 | 1 | videotape of Mr. Obama being born in Kenya, and there is a |
| 10:54 | 2 | group of Kenyan doctors speaking Swahili all around him, |
| 10:54 | 3 | they will still find that this is insufficient evidence.  No |
| 10:54 | 4 | matter what I presented to them they are simply not willing |
| 10:54 | 5 | to take the challenge. |
| 10:54 | 6 | So when we have a ruling party in Congress and |
| 10:54 | 7 | Senate and in government who is taking away our |
| 10:54 | 8 | constitutional rights, in that case, the judiciary has the |
| 10:54 | 9 | right to intervene.  And we have numerous cases that provide |
| 10:54 | 10 | such power of intervention.  We have *Morrison v. Olson* from |
| 10:54 | 11 | 1988.  We have *Bowsher v. Synar* of also 1988.  We have |
| 10:54 | 12 | *Flast v. Cohen* from 1968. |
| 10:55 | 13 | And, most importantly, just last year we had |
| 10:55 | 14 | *District of Columbia v. Heller*.  This is the case that |
| 10:55 | 15 | overrides all the prior cases. |
| 10:55 | 16 | This is the case that says that ordinary citizens |
| 10:55 | 17 | of this country have the right to enforce the Constitution |
| 10:55 | 18 | of the United States of America and the provisions of this |
| 10:55 | 19 | Constitution. |
| 10:55 | 20 | We have according to D.C. v. Heller, the Ninth |
| 10:55 | 21 | Amendment and the Fifth and the 14th Amendment give any |
| 10:55 | 22 | citizen, any person sitting in this room, not even members |
| 10:55 | 23 | of the military, but any citizen of this country |
| 10:55 | 24 | constitutional rights to uphold the -- to uphold the |
| 10:56 | 25 | Constitution, not only enumerated powers, but also |

| | | |
|---|---|---|
| 10:56 | 1 | unenumerated powers. |
| 10:56 | 2 | We had *Griswold v. Connecticut*.  This is a case |
| 10:56 | 3 | that dealt with contraceptives.  This was an unenumerated |
| 10:56 | 4 | power that was not mentioned in the Constitution, and the |
| 10:56 | 5 | right of citizens was upheld there. |
| 10:56 | 6 | I submit to you, Your Honor, that in this case in |
| 10:56 | 7 | Barnett v. Obama, et al., when we are raising the issue of |
| 10:56 | 8 | Article II, Section 1, this is power that specifically -- we |
| 10:56 | 9 | have to -- specifically enumerated, specifically mentioned |
| 10:56 | 10 | in the Constitution, we have a clear definition in the |
| 10:56 | 11 | Constitution, and as such, not only members of the military, |
| 10:56 | 12 | but any citizen have the rights to uphold those powers. |
| 10:57 | 13 | Now, in terms of standing, I would like to add one |
| 10:57 | 14 | more point.  As it was mentioned in *Rodearmel*, and it was |
| 10:57 | 15 | mentioned in *Clark v. United States of America* and *Allen v.* |
| 10:57 | 16 | *Board*, when one, as part of his employment, a person has to |
| 10:57 | 17 | take an oath and later on is forced to violate his oath of |
| 10:57 | 18 | office, that was found to be a *de facto* taking of his |
| 10:57 | 19 | employment.  And therefore, Your Honor, you are here, I'm |
| 10:57 | 20 | sure, day in and day out as a district judge taking -- |
| 10:58 | 21 | hearing cases where employment was taken by the government |
| 10:58 | 22 | from the citizens in different capacities. |
| 10:58 | 23 | So we do have standing.  At the very minimum of |
| 10:58 | 24 | each and every person who took an oath, even people -- even |
| 10:58 | 25 | members of the military that are now in the reserves, they |

| | | |
|---|---|---|
| 10:58 | 1 | still have a form of employment.  Their reservist status is |
| 10:58 | 2 | a form of employment.  As a matter of fact, Major Cook |
| 10:58 | 3 | stated something like 12 or $13,000 a year that they receive |
| 10:58 | 4 | as reservists, as active reservists.  That's sufficient for |
| 10:58 | 5 | standing. |
| 10:58 | 6 | Moreover, all of the citizens have standing as |
| 10:58 | 7 | taxpayers.  Each and every one of my plaintiffs, each and |
| 10:58 | 8 | every one of my clients is a taxpayer, and as such, based on |
| 10:59 | 9 | *Flast v. Cohen*, they do have standing as taxpayers. |
| 10:59 | 10 | We have a salary that we have paid Mr. Obama.  If |
| 10:59 | 11 | it is found that he got into this position based on fraud |
| 10:59 | 12 | with social security number of another person, refusing to |
| 10:59 | 13 | unseal his vital records with a certification of live birth |
| 10:59 | 14 | that according to the -- according to forensic document |
| 10:59 | 15 | experts is a forged document, that affects us as taxpayers. |
| 10:59 | 16 | Because we've paid his salary, and it was obtained by fraud. |
| 10:59 | 17 | But moreover, we're not talking here, Your Honor, |
| 10:59 | 18 | only about 200,000, 250,000, I'm not sure what salary of the |
| 11:00 | 19 | President is.  We are talking about billions and trillions |
| 11:00 | 20 | of dollars that are leaving U.S. Treasury, going into |
| 11:00 | 21 | directions unknown. |
| 11:00 | 22 | Just one example, when, based on the stimulus |
| 11:00 | 23 | package signed by Mr. Obama, AIG got $130 billion from |
| 11:00 | 24 | U.S. Treasury to stimulate U.S. economy, and 59 percent of |
| 11:00 | 25 | this money, which is closed to 80 billion -- with a "B" -- |

