UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 10 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WILEY S. DRAKE; MARKHAM
ROBINSON,

           Plaintiffs - Appellants,

and

Ambassador ALAN KEYES, Ph. D.; et
al.,

           Plaintiffs,

  v.

BARACK HUSSEIN OBAMA; et al.,

           Defendants - Appellees.

No. 09-56827

D.C. No. 8:09-cv-00082-DOC-AN
U.S. District Court for Central
California, Santa Ana

**MANDATE**

RECEIVED
CLERK, U.S. DISTRICT COURT

FEB 10 2012

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

    The judgment of this Court, entered December 22, 2011, takes effect this

date.

    This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

                      FOR THE COURT:
                      Molly C. Dwyer
                      Clerk of Court

                      Synitha Walker
                      Deputy Clerk



**FILED**

**FOR PUBLICATION**

DEC 22 2011

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

WILEY S. DRAKE; MARKHAM
ROBINSON,

        Plaintiffs - Appellants,

  and

Ambassador ALAN KEYES, Ph.D.;
Captain PAMELA BARNETT; Lieutenant
Colonel RICHARD NORTON
BAUERBACH; Captain ROBIN D.
BIRON; Colonel JOHN D. BLAIR; Mr.
DAVID L. BOSLEY; Ms. LORETTA G.
BOSLEY; Captain HARRY G. BUTLER;
Representative GLENN CASADA,
Tennessee; JENNIFER LEAH CLARK;
Representative TIMOTHY
COMERFORD, New Hampshire;
CHARLES CRUSEMIRE; Representative
CYNTHIA DAVIS, Missouri; Chief
Warrant Officer THOMAS S.
DAVIDSON; MATTHEW MICHAEL
EDWARDS; Lieutenant JASON FREESE;
Mr. KURT C. FUQUA; Officer CLINT
GRIMES; JULLIETT IRELAND; D.
ANDREW JOHNSON; ISRAEL D.
JONES; State Representative TIMOTHY
JONES, Esq., Missouri; Commander
DAVID FULLMER LAROQUE; GAIL
LIGHTFOOT; MIL Officer LITA M.
LOTT, U.S. Army; Major DAVID
GRANT MOSBY; MSGT STEVEN KAY

No. 09-56827

D.C. No. 8:09-cv-00082-DOC-AN

OPINION

NEUENSCHWANDER; State
Representative FRANK NICELEY,
Tennessee; Retired Senator JERRY
O'NEIL, Montana; SFC E7 ROBERT LEE
PERRY; Colonel HARRY RILEY;
Sergeant JEFFREY WAYNE ROSNER;
MSGT JEFFREY SCHWILK; Captain
DAVID SMITHEY; Lieutenant
Commander JOHN BRUCE STEIDEL;
Commander DOUGLAS EARL
STOEPPELWERTH; THOMAS J.
TAYLOR; Representative ERIC
SWAFFORD, Tennessee; Captain NEIL
B. TURNER; RICHARD E. VENABLE;
LCDR JEFF GRAHAM WINTHROPE;
Lieutenant Colonel MARK WRIGGLE,

       Plaintiffs,

  v.

BARACK HUSSEIN OBAMA;
MICHELLE L.R. OBAMA; HILLARY
RODHAM CLINTON, Secretary of State;
ROBERT M. GATES, Secretary of
Defense; JOSEPH R. BIDEN, Vice
President and President of the Senate,

       Defendants - Appellees.

PAMELA BARNETT, Captain; ALAN
KEYES, Ph.D., Ambassador; RICHARD
NORTON BAUERBACH, Lieutenant
Colonel; ROBIN D. BIRON, Captain;
JOHN D. BLAIR, Colonel; DAVID L.
BOSLEY, Lt. Col.; LORETTA G.
BOSLEY; HARRY G. BUTLER, Captain;