| 11:00 | 1 | $80 billion went to foreign banks, we have a right to ask, |
| 11:00 | 2 | excuse me, who is this man?  Is he legitimate?  Is he giving |
| 11:00 | 3 | away billions of U.S. dollars to foreign banks legitimately? |
| 11:00 | 4 | We have the right to ask this question. |
| 11:01 | 5 | Now, in terms of the ripeness of the case.  I |
| 11:01 | 6 | submit to you, Your Honor, that when I brought my first |
| 11:01 | 7 | case, *Lightfoot v. Bowen*, on behalf of Gail Lightfoot, on |
| 11:01 | 8 | behalf of Mr. Turner and other plaintiffs, the only answer I |
| 11:01 | 9 | got from the Supreme Court of California was one word: |
| 11:01 | 10 | Denied. |
| 11:01 | 11 | I don't know why was it denied.  They did not give |
| 11:01 | 12 | me any explanation.  However, a number of constitutional |
| 11:01 | 13 | scholars have argued that the reason the case was denied, |
| 11:01 | 14 | because prior to election, it was not ripe yet.  Because the |
| 11:01 | 15 | citizens of this country could not show any harm before the |
| 11:01 | 16 | election.  Your Honor, I submit you to, God knows we've |
| 11:01 | 17 | experienced plenty of harm now.  Now -- |
| 11:02 | 18 | *(Clapping in courtroom.)* |
| 11:02 | 19 | MS. TAITZ:  It is ripe, Your Honor.  It is ripe to |
| 11:02 | 20 | review this issue. |
| 11:02 | 21 | And again, what is the most important point, the |
| 11:02 | 22 | government time and again intentionally misrepresented this |
| 11:02 | 23 | issue, this is not an issue of politics.  This is an issue |
| 11:02 | 24 | of *quo warranto*, clearly *quo warranto*. |
| 11:02 | 25 | If the framers of the Constitution didn't want us, |

| 11:02 | 1 | the citizens of this country, to come to court like this one |
|---|---|---|
| 11:02 | 2 | and challenge the issue of legitimacy of any federal |
| 11:02 | 3 | employee, any federal officer, including the President, they |
| 11:02 | 4 | would not have included *quo warranto* in statutes.  The |
| 11:02 | 5 | reason we have *quo warranto* statutes, and it's in D.C. that |
| 11:03 | 6 | can be applied, as I stated, in the State of California and |
| 11:03 | 7 | in the Supreme Court of the United States of America -- |
| 11:03 | 8 | THE COURT:  How are you precluded from doing that, |
| 11:03 | 9 | regardless of this Court's ruling?  In other words, |
| 11:03 | 10 | whichever way this Court rules, why can't you bring *quo* |
| 11:03 | 11 | *warranto* in the District of Colombia? |
| 11:03 | 12 | MS. TAITZ:  Your Honor, I have -- well, I have |
| 11:03 | 13 | submitted originally on behalf of my clients a *quo warranto*. |
| 11:03 | 14 | It was submitted on behalf of attorney general -- attorney |
| 11:03 | 15 | general on behalf of Major General Childers, on behalf of |
| 11:03 | 16 | State Representative Niceley, on behalf of Timothy |
| 11:03 | 17 | Comerford, state representative of New Hampshire, Lieutenant |
| 11:03 | 18 | Colonel Easterling -- I'm sorry, Lieutenant Easterling, |
| 11:04 | 19 | Lieutenant Colonel Earl Graef, on behalf of Officer Grimes, |
| 11:04 | 20 | and on behalf of a major in U.S. Marine Corps, Mr. Cannon. |
| 11:04 | 21 | I have submitted that March 1st to Attorney |
| 11:04 | 22 | General Eric Holder.  And Eric Holder had plenty of time to |
| 11:04 | 23 | do God knows what, but in seven months he could not find |
| 11:04 | 24 | time to even respond.  And, Your Honor, I have submitted |
| 11:04 | 25 | certified mail receipts.  Attorney General has received the |

| | | |
|---|---|---|
| 11:04 | 1 | paperwork on March 17th, March 27, and then a number of my |
| 11:04 | 2 | supporters have submitted and resubmitted.  Nothing was ever |
| 11:04 | 3 | done. |
| 11:04 | 4 | I have also submitted in the District of Colombia |
| 11:05 | 5 | to the U.S. Attorney for the District of Columbia, |
| 11:05 | 6 | Jeffrey A. Taylor.  And in prior submissions, I have shown |
| 11:05 | 7 | certified mail receipts. |
| 11:05 | 8 | THE COURT:  Why do you believe this Court has *quo* |
| 11:05 | 9 | *warranto* jurisdiction? |
| 11:05 | 10 | MS. TAITZ:  As I have stated, Your Honor, this |
| 11:05 | 11 | Court -- and I have read from the statutes, California |
| 11:05 | 12 | Choice of Rules would require based on governmental interest |
| 11:05 | 13 | test that is adopted by the State of California to apply the |
| 11:05 | 14 | defendant's home law.  And when the government stated that |
| 11:05 | 15 | this is not a proper choice of law and jurisdiction in their |
| 11:05 | 16 | reply to my response, they opened themselves to this |
| 11:05 | 17 | decision.  Fine.  You don't like the law in the State of |
| 11:05 | 18 | California.  Here you go, we can apply, according to the |
| 11:06 | 19 | California choice of law, the law of the District of |
| 11:06 | 20 | Columbia and -- because each and every defendant is a |
| 11:06 | 21 | resident of the District of Columbia. |
| 11:06 | 22 | And District of Columbia has very clear *quo* |
| 11:06 | 23 | *warranto* statutes, and therefore, Your Honor, that gives you |
| 11:06 | 24 | an opportunity to decide based on *quo warranto* whether |
| 11:06 | 25 | Mr. Obama got into his position duly or by fraud. |

| | | |
|---|---|---|
| 11:06 | 1 | And if he did get into this position by fraud, |
| 11:06 | 2 | based on the same *quo warranto*, you have the power to remove |
| 11:06 | 3 | one from office that he is usurping, that he is not eligible |
| 11:06 | 4 | to hold.  And that's what I have argued in my pleadings. |
| 11:07 | 5 | And I would like to bring one more point. |
| 11:07 | 6 | Mr. West has stated that it would be a disaster to allow the |
| 11:07 | 7 | citizens of this country to assert their constitutional |
| 11:07 | 8 | rights in different courts.  And as a matter of fact, couple |
| 11:07 | 9 | days ago, in his pleading, Mr. Kreep said that it's |
| 11:07 | 10 | irrelevant -- that the constitutional rights are irrelevant. |
| 11:07 | 11 | Your Honor, I submit to you that they have no clue |
| 11:07 | 12 | what they're talking about, what disaster is, because they |
| 11:07 | 13 | never experienced it.  I was born in a communist country.  I |
| 11:07 | 14 | came from a country where citizens did not have a right to |
| 11:07 | 15 | uphold their constitutional rights.  Have you ever heard of |
| 11:07 | 16 | any attorney being able to challenge Stalin?  Or -- or Mao |
| 11:08 | 17 | Tse Tung?  Or in today's world, somebody like Fidel Castro |
| 11:08 | 18 | or Hugo Chavez or Mahmoud Ahmadinejad?  In those countries, |
| 11:08 | 19 | the laws exist on paper only but not *de facto.*  The |
| 11:08 | 20 | constitutional rights like we have in this country, the |
| 11:08 | 21 | Ninth Amendment, are only on paper.  It was never enforced. |
| 11:08 | 22 | Your Honor, I would like to give you one little |
| 11:08 | 23 | example, and that example from my own family. |
| 11:08 | 24 | My great uncle was sent to Siberia, to a civilian |
| 11:08 | 25 | labor camp in Siberia.  His attorneys could not effectively |