No. 10-55084

D.C. No. 8:09-cv-00082-DOC-AN

GLENN CASADA, Representative,
Tennessee; JENNIFER LEAH CLARK;
TIMOTHY COMERFORD,
Representative, New Hampshire;
CHARLES CRUSEMIRE; CYNTHIA
DAVIS, Representative, Missouri;
THOMAS S. DAVIDSON, Chief Warrant
Officer; MATTHEW MICHAEL
EDWARDS; JASON FREESE,
Lieutenant; KURT C. FUQUA, Mr.;
CLINT GRIMES, Officer; JULLIETT
IRELAND; D. ANDREW JOHNSON;
ISRAEL D. JONES; TIMOTHY JONES,
State Representative; DAVID FULLMER
LAROQUE, Commander; GAIL
LIGHTFOOT; LITA M. LOTT, MIL
Officer, U.S. Army; DAVID GRANT
MOSBY, Major; STEVEN KAY
NEUENSCHWANDER, MSGT; FRANK
NICELEY, State Representative,
Tennessee; ROBERT LEE PERRY, SFC
E7; HARRY RILEY, Colonel; JEFFREY
WAYNE ROSNER, Sergeant; DAVID
SMITHEY, Captain; JOHN BRUCE
STEIDEL, Lieutenant Commander;
DOUGLAS EARL STOEPPELWERTH,
Commander; ERIC SWAFFORD,
Representative, Tennessee; NEIL B.
TURNER, Captain; RICHARD E.
VENABLE; JEFF GRAHAM
WINTHROPE, LCDR; MARK
WRIGGLE, Lieutenant Colonel,

    Plaintiffs - Appellants,

 v.

BARACK HUSSEIN OBAMA;
MICHELLE L.R. OBAMA; HILLARY

RODHAM CLINTON, Secretary of State;
ROBERT M. GATES, Secretary of
Defense; JOSEPH R. BIDEN, Vice
President and President of the Senate,

Defendants - Appellees.

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted May 2, 2011
Pasadena, California

Filed

Before: PREGERSON, FISHER, and BERZON, Circuit Judges.

Opinion by Judge PREGERSON, Circuit Judge:

Plaintiffs-Appellants contend that Barack Obama is constitutionally

ineligible to be President of the United States.  United States District Court Judge

David O. Carter dismissed Plaintiffs' constitutional claims, as well as their claims

for declaratory and injunctive relief, for lack of standing.  We affirm the dismissal

for lack of standing, albeit on somewhat different reasoning than that of the

District Court.

4

Plaintiffs additionally appeal the District Court's dismissal of their *quo warranto* claims for improper venue; their Freedom of Information Act claims for failure to state a claim; and their Racketeer Influenced and Corrupt Organizations Act claims against defendants First Lady Michelle Obama, Secretary of State Hillary Clinton, Vice President Joe Biden, and former Secretary of Defense Robert Gates, for failure to state a claim. We affirm.

## I.

Plaintiffs filed their lawsuit on January 20, 2009, the day Barack Obama was sworn in and took office as President of the United States.[1] The Plaintiffs are active, inactive, or retired military personnel; state political representatives; private individuals, including federal taxpayers and at least one individual who claims to be a relative of Barack Obama; and political candidates during the 2008 general election.

---

[1] The Plaintiffs were later given leave to file a First Amended Complaint subsequently filed on July 15, 2009. In their First Amended Complaint, Plaintiffs alleged claims for declaratory judgment, claims for the production of documents pertaining to President Obama, pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B), and civil rights claims pursuant to 42 U.S.C. §§ 1983 and 1988. In addition, Plaintiffs petitioned for a writ of *quo warranto* seeking to compel President Obama to show by what authority he holds the office of President. Plaintiffs, in their First Amended Complaint, also stated that they reserved their allegations under the Racketeer Influenced and Corrupt Organizations Act or RICO, 18 U.S.C. § 1961 *et seq.*, for their Second Amended Complaint, which was never filed.

The Defendants include President Barack Obama, First Lady Michelle Obama, Vice President Joe Biden, Secretary of State Hillary Clinton, and former Secretary of Defense Robert Gates.

Plaintiffs claim that President Obama is ineligible for the presidency under Article II, Section 1 of the United States Constitution, which states that "No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President." U.S. Const. art. II, § 1, cl. 4.[2]

For ease of analysis, the District Court divided the plaintiffs into six categories: (1) active military personnel; (2) former military personnel; (3) state representatives; (4) federal taxpayers; (5) relatives of President Obama; and (6) political candidates in the 2008 election. The District Court concluded that the plaintiffs in the first five categories lacked standing, because they failed to show an injury-in-fact or showed only a generalized grievance insufficient to establish standing.