| | | |
|---|---|---|
| 11:08 | 1 | challenge the orders.  The courts, the judges were just |
| 11:08 | 2 | puppets of the regime.  I remember my great aunt.  She was a |
| 11:08 | 3 | beautiful blonde lady, that when it happened, when her |
| 11:09 | 4 | husband was sent to Siberia, decided that she doesn't want |
| 11:09 | 5 | to live anymore.  She decided that she wanted to end her |
| 11:09 | 6 | life.  She had two young children.  She sat in the bus stop. |
| 11:09 | 7 | She cut her veins.  Luckily, she was saved by a good |
| 11:09 | 8 | samaritan, a neighbor. |
| 11:09 | 9 | And I remember that my relatives, both of my |
| 11:09 | 10 | grandparents were doing charity, and that was a very special |
| 11:09 | 11 | charity.  Well, if you can imagine a big Russian hat.  They |
| 11:09 | 12 | were going from home to home with this Russian hat.  People |
| 11:09 | 13 | were throwing money.  And that's how this lady and her two |
| 11:09 | 14 | children survived.  When her husband came from Siberia, he |
| 11:09 | 15 | didn't live long, for long, his health was broken and he |
| 11:09 | 16 | died soon thereafter. |
| 11:09 | 17 | Your Honor, that's what happens when citizens of |
| 11:10 | 18 | the country don't have the right to enforce their |
| 11:10 | 19 | constitutional rights that are given to them by God, that |
| 11:10 | 20 | are given to them by the Constitution. |
| 11:10 | 21 | *(Applause from audience.)* |
| 11:10 | 22 | MS. TAITZ:  And I know, Your Honor, that is a real |
| 11:10 | 23 | disaster.  And I was just horrified from the moment |
| 11:10 | 24 | Mr. Obama started running, and the moment he opened his |
| 11:10 | 25 | mouth and I could hear what he was saying, I knew where we |

| | | |
|---|---|---|
| 11:10 | 1 | are going, because I lived it, I felt it on my own skin, and |
| 11:10 | 2 | it was just one nightmare.  And I worked on this issue |
| 11:10 | 3 | 24/7/365.  I was not a constitutional lawyer before.  But |
| 11:10 | 4 | this is such an important issue that I felt I have to work |
| 11:10 | 5 | not 24, but 25/7/365. |
| 11:10 | 6 | And I know that you've been -- you served as a |
| 11:11 | 7 | Marine and you took an oath to uphold the Constitution.  I |
| 11:11 | 8 | know that you took an oath to uphold the Constitution as a |
| 11:11 | 9 | state judge and later as a federal judge, and I hope that |
| 11:11 | 10 | you will not take from my clients, from all the people here, |
| 11:11 | 11 | from all the citizens of this country their right to uphold |
| 11:11 | 12 | the Constitution, their right to have the legitimate |
| 11:11 | 13 | President.  We have *quo warranto* statutes.  You have the |
| 11:11 | 14 | right to enforce those statutes, and I hope that you will |
| 11:11 | 15 | not take those rights. |
| 11:11 | 16 | Thank you, Your Honor. |
| 11:11 | 17 | *(Applause from the audience.)* |
| 11:11 | 18 | THE COURT:  Let me speak to the audience.  I |
| 11:11 | 19 | certainly haven't tried to quell your enthusiasm and, in |
| 11:11 | 20 | fact, I tried to set up the cameras next door for the |
| 11:12 | 21 | overflow members of the public, because I wanted the public |
| 11:12 | 22 | to have access.  Let me tell you that I don't intend to |
| 11:12 | 23 | chill your enthusiasm, but I'm going to ask you to stop for |
| 11:12 | 24 | just a moment and reflect for a moment. |
| 11:12 | 25 | I can assure you that during these proceedings, |

| | | |
|---|---|---|
| 11:12 | 1 | President Obama hasn't called me, thank you, and applied any |
| 11:12 | 2 | pressure, nor has any member from the government, but I can |
| 11:12 | 3 | assure you, Ms. Taitz, that something's happened that will |
| 11:12 | 4 | not affect my decision, but it is troubling.  And that is |
| 11:12 | 5 | apparently on your blog you encourage people who subscribe |
| 11:12 | 6 | to your blog to contact the courts.  We've absorbed 40 to a |
| 11:12 | 7 | hundred phone calls a day on occasion.  You have to be |
| 11:12 | 8 | careful, and I assure you that it doesn't -- it has the |
| 11:12 | 9 | opposite effect. |
| 11:12 | 10 | If there's any improper pressure or effort, it's |
| 11:12 | 11 | coming because you requested members of the public to |
| 11:12 | 12 | literally call the court and give their input. |
| 11:12 | 13 | That's not the America I grew up in.  No, I'm |
| 11:12 | 14 | speaking now.  I've given you all the courtesy.  The America |
| 11:13 | 15 | I grew up in had two well-balanced sides with thoughtful |
| 11:13 | 16 | audiences and thoughtful jurists and a thoughtful |
| 11:13 | 17 | legislature and a thoughtful government.  And I think before |
| 11:13 | 18 | I hear Mr. Kreep, I want to respond to one parting point |
| 11:13 | 19 | that you and I have to begin with. |
| 11:13 | 20 | I don't believe that my government's corrupt as |
| 11:13 | 21 | you do, or as you stated. |
| 11:13 | 22 | And I've worked in Russia with Rule of Law, and |
| 11:13 | 23 | I've worked in Arkhangel'sk in many parts, and I know of |
| 11:13 | 24 | what you speak.  I was there in 1990s after the Soviet Union |
| 11:13 | 25 | broke up.  It's a 99 percent conviction rate.  A system of |