---

[2] The Fourteenth Amendment to the Constitution, Section 1 states, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States . . . ." In *United States v. Wong Kim Ark*, the Supreme Court held that the Citizenship Clause of the Fourteenth Amendment conferred citizenship on anyone born in the United States, regardless of his parents' citizenship. 169 U.S. 649, 650 (1898).

The District Court assumed, without deciding, that plaintiffs who were political candidates in the 2008 election could potentially show an injury-in-fact based on their claim that they were denied a fair competition during the election because they had to compete with someone who was ineligible to be President. But the District Court concluded that neither they nor any other plaintiffs could satisfy the redressability requirement of standing, because the remedy they sought—a determination that President Obama is ineligible to be President and, therefore, his removal from office—would be beyond the power of the federal courts to grant, and implicates the political question doctrine and separation of powers.

Concluding that no plaintiff had standing to sue, the District Court dismissed Plaintiffs' declaratory relief, injunctive relief, and constitutional claims for lack of subject matter jurisdiction. The District Court further dismissed Plaintiffs' *quo warranto* claims for improper venue, concluding that the proper forum is the United States District Court for the District of Columbia. Plaintiffs' FOIA claims were dismissed for failure to state a claim because none of the Defendants is an agency; and their RICO claims, which were never filed, were dismissed for failure to state a claim.

7

## II.

We have jurisdiction to review the District Court's final decision pursuant to

28 U.S.C. § 1291. We review a district court's dismissal of an action for lack of

subject matter jurisdiction *de novo* and may affirm on any basis supported by the

record. *Zuress v. Donley*, 606 F.3d 1249, 1252 (9th Cir. 2010). "A district court's

findings of fact relevant to its determination of subject matter jurisdiction are

reviewed for clear error." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir.

2009). With regard to such jurisdictional questions, "[n]o presumptive truthfulness

attaches to plaintiff's allegations. Once challenged, the party asserting subject

matter jurisdiction has the burden of proving its existence." *Id.* (internal citations

and quotation marks omitted).

### A.

### CONSTITUTIONAL CLAIMS: STANDING

To establish Article III standing, a plaintiff must show: (1) "an injury in

fact—an invasion of a legally protected interest which is (a) concrete and

particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "a

causal connection between the injury and the conduct complained of—the injury

has to be fairly . . . traceable to the challenged action of the defendant, and not . . .

8

the result of the independent action of some third party not before the court"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (omissions in original) (internal quotation marks and citations omitted).  Moreover, a litigant's interest cannot be based on the "generalized interest of all citizens in constitutional governance." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217 (1974); *see also United States v. Richardson*, 418 U.S. 166, 173-78 (1974) (taxpayer's generalized grievance insufficient for standing).

Because Plaintiffs must establish standing to bring this suit, we adopt the District Court's classification of the parties and examine the standing of each category of plaintiffs in turn.

### 1. Active Military Personnel

The list of plaintiffs includes Lieutenant Jason Freese, who is on active military duty in Alaska.  The complaint alleged that Freese "has standing to challenge and demand clear-and-convincing proof of the constitutional qualifications of the Commander-in-Chief and the legality of the current chain of command, and may qualify as a class representative on behalf of all currently

9

active members of the United States Armed Forces." Plaintiffs allege that Freese

and other active duty military personal have standing because they are required to

take an oath in which they swear to support and defend the Constitution of the

United States and obey the orders of the officers appointed over them. *See* 10

U.S.C. § 502. Freese argues that, were he to refuse to follow President Obama's

orders, despite his ineligibility for the presidency, Freese would face disciplinary

action by the military.