| | | |
|---|---|---|
| 11:13 | 1 | justice I just don't understand, so I hear that heartfelt |
| 11:13 | 2 | story.  But that's a personal experience that doesn't |
| 11:13 | 3 | subscribe to this country. |
| 11:13 | 4 | And I believe that regardless of party |
| 11:13 | 5 | affiliation -- and I want you to hear this very strongly -- |
| 11:13 | 6 | that most, if not the vast majority of people, who run for |
| 11:14 | 7 | public office are absolutely ethical and honest.  And that's |
| 11:14 | 8 | where you and I part company when we talk about a corrupt |
| 11:14 | 9 | government. |
| 11:14 | 10 | Mr. Drake is absolutely honest and ethical. |
| 11:14 | 11 | Mr. Keyes is.  So I start from a different point of assuming |
| 11:14 | 12 | the ethics in my government.  And the disturbing part to me |
| 11:14 | 13 | isn't your argument.  We'll decide that on the merits.  But |
| 11:14 | 14 | having that belief, then I think that the Constitution did |
| 11:14 | 15 | one fundamental thing that apparently you hadn't |
| 11:14 | 16 | experienced, and that is, it gives the very common people |
| 11:14 | 17 | like me and all of my fellow citizens the ability to have |
| 11:14 | 18 | some say in the governance by we, the common people. |
| 11:14 | 19 | So therefore, basically, I start at a starting |
| 11:14 | 20 | point of trusting, you know, the majority of people who run |
| 11:14 | 21 | for office, and I believe that they're very ethical.  I |
| 11:15 | 22 | think that that's a strength. |
| 11:15 | 23 | Now, for those of you who applauded, I've let that |
| 11:15 | 24 | go, but it's part of what's continually occurred.  You're |
| 11:15 | 25 | welcome to because the situation will resolve itself in a |

| 11:15 | 1 | few moments because I'll wish all of you good-bye.  But I'm |
|---|---|---|
| 11:15 | 2 | just going to ask you to maintain a little bit of that |
| 11:15 | 3 | balance for a moment while we listen to Mr. Kreep.  Okay? |
| 11:15 | 4 | And you're not disadvantaged by the applause meter today, |
| 11:15 | 5 | nor are you advantaged by lack thereof. |
| 11:15 | 6 | So Mr. Kreep, your position, please. |
| 11:15 | 7 | MR. KREEP:  Your Honor, with all due respect to |
| 11:15 | 8 | Mr. West and the other attorneys in the Department of |
| 11:15 | 9 | Justice, I think that their argument is based upon an |
| 11:15 | 10 | assumption that I don't think is present here. |
| 11:15 | 11 | In order to impeach someone, if you look at the |
| 11:15 | 12 | laws, it assumes you have someone that's properly in office. |
| 11:15 | 13 | In order to disqualify them under the 25th Amendment, if you |
| 11:15 | 14 | read the laws, it assumes that someone is properly in |
| 11:15 | 15 | office.  We are in a situation where if what the plaintiffs |
| 11:16 | 16 | believe is true, if Mr. Obama never did qualify to run for |
| 11:16 | 17 | or serve as President of the United States, then I don't |
| 11:16 | 18 | know if he can impeach 'cause, from a void ab initio point |
| 11:16 | 19 | of view, he was never in office. |
| 11:16 | 20 | That's the difference we have.  That's why saying, |
| 11:16 | 21 | well, it's a political issue and Congress does this, and |
| 11:16 | 22 | Congress did that, and only Congress can do this, and only |
| 11:16 | 23 | Congress can do that.  I don't think that applies, |
| 11:16 | 24 | Your Honor.  I think we're in a what we refer to -- those of |
| 11:16 | 25 | us who have been around this, doing this stuff for a few |

| | | |
|---|---|---|
| 11:16 | 1 | years -- a case of first impression.  I mean, I couldn't |
| 11:16 | 2 | certainly find anything anywhere near like this in research, |
| 11:16 | 3 | and I and several law clerks spent a heck of a lot of time |
| 11:16 | 4 | on this. |
| 11:16 | 5 | So with all due respect to Mr. West, et al., I |
| 11:16 | 6 | think their argument misses the point.  Okay.  I don't think |
| 11:16 | 7 | it's a political question because I don't think there's a |
| 11:16 | 8 | political way to deal with it.  I think it's a legal |
| 11:16 | 9 | question that has to be decided by a judge. |
| 11:16 | 10 | The premier question is, is Mr. Obama eligible to |
| 11:17 | 11 | serve as President of the United States? |
| 11:17 | 12 | If he's not now, he never was.  He somehow didn't |
| 11:17 | 13 | lose it since he got elected.  And if he never was, then |
| 11:17 | 14 | he's not there legally. |
| 11:17 | 15 | Mr. Biden may be there.  I guess we could have all |
| 11:17 | 16 | sorts of theories as to what happens if Mr. Obama is no |
| 11:17 | 17 | longer there, but he's just not there.  And that's what this |
| 11:17 | 18 | whole lawsuit is all about. |
| 11:17 | 19 | We can criticize each other.  You know, Dr. Taitz |
| 11:17 | 20 | has been putting on -- urging people on her blog to sue me |
| 11:17 | 21 | because I dared to become involved in this case.  That's her |
| 11:17 | 22 | issue.  I'm trying to win this case.  My job is to try to |
| 11:17 | 23 | win this case.  My job is not to attack the Department of |
| 11:17 | 24 | Justice.  My job is not attack Dr. Taitz.  My job is to win |
| 11:17 | 25 | this case.  The simple matter is this Court today is going |