Freese's injuries are not sufficiently concrete to establish Article III

standing, regardless of his military oath. We have addressed "oath taker standing"

before. In *South Lake Tahoe*, city councilmembers alleged that land use

regulations adopted by the state were unconstitutional and that voting to enforce

the regulations would both violate their oaths of office to uphold the Constitution

and expose them to civil liability. *City of S. Lake Tahoe v. Cal. Tahoe Reg'l*

*Planning Agency*, 625 F.2d 231, 233 (9th Cir. 1980). We considered the Supreme

Court's decision in *Board of Education v. Allen*, which held in a footnote that the

plaintiff oath takers had a "personal stake in the outcome" of the litigation because

they would be punished for refusing to comply with a statute that they believed

required them to violate their oath to uphold the Constitution. *Id.* (citing 392 U.S.

10

236, 241 n.5 (1968)).  Citing to intervening Supreme Court precedent on the

doctrine of standing, we determined that the holding of footnote 5 in *Allen* is not

"properly . . . considered as binding Supreme Court precedent," and "therefore

[held] that the councilmembers' desire not to violate their oaths of office does not

confer standing." *Id.* at 237 (citing *Schlesinger*, 418 U.S. at 217).  We stated that

an oath taker's claims are, under contemporary jurisprudence, "abstract

constitutional grievances" insufficient to meet the requirements of Article III. *Id.*

at 238.

Like the councilmembers in *South Lake Tahoe*, Freese has failed to assert

any concrete injury.  The notion that he will be disciplined by the military for

obeying President Obama's orders is entirely speculative.  He might be disciplined

for *disobeying* those orders, but he has an "available course of action which

subjects [him] to no concrete adverse consequences" – he can obey the orders of

the Commander-in-Chief. *S. Lake Tahoe*, 625 F.2d at 237.  In the absence of a

concrete injury, Freese asserts nothing more than an abstract constitutional

grievance that, far from being particularized to him, is shared by all citizens

generally. *See id.* ("The fundamental premise of *Schlesinger* . . . is that a litigant's

standing cannot be based on the 'generalized interest of all citizens in

11

constitutional governance.'" (quoting *Schlesinger*, 418 U.S. at 217)).  Thus, Freese

and other active duty military personnel plaintiffs have no standing to bring this

lawsuit.

### 2.  Former Military Personnel

According to the complaint, "inactive or retired military personnel who are

Plaintiffs, subject to recall, have standing to challenge and demand clear-and-

convincing proof for the same reasons [as Freese]—in that they are subject to

recall and service at any time under and subject to the *de facto* chain of command."

Former military personnel could be on inactive duty status.  This category of

plaintiffs bases its standing on the possibility that they could be called back to

active service and would be subject to following the Commander-in-Chief's orders,

thereby suffering injury for the same reasons asserted by Freese.

The retired and inactive military personnel's assertion of standing is far too

speculative and conjectural.  *See Lujan*, 504 U.S. at 560-61; *see also Kerchner v.

Obama*, 612 F.3d 204, 208 (3d Cir. 2010) (rejecting, as conjectural, a naval reserve

officer's assertion of standing to challenge President Obama's qualifications for

the presidency, where the officer asserted standing on the grounds that he might be

required to serve the Commander-in-Chief in the case of an extreme national

emergency).  Plaintiffs' alleged injuries are neither actual nor imminent.  Plaintiffs, moreover, rely on the same oath taker's standing we have rejected as too abstract and generalized.  Like the active military personnel, this category of plaintiffs lacks standing.

### 3. State Representatives

Plaintiffs allege that state representatives have "unique standing" because they have a "special non-delegable constitutional right and responsibility to verify the qualifications of the Chief Executive Officer of the United States of America who is responsible for allocating large sums of [federal] funds, since receipt of funds from any officer without legal authority would be complicity in theft or conversion."

In *South Lake Tahoe*, we rejected as insufficient to establish standing a similar contention that a public official could conceivably be exposed to civil liability while carrying out his official duties.  625 F.2d at 238-39.  We noted that whether the officials could in fact be subject to civil liability was dependent on "multiple contingencies," including the likelihood of any civil suit and the question whether the official would be immune from any such suit.  *Id.* at 239.  The alleged harm to the state representatives in this case is just as speculative and conjectural

13

as in *South Lake Tahoe*, for similar reasons.  This group of plaintiffs therefore fails

to establish standing.  *See Lujan*, 504 U.S. at 560-61.