| | | |
|---|---|---|
| 11:17 | 1 | to make a decision as to whether this case is going to go |
| 11:17 | 2 | forward. |
| 11:17 | 3 | There's all sorts of configurations it can go |
| 11:17 | 4 | forward in.  You can bump out a lot of defendants.  I would |
| 11:18 | 5 | be amazed if you didn't.  You can bump out a bunch of the |
| 11:18 | 6 | case, because of lot of it has nothing to do with the case. |
| 11:18 | 7 | THE COURT:  Which defendants have standing? |
| 11:18 | 8 | MR. KREEP:  Which defendants have standing? |
| 11:18 | 9 | THE COURT:  I'm sorry.  Which plaintiffs have |
| 11:18 | 10 | standing? |
| 11:18 | 11 | MR. KREEP:  I believe -- I'm only going to speak |
| 11:18 | 12 | for my plaintiffs, Your Honor.  I'm not going to speak for |
| 11:18 | 13 | Dr. Taitz's plaintiffs.  I don't think that's proper |
| 11:18 | 14 | ethically.  Under the *Holland* case, Your Honor, I think that |
| 11:18 | 15 | Mr. Drake has standing.  He was on the presidential ballot |
| 11:18 | 16 | for the 2008 Presidential Election representing American |
| 11:18 | 17 | Independent Party ticket.  He was on there with Mr. Keyes, |
| 11:18 | 18 | who was Dr. Taitz's client.  I believe that Mr. Robinson, |
| 11:18 | 19 | who's not here, has standing.  He is the current President |
| 11:18 | 20 | of the American Independent Party. |
| 11:18 | 21 | We're talking about something basic, Your Honor. |
| 11:18 | 22 | If Mr. Obama was not legally on the ballot because if he |
| 11:18 | 23 | can't serve as President, then he couldn't run for |
| 11:18 | 24 | President.  If he was never legally on the ballot, then |
| 11:18 | 25 | we're talking about every other political party has been |

11:19   1    damaged.  Every other candidate for President has been

11:19   2    damaged because they did not have a fair election.

11:19   3            There's all sorts of rumors and accusations about

11:19   4    $750 million Mr. Obama received and FEC this and false that.

11:19   5    That's got nothing to do with it.  If he is not -- that's

11:19   6    got nothing to do with today.  If he is not eligible, he

11:19   7    ain't there.

11:19   8            And the other issues, you know, if there's massive

11:19   9    campaign finance fraud he participated in, then there may be

11:19   10   grounds for impeachment or censure or a variety of things,

11:19   11   but that all assumes he was properly elected.

11:19   12           THE COURT:  What's the injury in fact, to your

11:19   13   client?

11:19   14           MR. KREEP:  The injury in fact to my client, Your

11:19   15   Honor, is they didn't have a fair election.  I understand

11:19   16   that there was some discussion, "Well, there's no way that

11:19   17   Mr. Keyes could have won," and there's no way that Mr. Drake

11:19   18   could have won, but as someone pointed out to me in the

11:19   19   hall, Your Honor, that's a static analysis, not a dynamic

11:19   20   analysis.  What would have happened if Hillary Clinton had

11:20   21   been the presidential candidate instead of Barack Obama?

11:20   22   Would Mr. McCain have won?  Would a third-party candidate

11:20   23   have won because the people were so sick and tired of both

11:20   24   major parties that they would have voted for a third party?

11:20   25           We don't know.  We can't know because we don't

| | | |
|---|---|---|
| 11:20 | 1 | have the ball, the globe that the seers look in and can tell |
| 11:20 | 2 | the future and the past and all that. |
| 11:20 | 3 | THE COURT: Well, there's another part to your |
| 11:20 | 4 | argument that I really want to consider, and that is that it |
| 11:20 | 5 | would legitimize the two-party system to such an extent that |
| 11:20 | 6 | independent parties would never have an opportunity. In |
| 11:20 | 7 | other words, the rise of Ross Perot for instance, which did |
| 11:20 | 8 | get a substantial amount of the American vote. |
| 11:20 | 9 | MR. KREEP: Or the Bull Moose Party, Your Honor. |
| 11:20 | 10 | THE COURT: Or the Bull Moose Party, historically. |
| 11:20 | 11 | MR. KREEP: Progressive Party, Robert La Fayette. |
| 11:20 | 12 | THE COURT: What it would do from your perspective |
| 11:20 | 13 | is, if the Court simply ruled that your clients never had a |
| 11:20 | 14 | legitimate opportunity, that really begs the question that, |
| 11:21 | 15 | so what? Shouldn't they be inclined to have a level playing |
| 11:21 | 16 | field even if they got X percent of the vote? |
| 11:21 | 17 | MR. KREEP: Exactly, Your Honor. |
| 11:21 | 18 | THE COURT: And otherwise, it would legitimize the |
| 11:21 | 19 | two-party system. |
| 11:21 | 20 | MR. KREEP: It would de-legitimize -- it would |
| 11:21 | 21 | turn us into a solely two-party system and forever doom us |
| 11:21 | 22 | to that. As we've seen, Your Honor, we used to have the |
| 11:21 | 23 | democratic -- what was it? We used to have a combination of |
| 11:21 | 24 | the Democratic Republican Party. It was one party. And |
| 11:21 | 25 | then there was the Whigs, and then the Whigs went the way of |

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
| 11:21 | 1  | history, and then we had the Democratic Party and the                |
| 11:21 | 2  | Republican Party, and then we had H. Ross Perot's party, and         |
| 11:21 | 3  | we had George Wallace's party, which won a number of states.         |
| 11:21 | 4  | We can't tell what's going to happen in the future, but we           |
| 11:21 | 5  | have to protect above all the democracy that we have.                |
| 11:21 | 6  | Now, Your Honor asked a question, and it was never                   |
| 11:22 | 7  | answered.  There has been no impeachment motion filed so             |
| 11:22 | 8  | far, that I'm aware of, in Congress.  Your Honor asked a             |
| 11:22 | 9  | question if any senators have raised this issue.  Senator            |
| 11:22 | 10 | Shelby has publicly, and I believe Senator Coburn has                |
| 11:22 | 11 | publicly.  Both of them you can do Googles and find them.  A         |
| 11:22 | 12 | number of congressmen have raised this publicly.  They have          |
| 11:22 | 13 | not brought impeachment, but they have raised the issue.             |
| 11:22 | 14 | Whether they're going to do anything more, I have no idea,           |
| 11:22 | 15 | Your Honor.                                                          |
| 11:22 | 16 | Finally --                                                           |
| 11:22 | 17 | THE COURT:  I believe Congress is restricting                        |
| 11:22 | 18 | itself because of the series of cases in Pennsylvania,               |
| 11:22 | 19 | Georgia, the filing in California, and this case.  In other          |
| 11:22 | 20 | words, this isn't the case -- the first case of impression.          |
| 11:22 | 21 | We've got a case down in Georgia that was just resolved              |
| 11:22 | 22 | unfavorably.                                                         |
| 11:22 | 23 | MR. KREEP:  Yes, Your Honor, but all these have                      |
| 11:22 | 24 | been done on basically procedural issues.  Nothing has gone          |
| 11:22 | 25 | to the merits so far, which is why this case, I think, is so         |