### 4. Federal Taxpayers

Plaintiffs also do not have standing as federal taxpayers because, as they

concede, Supreme Court precedent precludes taxpayer standing in this situation.

In *Flast v. Cohen,* the Supreme Court held that federal taxpayers have

standing to raise Establishment Clause claims.  392 U.S. 83, 88 (1968).  A taxpayer

would have standing "when he alleges that congressional power under the taxing

and spending clause is in derogation of those constitutional provisions which

operate to restrict the exercise of the taxing and spending power."  *Id.* at 106.  The

Supreme Court, however, expressed a lack of confidence that standing could be

established in cases "where a taxpayer seeks to employ a federal court as a forum

in which to air his generalized grievances about the conduct of government or the

allocation of power in the Federal System."  *Id; see also Ariz. Christian Sch.*

*Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011) ("Absent special circumstances

. . ., standing cannot be based on a plaintiff's mere status as a taxpayer.").

We agree with the District Court that "Plaintiffs' dispute against the

President is a generalized grievance, not tied to a specific spending measure in

14

violation of the Constitution." A taxpayer must demonstrate a nexus between the

challenged spending and the constitutional right in order to establish taxpayer

standing. *See Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 605

(2007). Plaintiffs have shown no such nexus between the constitutional

requirement that the President be a natural born citizen and any challenged

spending provision or action. In fact, Plaintiffs have not challenged any spending

action at all.

Plaintiffs did not show anything but a "generalized grievance" insufficient to

establish standing. And they challenge only the President's executive actions

generally, not any discrete expenditure allegedly banned by a particular

constitutional provision. Therefore, this group also fails to establish standing.

## 5. Relatives of President Obama

Plaintiff Kurt Fuqua also lacks standing because he has not alleged an

injury-in-fact. Despite Fuqua's alleged family relationship with President Obama,

his claim is no more specific to him than to any other citizen. *See Lujan*, 504 U.S.

at 560-61. Nor did Fuqua assert more than a "generalized interest of all citizens in

constitutional governance" which is insufficient to satisfy the requirements of

standing. *Schlesinger*, 418 U.S. at 217. Even as a voter, Fuqua has no greater

15

stake in this lawsuit than any other United States citizen. The harm he alleges is therefore too generalized to confer standing. *See Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009) (holding that the plaintiff's status as a voter in the 2008 election did not give him standing to challenge Obama's candidacy on grounds similar to those here alleged). Thus, the District Court did not err in holding that Fuqua, regardless of his alleged relation to President Obama, does not have standing.

### 6. Political Candidates

The remaining plaintiffs were political candidates and a certified elector during the 2008 general election. Plaintiffs Alan Keyes and Wiley S. Drake were the Presidential and Vice Presidential candidates, respectively, of the American Independent Party on the California ballot in the 2008 Presidential Election. Plaintiff Gail Lightfoot, a member of California's Libertarian Party, was an official write-in Vice Presidential candidate in California in 2008. Plaintiff Markham Robinson was a certified California elector for, and Chairman of, the American Independent Party.

These plaintiffs argue that they have standing because, as candidates running against Obama in the 2008 election, they had an interest in having a fair competition for the positions they sought to obtain. If Obama entered the

presidential race without meeting the requirements for the office, they contend, the candidates did not have a fair opportunity to obtain votes in their favor. Plaintiffs further argue that Robinson, as an elector, also had an interest in a fair competition between eligible candidates, including those for whom he had pledged to vote.

Plaintiffs cite a case from the District of New Hampshire, *Hollander v. McCain*, for the proposition that "a candidate or his political party has standing to challenge the inclusion of an allegedly ineligible rival on the ballot, on the theory that doing so hurts the candidate's or party's own chances of prevailing in the election." 566 F. Supp. 2d 63, 68 (D.N.H. 2008). This notion of "competitive standing" has been recognized by several circuits. *See, e.g.*, *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586-87 & n.4 (5th Cir. 2006) (political party has standing because "threatened loss of [political] power is still a concrete and particularized injury sufficient for standing purposes"); *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994) (political party representative has standing because his party may "suffer a concrete, particularized, actual injury—competition on the ballot from candidates that . . . were able to avoid complying with the Election Laws and a resulting loss of votes") (internal quotation marks omitted); *Fulani v. Hogsett*, 917 F.2d 1028, 1030 (7th Cir. 1990) (third-party presidential candidate had

17

standing because the allegedly improper placement of the major-party candidates on the ballot resulted in "increased competition" that required "additional campaigning and outlays of funds" and resulted in lost opportunities to obtain "press exposure" and win the election).