| | | |
|---|---|---|
| 11:23 | 1 | important. |
| 11:23 | 2 | THE COURT: I'm most concerned about standing. In |
| 11:23 | 3 | other words, unless I'm comfortable with standing, we don't |
| 11:23 | 4 | get to the merits, which is unfortunate from your |
| 11:23 | 5 | perspective. |
| 11:23 | 6 | MR. KREEP: I understand, Your Honor. Again. |
| 11:23 | 7 | THE COURT: That's why I keep raising the |
| 11:23 | 8 | opportunity to address standing because I am troubled by it. |
| 11:23 | 9 | MR. KREEP: I'm not much of one to wax poetics, |
| 11:23 | 10 | Your Honor. |
| 11:23 | 11 | THE COURT: Well, everybody else has, so why don't |
| 11:23 | 12 | you try. |
| 11:23 | 13 | MR. KREEP: I think there's been a little too much |
| 11:23 | 14 | of that. |
| 11:23 | 15 | THE COURT: That's fine. I've tried not to chill |
| 11:23 | 16 | the enthusiasm. |
| 11:23 | 17 | MR. KREEP: Your Honor, let's assume for the |
| 11:23 | 18 | moment that the people are right, and by the people I |
| 11:23 | 19 | mean -- I don't mean the people as in the prosecutor, I |
| 11:23 | 20 | mean, the Department of Justice. Let's assume the |
| 11:23 | 21 | Department of Justice is right, only Congress or the |
| 11:23 | 22 | electoral college can do anything. Period. Nobody else. |
| 11:23 | 23 | Period. Okay? As Dave argued -- and we've submitted |
| 11:23 | 24 | counter arguments -- the Court's going to have to decide |
| 11:23 | 25 | which way it's gonna go. |

| | | |
|---|---|---|
| 11:24 | 1 | What that means is that you could have somebody -- |
| 11:24 | 2 | and I've actually argued this before in another court on |
| 11:24 | 3 | this issue, Your Honor.  In fact, I was -- Dr. Taitz said |
| 11:24 | 4 | that she puts -- |
| 11:24 | 5 | THE COURT:  Slower, slower. |
| 11:24 | 6 | MR. KREEP:  When Dr. Taitz said that she put |
| 11:24 | 7 | something in an article she wrote, I was kind of interested |
| 11:24 | 8 | because it was an argument I had made in another court |
| 11:24 | 9 | hearing a number of months, some time back. |
| 11:24 | 10 | Basically, what it comes down to, Your Honor, is |
| 11:24 | 11 | that if you decide that no one but Congress or the electoral |
| 11:24 | 12 | college has the right to make this decision, in a sense, our |
| 11:24 | 13 | representative government, our three-part representative |
| 11:24 | 14 | government goes bye-bye. |
| 11:24 | 15 | THE COURT:  Let me ask you something.  I'm most |
| 11:24 | 16 | troubled if I never get to that point.  In other words, I |
| 11:24 | 17 | also believe that one of the virtues of our country is the |
| 11:25 | 18 | access of the American public to a court system to have |
| 11:25 | 19 | issues resolved.  But I keep saying to each of you I'm most |
| 11:25 | 20 | troubled and trying to highlight what's of concern |
| 11:25 | 21 | apparently to me and other courts.  And regardless of what |
| 11:25 | 22 | other courts have done, I'm concerned about standing.  I |
| 11:25 | 23 | never get to justiciability and jurisdiction if I don't get |
| 11:25 | 24 | past the standing hurdle. |
| 11:25 | 25 | MR. KREEP:  I'm sorry.  I'm trying to respond. |

| 11:25 | 1 | THE COURT:  Yes, and that's what's troubling to |
| 11:25 | 2 | me.  The question is, let's assume that I rule in your favor |
| 11:25 | 3 | and I then get to what I call the political question, |
| 11:25 | 4 | jurisdictional issue, so be it.  What happens if I can't get |
| 11:25 | 5 | by the standing issue?  Should I, in my opinion, address |
| 11:25 | 6 | jurisdiction or leave it for another day? |
| 11:26 | 7 | MR. KREEP:  I would ask that you address it, |
| 11:26 | 8 | Your Honor, because I have absolutely no doubt that if -- if |
| 11:26 | 9 | the plaintiffs lose, there's going to be an appeal.  And |
| 11:26 | 10 | since I doubt that Dr. Taitz is willing to work with me |
| 11:26 | 11 | still, it will be two appeals.  And I have absolutely no |
| 11:26 | 12 | doubt that if we are successful, the DOJ is going to appeal. |
| 11:26 | 13 | THE COURT:  Why wouldn't I raise the issues |
| 11:26 | 14 | involved, though, and if standing was an issue and this |
| 11:26 | 15 | went, you know, up to a higher court and came back, and, |
| 11:26 | 16 | hypothetically, why would I take this argument as the final |
| 11:26 | 17 | argument on that issue?  Why wouldn't I be wise to wait and |
| 11:26 | 18 | let you address the Court again if I found against you on |
| 11:26 | 19 | standing and I was wrong, or other courts had -- and let you |
| 11:26 | 20 | come back and argue the jurisdictional issue anew? |
| 11:26 | 21 | MR. KREEP:  Your Honor, for a very simple reason. |
| 11:27 | 22 | Like it or not, this case is on the people's minds.  Like it |
| 11:27 | 23 | or not, this is an issue.  The longer this thing festers, |
| 11:27 | 24 | the worse it's going to get. |
| 11:27 | 25 | You've seen the emotional outbursts of people in |