We, too, have upheld the notion of "competitive standing." In *Owen v. Mulligan*, we held that the "potential loss of an election" was an injury-in-fact sufficient to give a local candidate and Republican party officials standing. 640 F.2d 1130, 1132-33 (9th Cir. 1981). In that case, the candidate for local office sued the Postal Service for giving his rival a preferential mailing rate, in violation of its own regulations and of its representations to the court regarding procedures implemented in response to a previous injunction. *Id.* at 1132. The candidate and party officials sought "to prevent their opponent from gaining an unfair advantage in the election process through abuses of mail preferences which arguably promote his electoral prospects." *Id.* at 1133 (internal quotation marks and citations omitted). We rejected the Postal Service's argument that the potential loss of an election due to an unfair advantage for the opponent was an "injury [that was] too

18

remote, speculative and unredressable to confer standing." *Id.* at 1132 (internal

quotation marks omitted).[3]

Here, the District Court assumed, without deciding, that only those plaintiffs

who were political candidates in 2008 could potentially satisfy the injury-in-fact

requirement of standing because they had a competitive interest in running against

a qualified candidate.  The District Court then turned to the redressability

requirement of standing.

The District Court was mistaken in assuming, however, that the political

candidates still had an interest in a fair competition at the time the complaint was

filed.  The original complaint was filed on January 20, 2009, at 3:26 p.m. Pacific

Standard Time, after President Obama was officially sworn in as President.  The

---

[3] Some cases hold that competitive standing continues beyond a given
election.  *See Owen*, 640 F.2d at 1133 & n.8 (citing *Schiaffo v. Helstoski*, 492 F.2d
413, 417 (3d Cir. 1974) (holding that a rival candidate had standing to challenge an
incumbent's activities seeking to secure an unfair advantage in future elections)).
In those cases, however, the plaintiffs were seeking to enjoin an ongoing practice
that would have produced an unfair advantage in the next election, the plaintiffs
were likely rivals of the incumbent in the next election and the plaintiffs were not
using competitive standing as a means of undoing a past election or ousting an
elected official from office.  Here the plaintiffs have not asserted that they will run
against President Obama in the 2012 election (assuming President Obama runs)
and they are not seeking to enjoin an ongoing practice giving the President a
competitive advantage in the next election.  They are instead seeking to remove the
President from office, a remedy unconnected to any injury they hypothetically
suffered in the 2008 election.

19

First Amended Complaint was filed on July 14, 2009. Whichever complaint is considered, the 2008 general election was over when it was filed. Once the 2008 election was over and the President sworn in, Keyes, Drake, and Lightfoot were no longer "candidates" for the 2008 general election. Moreover, they have not alleged any interest in running against President Obama in the future. Therefore, none of the plaintiffs could claim that they would be injured by the "potential loss of an election." *Owen*, 640 F.2d at 1132. Plaintiffs' competitive interest in running against a qualified candidate had lapsed.[4] Similarly, Robinson's interest as an elector—derived from the competitive interest of his preferred candidates—was extinguished by the time the complaint was filed.

For the foregoing reasons, the political candidates failed to establish redressability sufficient to establish standing. They cannot claim competitive standing because they were no longer candidates when they filed their complaint.

---

[4] Defendants argue that "competitive standing" does not apply in this case because Plaintiffs were not deprived of the ability to win. Drake and Lightfoot ran only in California, while Keyes's name appeared on the ballot in only three states: California, Colorado, and Florida. Defendants argue, and Plaintiffs do not contest, that none of the political candidate plaintiffs were in any position to win a majority of the 270 electoral votes required to win the election. We need not decide, however, on Defendants' success-based line-drawing to conclude that Plaintiffs no longer had competitive standing.