| | | |
|---|---|---|
| 11:27 | 1 | this room, Your Honor.  How many cases have you had where |
| 11:27 | 2 | something like that has happened?  I've done cases that are |
| 11:27 | 3 | much more emotional.  I've been involved in the Prop. 8 |
| 11:27 | 4 | litigation.  You're seeing something that is, in my almost |
| 11:27 | 5 | 34 years of experience, is rare.  I'm not saying it's a bad |
| 11:27 | 6 | thing; I'm just saying it's rare. |
| 11:27 | 7 | I think that is because of the weightiness of the |
| 11:27 | 8 | issues that we're dealing with, and because of the delays -- |
| 11:27 | 9 | we had seven-month delays because the cotton-picking case |
| 11:27 | 10 | couldn't get served.  Because of delays already, Your Honor, |
| 11:27 | 11 | I think it's important for the Court to, to the extent that |
| 11:27 | 12 | it feels proper, rule on as many issues as possible, so that |
| 11:27 | 13 | if it goes up, no matter who takes it up, and it comes back |
| 11:27 | 14 | down, then we're not in another six-month argument cycle and |
| 11:28 | 15 | we're another six months down the road. |
| 11:28 | 16 | That would be my suggestion to the Court in |
| 11:28 | 17 | response to your question. |
| 11:28 | 18 | THE COURT:  I want to thank you for that |
| 11:28 | 19 | thoughtful answer. |
| 11:28 | 20 | MR. KREEP:  May I finish my argument, Your Honor? |
| 11:28 | 21 | THE COURT:  Please. |
| 11:28 | 22 | MR. KREEP:  If only Congress can do this |
| 11:28 | 23 | Your Honor, then we vitiated the second -- Article II, the |
| 11:28 | 24 | requirements, because that means we're putting it in the |
| 11:28 | 25 | hands of the political parties, in essence.  The arguments |

11:28  1    that I've seen in other cases that I've been involved with,

11:28  2    Your Honor -- and I've been involved with more than just two

11:28  3    in California.  The ones I've been involved with, basically

11:28  4    the position has been the political parties, it's up to

11:28  5    them.  We know best, you know, pat-pat on the head, go away.

11:28  6           Well, we argued -- in our brief, Your Honor, we

11:28  7    dealt with that issue.  Okay?

11:28  8           And the whole idea, Your Honor, is that if there

11:28  9    is not Joe citizen out here who can come in and enforce the

11:28  10   parts of the Constitution, that part of the Constitution,

11:28  11   which part next can't Joe citizen enforce?  Joe citizen

11:29  12   can't bring a lawsuit over the First Amendment, freedom of

11:29  13   religion, freedom of speech.  We're talking about the

11:29  14   Constitution.  Can't say it's okay to sue on this part of

11:29  15   the Constitution, not okay to sue on that part of the

11:29  16   Constitution.  That slippery slope argument I've always

11:29  17   thought is a ridiculous argument, but it applies here,

11:29  18   Your Honor.

11:29  19          Who has the rights?  The Constitution says that

11:29  20   those rights are not reserved to the states; they're

11:29  21   reserved to the people.  Okay?  I understand Congress has

11:29  22   gone way out of its way to insulate itself from a lot of

11:29  23   stuff.

11:29  24          I handled a federal court case challenging the

11:29  25   appointments of federal court judges, interestingly enough,

DEBBIE GALE, U.S. COURT REPORTER

| 11:29 | 1 | at one point in time.  The federal court judge ruled that it |
| 11:29 | 2 | was constitutional for U.S. senators in their selection of |
| 11:29 | 3 | judges to discriminate on race, sex, sexual orientation, |
| 11:29 | 4 | everything in the world.  No one had a right because |
| 11:30 | 5 | senators are immune from all those things, because they've |
| 11:30 | 6 | made themselves immune.  They can sexually harass one of |
| 11:30 | 7 | their aides, and they'll never be held -- held to bear for |
| 11:30 | 8 | it because they've made themselves immune from all the |
| 11:30 | 9 | federal labor laws.  It's the type of situation here.  The |
| 11:30 | 10 | government is saying, "aeh," nobody can do it.  Congress |
| 11:30 | 11 | reserves it for themselves. |
| 11:30 | 12 | Your Honor, the idea is basically if this case |
| 11:30 | 13 | fails, and this is an important case -- I mean, you can tell |
| 11:30 | 14 | by the publicity -- I mean, on a whole variety of levels. |
| 11:30 | 15 | It's an important constitutional case, not just an important |
| 11:30 | 16 | case involving this President. |
| 11:30 | 17 | I will tell you I don't know where Mr. Obama was |
| 11:30 | 18 | born.  I have my suspicions.  And if he was born in Hawaii, |
| 11:31 | 19 | then maybe this case goes away and maybe it doesn't. |
| 11:31 | 20 | There's other issues, but maybe it does.  But if he was born |
| 11:31 | 21 | in Mombasa, in what was then the British sultanate of |
| 11:31 | 22 | Zanzibar and now known as Kenya, then we have a real |
| 11:31 | 23 | constitutional issue here. |
| 11:31 | 24 | And if the people are told, "Us guys in Congress |
| 11:31 | 25 | and us gals in Congress, we know what to do; you don't. |

| 11:31 | 1  | You're just a bunch of shmucks out there that can't think |
| 11:31 | 2  | for yourselves, and you have to rely on us," then we've |
| 11:31 | 3  | turned from Jefferson's concern of the mobocracy of the |
| 11:31 | 4  | masses versus a representative government to an elitocracy. |
| 11:31 | 5  | We've got the people in Congress saying only they should be |
| 11:31 | 6  | able to decide things, only they know what's best for us. |
| 11:31 | 7  | And I would submit, Your Honor, that's throwing |
| 11:31 | 8  | the Constitution up on its head.  And I thank you very much, |
| 11:31 | 9  | Your Honor. |
| 11:31 | 10 | THE COURT:  Thank you. |
| 11:31 | 11 | *(Audience applause.)* |
| 11:32 | 12 | THE COURT:  Okay.  Thank you.  Counsel, you'll |
| 11:32 | 13 | hear from me within the next day to a year.  I'm just |
| 11:32 | 14 | kidding you. |
| 11:32 | 15 | *(Laughter in courtroom.)* |
| 11:32 | 16 | THE COURT:  I need some time just to sort out the |
| 11:32 | 17 | arguments.  I didn't put out a tentative today because I |
| 11:32 | 18 | wanted to thoughtfully listen to your respective positions. |
| 11:32 | 19 | I think that's a courtesy I could pay you.  After all, |
| 11:32 | 20 | jurists aren't supposed to make up their minds beforehand -- |
| 11:32 | 21 | and your papers get you part way there.  It's the arguments |
| 11:32 | 22 | that are also helpful. |
| 11:32 | 23 | Obviously, you are hearing from your perspective, |
| 11:32 | 24 | Ms. Taitz and Mr. Kreep, that I'm most concerned about |
| 11:32 | 25 | standing.  If you haven't heard that, I don't know what you |