**B.**

QUO WARRANTO

*Black's Law Dictionary* 1374 (9th ed. 2009) defines *quo warranto* as a

"common-law writ used to inquire into the authority by which a public office is

held or a franchise is claimed."  Section 16-3501 of the District of Columbia Code

states:

> A quo warranto may be issued from the United States District Court
> for the District of Columbia in the name of the United States against a
> person who within the District of Columbia usurps, intrudes into, or
> unlawfully holds or exercises, a franchise conferred by the United
> States or a public office of the United States, civil or military. The
> proceedings shall be deemed a civil action.

D.C. Code § 16-3501 (emphasis added).  Under § 16-3502, only the Attorney

General of the United States or the United States Attorney for the District of

Columbia can initiate a proceeding for issuance of a writ of *quo warranto* "on his

own motion or on the relation of a third person," and if the writ is brought on

behalf of a third person, it may only issue by leave of the District Court for the

District of Columbia.  D.C. Code § 16-3502.  "If the Attorney General or United

States attorney refuses to institute a quo warranto proceeding on the request of a

21

person interested, the interested person may apply to the court by certified petition for leave to have the writ issued." D.C. Code § 16-3503.

Plaintiffs concede that the District Court for the District of Columbia is the proper venue to issue a writ of *quo warranto* under D.C. Code § 16-3503, but argue that their efforts to file there have been frustrated because the Attorney General and the United States Attorney for the District of Columbia have not responded to their requests.

The District Court properly dismissed Plaintiff's *quo warranto* claims under D.C. Code § 16-3503, because the proper venue to file such claims against the President of the United States would be the District of Columbia. *See* D.C. Code § 16-3501; *see also U.S. ex rel. State of Wis. v. First Fed. Sav. & Loan Ass'n*, 248 F.2d 804, 809 (7th Cir. 1957) ("We hold, except as otherwise specifically provided by statute, that there is no original jurisdiction in the federal district court to entertain an information in the nature of quo warranto."). While D.C. Code §§ 16-3501 to 16-3503 do not explicitly provide that *quo warranto* claims under them must be brought exclusively in the District of Columbia, the plain language of the statute indicates that a writ based on the D.C. Code provisions must be sought

22

within the District of Columbia, because such a claim is challenging the right of a person within the District of Columbia to hold a public office of the United States. *See* D.C. Code § 16-3501 ("A quo warranto may be issued from the United States District Court for the District of Columbia . . . against a person who *within the District of Columbia* . . . .") (emphasis added)).  More importantly, §§ 16-3502 and 16-3503 provide only for the District Court for the District of Columbia to grant leave of court to file the writ on the relation of a third person.  Moreover, the United States District Court for the District of Columbia has now weighed in with respect to the reach of the D.C. Code *quo warranto* provisions.  In *Taitz v. Obama*, 707 F. Supp. 2d 1, 2-4 (D.D.C. 2010), the District Court for the District of Columbia stated that "a quo warranto action against a public official may be brought *only* by the Attorney General or the U.S. Attorney."  *Id.* at 3 (citing *Andrade v. Lauer*, 729 F.2d 1475, 1498 (D.C. Cir. 1984)).

   Plaintiffs do not predicate their *quo warranto* claim on any plausible legal basis other than the D.C. Code.[5]  Thus, in this case, the District Court did not err by

---

[5] Plaintiffs do briefly mention the All Writs Act, 28 U.S.C. § 1651, and 42 U.S.C. § 1988 as possible statutory bases for a *quo warranto* proceeding.  Neither is viable.  *See, e.g.*, *Lights of Am., Inc. v. United States Dist. Court*, 130 F.3d 1369, 1370 (9th Cir. 1997) (per curiam) ("[T]he Supreme Court has long held that the All Writs Act is not itself a source of jurisdiction.") (citing *McClung v. Silliman*, 19

(continued...)

23

dismissing Plaintiffs' *quo warranto* claims, as premised on the D.C. Code, for improper venue.

## C.

### FOIA CLAIMS

Under 5 U.S.C. § 552(a)(4)(B), "[o]n complaint, the district court . . . has jurisdiction to enjoin *the agency* from withholding agency records and to order the production of any agency records improperly withheld from the complainant." (emphasis added).  The statute defines "agency" as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—(A) the Congress; (B) the courts of the United States; (C) the governments of the territories or possessions of the United States; (D) the government of the District of Columbia."  5 U.S.C. § 551(1).

We agree with the District Court that FOIA does not apply to any of the Defendants because they are all individuals, not agencies.  *Cf., e.g., Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992) ("Out of respect for the separation of

---

[5](...continued)
U.S. 598, 601-02 (1821)); *Moor v. Cnty. of Alameda*, 411 U.S. 693, 703-04 & n.17 (1973) (recognizing that § 1988 does not create an independent cause of action for the violation of federal civil rights, but "instructs federal courts as to what law to apply in causes of actions arising under federal civil rights acts").

24

powers and the unique constitutional position of the President, we find that textual

silence is not enough to subject the President to the provisions of the

[Administrative Procedure Act (APA)]."); *see also Batton v. Evers*, 598 F.3d 169,

173 n.1 (5th Cir. 2010) ("A FOIA plaintiff may not assert a claim against an

individual federal official; the proper defendant is the agency."); *Martinez v.

Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (per curiam) ("[T]he district

court properly dismissed the named individual defendants because no cause of

action exists that would entitle appellant to relief from them under the Privacy Act

or FOIA.  Both statutes concern the obligations of agencies as distinct from

individual employees in those agencies.") (citations omitted); *Motions Sys. Corp. v.

Bush*, 437 F.3d 1356, 1359 (Fed. Cir. 2006) (per curiam) (noting that the President

is not an "agency" within meaning of Administrative Procedure Act).  Thus, the

District Court correctly dismissed Plaintiffs' FOIA causes of action for failure to

state a claim.

### D.

### RICO CLAIMS

25

Plaintiffs sought a declaratory judgment and injunctive relief to determine "whether certain crimes of fraud relating to identity or fraudulent use of sensitive individually identifying information . . . have been committed and concealed by some of the defendants, acting jointly or severally whether or not in formal conspiracy, which would constitute predicate acts of racketeering within the meaning of 18 U.S.C. § 1961 *et seq.*" Plaintiffs did not, however, plead any RICO allegations and only stated that they "have accumulated several dossiers of evidence against [Obama] which suggest . . . that the President and his allies and some of the co-defendants in this case may have committed, or still be in the process of committing, some fairly serious violations of U.S. law." Plaintiffs instead expressly reserved, in their First Amended Complaint, pleadings under RICO for their Second Amended Complaint due to the "complexity of RICO pleading."[6]

The District Court dismissed these claims against Defendants Michelle Obama, Hillary Clinton, Joe Biden, and Robert Gates for failure to state a claim

---

[6] Plaintiffs never filed a motion for leave of court to file a Second Amended Complaint and only mentioned in passing such a request in their motion for reconsideration, filed on November 9, 2009, after the District Court granted Defendants' motion to dismiss.

under Rule 12(b)(6), noting that Plaintiffs had six months between the original

complaint and the amended complaint to attempt to set forth civil RICO

allegations.  The District Court found Plaintiffs' "failure to do so inexcusable."

Given Plaintiffs' express statements reserving their RICO allegations, the District

Court was justified in finding that Plaintiffs had "failed to state any claim

whatsoever" against any defendants other than President Obama.

Thus, the District Court did not err by dismissing the complaint as against

Defendants First Lady Michelle Obama, Vice President Joe Biden, Secretary of

State Hillary Clinton, and Secretary of Defense Robert Gates for failure to state a

claim upon which relief could be granted.

***

The District Court properly dismissed the plaintiffs' constitutional claims for

lack of Article III standing.  Moreover, the District Court did not err in dismissing

Plaintiffs' *quo warranto*, FOIA, or RICO claims.  Accordingly, the dismissal by

the District Court is **AFFIRMED**.

Appellants' emergency petition for writ of mandamus, filed November 8,

27

2011, is **DENIED**.

COUNSEL

Gary G. Kreep, Ramona, California, and Orly Taitz, Rancho Santa Margarita, California, for the plaintiffs-appellants.

David A. DeJute, Assistant United States Attorney, Los Angeles, California, for the defendants-appellees.