| 11:32 | 1 | heard. |
| 11:32 | 2 | You've heard from the government's position that |
| 11:32 | 3 | if standing is appropriate, that I'm most concerned about |
| 11:32 | 4 | justiciability -- J-U-S-T-I-C-I-B -- for some reason I'm |
| 11:33 | 5 | tongue-tied on that.  I'm most concerned about whether the |
| 11:33 | 6 | Courts really do lack jurisdiction if we get by the standing |
| 11:33 | 7 | argument, and what's happened to the political question |
| 11:33 | 8 | doctrine regardless.  But I'm concerned whether this is |
| 11:33 | 9 | substantial and I'm concerned if it's in the correct venue, |
| 11:33 | 10 | even if we got there.  In other words, there's a whole |
| 11:33 | 11 | trilogy of questions. |
| 11:33 | 12 | I'm a little concerned, just speaking out loud, |
| 11:33 | 13 | what I do and how far I go in an opinion.  If I rule against |
| 11:33 | 14 | you, of course, it's resolved; it's going forward.  I would |
| 11:33 | 15 | grant an interloc to take it up immediately, of course. |
| 11:33 | 16 | If I rule against you, of course, you would take |
| 11:33 | 17 | it up immediately.  I would put it in the same position. |
| 11:33 | 18 | You don't need an interloc, but I would give you one and |
| 11:33 | 19 | encourage one to go up immediately. |
| 11:33 | 20 | The question is how far a Court goes.  I may raise |
| 11:33 | 21 | different issues in the opinion and not decide them.  It's |
| 11:33 | 22 | only because if I ruled that do you not have standing, I may |
| 11:34 | 23 | point out the issues involved in the jurisdictional |
| 11:34 | 24 | political question area, but not resolve them at the present |
| 11:34 | 25 | time, as you've suggested, awaiting to see if the standing |

| | | |
|---|---|---|
| 11:34 | 1 | against you, the ruling is correct or not.  It gives you |
| 11:34 | 2 | another opportunity to argue that, and to really marshal |
| 11:34 | 3 | your resources. |
| 11:34 | 4 | If I do rule for you in terms of standing, then, |
| 11:34 | 5 | obviously I'm going to address jurisdictional issues and |
| 11:34 | 6 | political question issues and whether this is the proper |
| 11:34 | 7 | venue and whether this is a material issue, et cetera. |
| 11:34 | 8 | All right.  Now, I want to thank all of you. |
| 11:34 | 9 | I also want to thank the audience who have been |
| 11:34 | 10 | here.  I know that -- |
| 11:34 | 11 | MR. KREEP:  Your Honor, the 26(f) hearing, are we |
| 11:34 | 12 | going to... |
| 11:34 | 13 | THE COURT:  I'm going to get there in a moment, |
| 11:34 | 14 | but I wanted to thank the audience. |
| 11:34 | 15 | I didn't chill your enthusiasm to such an extent |
| 11:34 | 16 | that you weren't welcome in the federal courts, and |
| 11:34 | 17 | the -- the little bit of applause doesn't affront me, but |
| 11:35 | 18 | also understand it has no bearing upon me.  That's your own |
| 11:35 | 19 | emotion coming out.  There's a vast amount -- the country |
| 11:35 | 20 | also may feel differently than those assembled here. |
| 11:35 | 21 | The second thing is, I want to caution both of |
| 11:35 | 22 | you.  There's been no input from the government, and I don't |
| 11:35 | 23 | expect that there would be. |
| 11:35 | 24 | Ms. Taitz, if you can control the phone calls.  I |
| 11:35 | 25 | leave that to you.  If not, I want to assure you I'm not |

| | | |
|---|---|---|
| 11:35 | 1 | accepting any of those phone calls. They're simply going |
| 11:35 | 2 | into an answering machine and being deleted by the |
| 11:35 | 3 | secretary. I'll just say to you I don't think that that was |
| 11:35 | 4 | helpful putting on an internet blog that you thought that |
| 11:35 | 5 | people could influence the Court by calling them. It was |
| 11:35 | 6 | inappropriate. |
| 11:35 | 7 | MS. TAITZ: May I respond? |
| 11:35 | 8 | THE COURT: No, no, it's done. You've put it out |
| 11:35 | 9 | there. Now it's your responsibility. But it won't bear on |
| 11:35 | 10 | my decision or my writing. My writing will be transparent. |
| 11:35 | 11 | My thoughts will be transparent. |
| 11:35 | 12 | Concerning the dates, I'm going to delay that, |
| 11:36 | 13 | because you both agreed to the dates, and therefore, in the |
| 11:36 | 14 | order, if we're going forward, the dates will be set out as |
| 11:36 | 15 | agreed upon. There's nothing to decide today in terms of |
| 11:36 | 16 | scheduling conference. If we're not going forward, then the |
| 11:36 | 17 | dates are meaningless. |
| 11:36 | 18 | So I'm going to thank you, excuse you. I want to |
| 11:36 | 19 | thank all of you for your arguments, Mr. Kreep, Ms. Taitz, |
| 11:36 | 20 | counsel on behalf of the government. They're well-taken by |
| 11:36 | 21 | the Court. I appreciate it. |
| 11:36 | 22 | MR. DeJUTE: Thank you, Your Honor. |
| 11:36 | 23 | MR. KREEP: Thank you, Your Honor. |
| 11:36 | 24 | *(At 11:36 a.m., proceedings were adjourned.)* |
| 11:36 | 25 | -oOo- |

| 11:36 | 1 | |
| 11:36 | 2 | -oOo- |
| 11:36 | 3 | |
| 11:36 | 4 | CERTIFICATE |
| 11:36 | 5 | |
| 11:36 | 6 | I hereby certify that pursuant to Section 753, |
| 11:36 | 7 | Title 28, United States Code, the foregoing is a true and |
| 11:36 | 8 | correct transcript of the stenographically reported |
| 11:36 | 9 | proceedings held in the above-entitled matter and that the |
| 11:36 | 10 | transcript page format is in conformance with the |
| 11:36 | 11 | regulations of the Judicial Conference of the United States. |
| 11:36 | 12 | |
| 11:36 | 13 | Date:  October 12, 2009 |
| 11:36 | 14 | |
| 11:36 | 15 | |
| 11:36 | 16 | _____ |
| 11:36 | 17 | DEBBIE GALE, U.S. COURT REPORTER<br>CSR NO. 9472, RPR |
| 11:36 | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER